# EXHIBIT 1

***Randi Milroy and Dan Williams, etc.***
***v.***
***Bell Partners, Inc., et al.***

**Wake County – General Court of Justice, Superior Court**
**Case No.: 18 CV 011642**

**Summons and Complaint**

 **CT Corporation**

TO:     Jennifer Scroggins
        Hudson Advisors L.P.
        2711 N Haskell Ave Ste 1800
        Dallas, TX 75204-2921

RE:     **Process Served in North Carolina**

FOR:    LSREF3 Bravo (Raleigh), LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | RANDI MILROY and DAN WILLIAMS, etc., Pltfs. vs. BELL PARTNERS INC., et al., Dfts. // To: LSREF3 Bravo (Raleigh), LLC |
| **DOCUMENT(S) SERVED:** | Summons, Return, Complaint, Exhibit(s) |
| **COURT/AGENCY:** | Wake County - General Court of Justice - Superior Court Division, NC Case # 18CV011642 |
| **ON WHOM PROCESS WAS SERVED:** | CT Corporation System, Raleigh, NC |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 10/01/2018 postmarked on 09/27/2018 |
| **JURISDICTION SERVED :** | North Carolina |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after you have been served. |
| **ATTORNEY(S) / SENDER(S):** | Edward h. maginnis MAGINNIS LAW PLLC 4801 Glenwood Avenue, Suite 310 Raleigh, NC 27612 919-526-0450 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 10/01/2018, Expected Purge Date: 10/06/2018 |
| | Image SOP |
| | Email Notification,  Jennifer Scroggins  jscroggins@hudson-advisors.com |
| | Email Notification,  Connie Fleming  cfleming@hudson-advisors.com |
| **SIGNED:** | CT Corporation System |
| **ADDRESS:** | 160 MINE LAKE CT STE 200 Raleigh, NC 27615 |
| **TELEPHONE:** | 954-473-5503 |

Page 1 of  1 / SS

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



# MAGIN IIS
## *LAW*

4801 GLENWOOD AVENUE / SUITE 310   GH, NC 27612

CERTIFIED MAIL

stamps.com



**CERTIFIED MAIL**

$9.510
US POSTAGE
FIRST CLASS
FROM 27612
09/27/2018
stamps
endicia

9414 7118 9956 0797 2859 98

LSREF3 Bravo (Raleigh), LLC
C/o CT Corporation System, Reg. Agent
160 Mine Lake Ct., Suite 200
Raleigh NC 27615-6417

# STATE OF NORTH CAROLINA

_____WAKE_____ County

File No. 18CVU11642

In The General Court Of Justice
☐ District   ☒ Superior Court Division

| **Name Of Plaintiff**<br>RANDI MILROY and DAN WILLIAMS, et al. | |  |
|---|---|---|
| **Address**<br>c/o MAGINNIS LAW, PLLC, 4801 GLENWOOD AVE., STE. 310 | | **CIVIL SUMMONS**<br>☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |
| **City, State, Zip**<br>RALEIGH | NC      27612 | |

| **VERSUS** | |
|---|---|
| | G.S. 1A-1, Rules 3 and 4 |

| **Name Of Defendant(s)**<br>BELL PARTNERS INC., LSREF3 BRAVO (RALEIGH), LLC<br>d/b/a THE RESERVE AT LAKE LYNN, DPR WESTOVER, LLC<br>d/b/a CARY RESERVE AT WESTON, and HUDSON CAPITAL<br>WESTON, LLC d/b/a CARY RESERVE AT WESTON | **Date Original Summons Issued**<br><br>**Date(s) Subsequent Summons(es) Issued** |
|---|---|

### To Each Of The Defendant(s) Named Below:

| **Name And Address Of Defendant 1**<br>LSREF3 BRAVO (RALEIGH), LLC<br>c/o CT CORPORATION SYSTEM, Reg. Agent<br>160 MINE LAKE CT., SUITE 200<br>RALEIGH      NC      27615-6417 | **Name And Address Of Defendant 2** |
|---|---|

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| **Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)**<br>KARL S. GWALTNEY<br>MAGINNIS LAW, PLLC<br>4801 GLENWOOD AVENUE, SUITE 310<br>RALEIGH      NC      27612 | **Date Issued**      **Time**      ☐ AM  ☒ PM<br><br>**Signature**<br><br>☒ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court |
|---|---|

| ☐ **ENDORSEMENT (ASSESS FEE)**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | **Date Of Endorsement**      **Time**      ☐ AM  ☐ PM<br><br>**Signature**<br><br>☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court |
|---|---|

**NOTE TO PARTIES:** _Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned to mandatory arbitration, and, if so, what procedure is to be followed._

(Over)

AOC-CV-100, Rev. 6/16
© 2016 Administrative Office of the Courts

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | □ AM □ PM | Name Of Defendant |
|---|---|---|---|

□ By delivering to the defendant named above a copy of the summons and complaint.

□ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

□ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

□ Other manner of service (specify)

□ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | □ AM □ PM | Name Of Defendant |
|---|---|---|---|

□ By delivering to the defendant named above a copy of the summons and complaint.

□ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

□ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

□ Other manner of service (specify)

□ Defendant WAS NOT served for the following reason:

| Service Fee Paid<br>$ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 6/16
© 2016 Administrative Office of the Courts

STATE OF NORTH CAROLINA

COUNTY OF WAKE

RANDI MILROY and DAN WILLIAMS, )
on behalf of themselves and all others )
similarly situated, )
)
      Plaintiffs, )
)
      v. )
)
BELL PARTNERS INC., LSREF3 )
BRAVO (RALEIGH), LLC )
d/b/a THE RESERVE AT LAKE LYNN, )
and DPR WESTOVER, LLC d/b/a CARY )
RESERVE AT WESTON, and HUDSON )
CAPITAL WESTON, LLC d/b/a CARY )
RESERVE AT WESTON, )
)
      Defendants. )

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
CASE NO. _____ CVS _____

2018 SEP 21  P 4: 15

WAKE CO., C.S.C.

BY _____

**COMPLAINT**

**(Class Action)**

Plaintiffs Randi Milroy and Dan Williams (hereinafter "Plaintiffs"), on behalf of themselves and the proposed Classes, files this Complaint against Bell Partners Inc., LSREF3 Bravo (Raleigh), LLC, DPR Westover, LLC, and Hudson Capital Weston, LLC (hereinafter "Defendants" or "Bell") and states:

## NATURE OF THE ACTION

1.    This is an action brought by Plaintiffs and others similarly situated due to unlawful and unfair debt collection practices engaged in by Defendants in their attempts to collect upon fees, penalties, and other improper charges, when such costs, fees, charges, and amounts are not owed and expressly prohibited.

2.    This case arises under the Residential Rental Agreements Act, N.C.G.S. § 42-38 *et seq.,* the Uniform Commercial Code - Negotiable Instruments, N.C.G.S. § 25-3-506, the North Carolina Debt Collection Act, N.C.G.S. § 75-50 *et seq.,* the North Carolina common law of

contracts, and the Uniform Declaratory Judgment Act, N.C.G.S. § 1-253, *et seq*.

3.     This is a class action, filed pursuant to Rule 23 of the North Carolina Rules of Civil Procedure on behalf of all tenants of any North Carolina apartment complex in which Bell provides property management services, including but not limited to tenants of the apartment complex owned by LSREF3 Bravo (Raleigh), LLC d/b/a The Reserve at Lake Lynn ("Reserve at Lake Lynn"), and DPR Westover, LLC and Hudson Capital Weston d/b/a Cary Reserve at Weston" ("Reserve at Weston") in Wake County, North Carolina who pursuant to Defendants' standardized policies and procedures, have during the past four (4) years (a) received one or more communications from Defendants that violate North Carolina law as further set forth herein, and/or (b) have paid amounts in excess of those allowed by North Carolina law.

## JURISDICTION AND VENUE

4.     The foregoing allegations are incorporated by reference and realleged herein.

5.     This Court has jurisdiction over the parties and this action pursuant to N.C.G.S. § 42-44, N.C.G.S. § 25-1-305, N.C.G.S. §§ 75-16 and 56, N.C.G.S. § 1-75.4 and N.C.G.S. § 1-253.

6.     Venue is proper under N.C.G.S. § 1-79 and § 1-82 in that Defendant Bell Partners Inc. maintains its principle place of business in Guilford County, North Carolina, and regularly engages in business in Wake County, North Carolina.

## PARTIES

7.     The foregoing allegations are incorporated by reference and realleged herein.

8.     Plaintiff Randi Milroy is a citizen and resident of Wake County, North Carolina who at all relevant times, leased an apartment from Defendants at Reserve at Lake Lynn.

9.     Plaintiff Dan Williams is a citizen and resident of Wake County, North Carolina

2

who at all relevant times, leased an apartment from Defendants at Reserve at Weston.

10.    Plaintiffs are each "tenants" subject to the protections of N.C.G.S. § 42-46.

11.    Plaintiffs are each "consumers" as defined by N.C.G.S. § 75-50.

12.    Defendant Bell Partners Inc. is, upon information and belief, a corporation organized and existing under the laws of the state of North Carolina, with a principal place of business in Guilford County, North Carolina. Upon information and belief, Defendant Bell Partners, Inc. maintains a business in Wake County, North Carolina, and has regularly engaged in business in Wake County, North Carolina.

13.    Upon information and belief, Bell Partners, Inc. owns, has owned, or was the purchasing entity for various Bell physical properties in North Carolina.

14.    Upon information and belief, Bell Partners, Inc. is the only property management company for all of Bell's North Carolina properties, including the Reserve at Lake Lynn and Reserve at Weston.

15.    LSRE3 Bravo (Raleigh), LLC d/b/a The Reserve at Lake Lynn is, upon information and belief, a limited liability company organized under the laws of the state of North Carolina, and has regularly engaged in business in Wake County, North Carolina. LSRE3 Bravo (Raleigh), LLC holds itself out to the public as the "The Reserve at Lake Lynn."

16.    DPR Westover, LLC d/b/a Cary Reserve at Westover is, upon information and belief, a limited liability company organized under the laws of the state of North Carolina, and has regularly engaged in business in Wake County, North Carolina.

17.    Hudson Capital Weston, LLC d/b/a Cary Reserve at Westover is, upon information and belief, a limited liability company organized under the laws of the state of North Carolina, and has regularly engaged in business in Wake County, North Carolina. Hudson

3

Capital Weston, LLC holds itself out to the public as the "Cary Reserve at Weston."

18.　　Upon information and belief, Defendant Bell Partners Inc. employs the persons and other entities to operate the properties in North Carolina, including the Reserve at Lake Lynn and Cary Reserve at Weston.

19.　　Upon information and belief, with respect to all actions and decisions to this action, Defendants have operated as a single entity. Defendants have held themselves out to the North Carolina public, including Plaintiff, as if each of the entities were operating as a single entity known as "Bell," including by way of example, corresponding electronically with tenants as "Bell" and in the "Initial Collection Letters" defined below, and in other written correspondence sent to Plaintiffs and other North Carolina residents, the form letters is identified as being sent from "Bell."

20.　　Upon information and belief, at all times pertinent to this action the finances, policies, and business practices of Defendants are and were dominated and controlled by one another in such a manner that each individual Defendant has no separate mind, will, identity or existence of its own and instead operated as mere instrumentalities and alter egos of one another.

21.　　Upon information and belief, Defendants are so closely related in ownership and management, and that each works closely in concert with the other, such that each has become the *alter ego* of the other, in that, among others:

　　　　　　a.　Defendants operate and hold themselves out to the public as a single entity known as "Bell;"

　　　　　　b.　With respect to all actions and decisions in North Carolina pertinent to this action, Defendants have operated as a single entity known as "Bell;"

4

c. Defendants operate and hold themselves out to the public in such a way that members of the public would be unable to identify and distinguish between one "Bell" entity and another.

22. Any such conduct in violation of North Carolina law by one Defendant should be imputed to each other Defendant.

23. Defendants are each "landlords" as defined by N.C.G.S. §42-40(3).

24. At all times relevant to this action, Defendants, in the ordinary course of business as the lessors of residential real property, engaged in acts or practices affecting commerce within the meaning of N.C.G.S. §75-1.1.

25. Defendants are each "debt collectors" as defined by N.C.G.S. § 75-50.

## GENERAL BACKGROUND

26. The foregoing allegations are incorporated by reference and realleged herein.

27. Upon information and belief, at all times relevant to the allegations contained herein, Defendants entered into lease agreements with all North Carolina tenants that state "[i]n the event we file a summary ejectment lawsuit against you, we may also recover from you the highest *one* of the following fees (which shall be in addition to late fees, attorney's fees, and any applicable court costs..." See attached **Exhibit 1, 2, 3 and 4** (emphasis in original). The lease agreements immediately identify and describe three fees: a Complaint Filing Fee, a Court Appearance Fee, and a Second Trial Fee.

28. The Complaint Filing Fee, Court Appearance Fee, and Second Trial Fee are the same fees described in N.C.G.S. § 42-46 (e) through (g).

29. Upon information and belief, at all times relevant to the allegations contained herein, Defendants have maintained a uniform, statewide policy of requiring any North Carolina

5

tenant who fails to make a full and complete rental payment, or maintains a balance on their account ledger in excess of $0.00 after the 16th day of any given month to pay filing fees ("Filing Fees"), sheriff service fees ("Service Fees"), and attorneys' fees ("Attorneys' Fees") (collectively the Filing Fees, Service Fees, and Attorneys' Fees are referred to as the "Eviction Fees") (herein described as the ("Collection Policy").

30.     Eviction Fees are additional fees separate and apart from the ones expressly authorized by N.C.G.S. § 42-46.[1]

31.     Eviction Fees are fees set by the North Carolina Legislature for filing a complaint in summary ejectment and for service of process by a sheriff.

32.     Upon information and belief, Defendants entered into a legal services agreement with a law firm that charges a flat fee per eviction. Upon information and belief, this legal services agreement limits the scope of the law firm's representation to only seeking possession of the apartment premises on behalf of Defendants and not any money owed.

33.     Upon information and belief, throughout the Relevant Time Period, the Filing Fees were $96.00 and the Service Fees were $30.00.

34.     When a tenant fails to make a full and complete rental payment, or maintains a rental balance on their account ledger in excess of $0.00 after approximately the 6th day of any given month, Defendants cause written letters or emails to be delivered to the tenant stating that the tenant "will also be charged for court costs" if he or she fails to make a complete rental

---

[1] In direct response to the Honorable A. Graham Shirley, Wake County Superior Court Judge, holding that the claiming of Eviction Fees was unlawful [See **Exhibit 15**], landlords petitioned and successfully altered the law. On June 25, 2018, S.L. 2018-50, entitled "An Act to Allow Landlords to Recover Out-of-Pocket Expenses in Summary Ejectment Cases" was enacted to amend N.C.G.S. § 42-46 ("the Act"). [See attached **Exhibit 16**]. The Act confirms that Defendants were not previously allowed to automatically charge tenants the Eviction Fees.

6

payment (hereinafter "Initial Collection Letters").

35. Exemplars of the Initial Collection Letters are attached as **Exhibits 5 and 6.**

36. The fees referred to in the Initial Collection Letters are the same as Eviction Fees described herein.

37. Upon information and belief, pursuant to the Collection Policy, tenants owe, and are required to pay Eviction Fees even if: (a) the complaint in summary ejectment had not yet even been filed; (b) the complaint in summary ejectment is dismissed; or (c) a North Carolina Magistrate Judge orders the Eviction Fees to be assessed against Defendants.

38. Upon information and belief, each and every tenant of a property owned or managed by Defendants, or either of them, is subject to the Collection Policy.

39. Upon information and belief, the Collection Policy is uniformly applied to each and every tenant that resides at any of the apartments owned or managed by Defendants.

40. Upon information and belief, the Collection Policy is mandatory throughout Defendants' properties; individual managers, employees, associates, or other agents of Defendants have no discretion as to the implementation of the Collection Policy.

41. Upon information and belief, pursuant to the Collection Policy, when a tenant fails to make a full and complete rental payment, or maintains a balance on their account ledger in excess of $0.00 on or around the 11th day of any given month, Defendants file legal action to evict the tenant.

42. Immediately before filing legal action to evict a tenant, or shortly thereafter, Defendants post to the tenant's account ledger all Eviction Fees as immediately due and owing.

43. All the Eviction Fees are posted to a tenant's account ledger are in addition to, and separate from, the late fees and the fees specifically authorized by N.C.G.S. § 42-46,

7

including the "Complaint-Filing Fee."

44.     Upon information and belief, pursuant to the Collection Policy, Eviction Fees are entered into a tenant's account ledger prior to a North Carolina court awarding such amounts to Defendants, and sometimes before a complaint in summary ejectment is even filed.

45.     At the time the Eviction Fees are entered into the account ledger as immediately due and owing, there is no guarantee that Defendants will ever be awarded such fees by a North Carolina court.

46.     Upon information and belief, entering the Eviction Fees on a tenant's account ledger as immediately due and owing is mandatory throughout Defendants' North Carolina properties; individual managers, employees, associates, or other agents of Defendants have no discretion as to the implementation of the Collection Policy.

47.     Upon information and belief, after causing the Eviction to be assessed against the tenant's account ledger, and with no guarantee such amounts will ever be awarded by a North Carolina court, Defendants immediately begin attempting to collect upon the balance contained on the account ledger pursuant to its Collection Policy.

48.     Pursuant to the Collection Policy, immediately after the Eviction Fees are entered onto a tenant's account ledger, Defendant causes additional written letters or emails to be delivered to the tenant stating that Eviction Fees are currently due and owing (hereinafter the "Post-Filing Collection Letters").

49.     Exemplars of the Post-Filing Collection Letters are attached hereto as **Exhibit 7, 8, and 9.**

50.     Upon information and belief, the majority of tenants who were charged Eviction Fees were sent Post-Filing Collection Letters.

8

51. Upon information and belief, after the Eviction Fees are entered onto an individual's account ledger, there are no occasions in which Defendants will review and reconsider whether such Eviction Fees were improperly assessed.

52. Upon information and belief, even if a complaint in summary ejectment filed against a tenant is dismissed or not awarded, there are no occasions in which Defendants will review and reconsider whether such Eviction Fees were improperly assessed.

53. Upon information and belief, after the Eviction Fees are entered onto a tenant's account ledger, there are no occasions in which Defendants will remove such Eviction Fees from an individual tenant's account ledger.

## MILROY'S FACTS

54. Milroy entered into a lease contract with Defendants for an apartment at Reserve at Lake Lynn located at 1400 K Lake Front Drive, Raleigh, North Carolina 27613 ("Milroy's Apartment) for a period from November 222, 2016 through November 21, 2017 and then re-leased from November 22, 2017 through November 21, 2018. Milroy's Leases are attached hereto as **Exhibits 1 and 2.**

55. The Leases stated that "[i]n the event we file a summary ejectment lawsuit against You . . . You shall be liable to Us for the highest *one* of" the Complaint-Filing Fee, Court Appearance Fee, and Second Trial Fee which "shall be in addition to late fees, court costs, attorney's fees, and any other monetary damages or costs arising under the terms of this Agreement."

56. Pursuant to the lease, Milroy's total monthly rent for her apartment is $838.00.

57. In September 2017, Milroy was late paying rent and she was charged a late fee of $53.35 pursuant to N.C.G.S. § 42-46(a). See attached **Exhibit 10.**

9

58. On or about September 15, 2017, Defendants placed the Eviction Fees, described on the ledger as "Eviction Filing" in the amount of $201.00. See attached **Exhibit 10.**

59. The "Eviction Filing" charges referred to on Milroy's ledger are the same fees described as "attorney's fees and any applicable court costs" in the ledger, and are the same as the Eviction Fees described herein.

60. At the time the Eviction Fees were placed on Milroy's ledger, Defendants had not paid the $96 filing fee for filing the complaint in summary ejectment nor had Defendants paid the $30 service fee. In fact, upon information and belief, the $96 filing fee and, upon information and belief, the $30 service fee, was paid by Defendants five days after Defendants charged Milroy with the Eviction Fees. Even worse, Milroy paid the entire balance owed, including the Eviction Fees, two days before Defendants paid the $96 complaint filing fee and the $30 service fee.

61. At the time the Eviction Fees were placed on Milroy's ledger, no hearing had been held and no attorney had appeared in Court to evict Milroy and/or seek the award of Eviction Fees.

62. At the time the Eviction Fees were placed on Milroy's ledger, no attorney had been hired by Defendants to collect any debt.

63. At the time the Eviction Fees were placed on Milroy's ledger, Defendants had not served Milroy with the complaint in summary ejectment. In fact, Milroy was not served with the complaint in summary ejectment until September 29, 2017, which is fourteen days after Defendants placed the Eviction Fees on Milroy's ledger and eleven days after Milroy paid her entire account balance. See attached **Exhibit 10.**

64. In addition to the Eviction Fees, Defendants placed on Milroy's account fees

10

described as "Eviction Filing Fee" or the "Complaint Filing Fee" in the amount of $41.10. See **Exhibit 10.**

65.     The "Eviction Filing Fee" is the same fee as the "Complaint Filing Fee" listed in N.C.G.S. § 42-46(e).

66.     Defendants did not "file and serve" the complaint in summary ejectment by the time that Defendants charged Milroy with the "Eviction Filing Fee."

67.     Upon information and belief, in the complaint in summary ejectment action filed against Milroy, Defendants wrote that they "hereby omit[] any claim for rents or damages and is seeking possession of the premises only. [Defendants] reserve[] the right to seek any monetary damages in a separate civil action."

68.     Milroy paid the Eviction Fees and the Eviction Filing Fee when they were not owed.

69.     After Milroy paid the Eviction Fees and the Eviction Filing Fee, Defendants filed notices of voluntary dismissal *without* prejudice. By filing a notice of voluntary dismiss without prejudice, Defendants were not the prevailing party.

70.     No court awarded Defendants with Eviction Fees or the Eviction Filing Fee against Milroy in the summary ejectment case or thereafter.

71.     At no point did Milroy enter into a settlement agreement with Defendants regarding the Eviction Fees or the Eviction Filing Fee during her tenancy with Defendants.

## WILLIAMS' FACTS

72.     Williams entered into a lease contract with Defendants for an apartment at Reserve at Weston ("Williams' Apartment) for, among other periods of time, a period of time from September 25, 2016 through September 24, 2017 and March 1, 2018 through February 28,

11

2019.

73. Williams' Leases for the period of time from September 25, 2016 through February 28, 2019 are attached hereto as **Exhibit 3 and 4.**

74. Upon information and belief, at some point during Williams' tenancy, the Reserve at Weston was purchased, bought, assigned, or otherwise transferred from DPR Westover, LLC to Hudson Capital Weston, LLC.

75. Upon information and belief, when Hudson Capital Weston, LLC acquired any rights to the Reserve at Weston, it became subject to and bound by any Leases with tenants of the Reserve at Weston, including Williams.

76. The Leases stated that "[i]n the event we file a summary ejectment lawsuit against You . . . You shall be liable to Us for the highest *one* of" the Complaint-Filing Fee, Court Appearance Fee, and Second Trial Fee which "shall be in addition to late fees, court costs, attorney's fees, and any other monetary damages or costs arising under the terms of this Agreement."

77. Pursuant to the Lease, the total base monthly rent for Williams' Apartment was $1,195.00.

78. Each time Williams was late he was charged a late fee of $74.75 pursuant to N.C.G.S. § 42-46(a). See e.g., attached **Exhibit 11.**

79. Each time Williams was late, he received the attached Initial Collection Letters substantially identical to the ones identified as **Exhibits 5 and 6.**

80. Upon information and belief, the majority of other tenants of Defendants who were late received the Initial Collection Letters substantially identical to **Exhibits 5 and 6.**

81. The additional amounts referred to in the Initial Collection Letters are Eviction

12

Fees that Defendants was not entitled.

82.  Defendants placed the Eviction Fees on Williams' account ledger on multiple occasions. See e.g., attached **Exhibit 11.**

83.  The "Court Filing Fee" and "Legal Filing Fee" referred to on Williams' ledger are the same fees identified in the Initial Collection Letters and are the same as the Eviction Fees described herein.

84.  Upon information and belief, each time Eviction Fees were placed on Williams' ledger, Defendants had not paid the $96 filing fee for filing the complaint in summary ejectment nor had they paid the $30 service fee.

85.  Upon information and belief, each time the Eviction Fees were placed on Williams' ledger, no hearing had been held and no attorney had appeared in Court to evict Williams and/or seek the award of Eviction Fees.

86.  Upon information and belief, at the time the Eviction Fees were placed on Williams' ledger, no attorney had been hired by Defendants to collect any debt.

87.  Upon information and belief, at the time the Eviction Fees were placed on Williams' ledger, Defendants had not served Williams with the complaint in summary ejectment.

88.  Upon information and belief, it was always after the Eviction Fees were placed on the ledger that Defendants filed Complaints in Summary Ejectment in the Small Claims Division of Cumberland County General Court of Justice, alleging Williams owed past due rent.

89.  Each time Defendants placed the Eviction Fees on Williams' account ledger, Defendants caused Post-Filing Collection Letters to be sent to his substantially identical to **Exhibits 7, 8, and 9.**

90.  Upon information and belief, the majority of other tenants of Defendants who had

13

Eviction Fees posted on their ledger received Post-Filing Collection Letters substantially identical to **Exhibits 7, 8, and 9.**

91.     The amounts included and/or referred to in the Post-Filing Collection Letters are Eviction Fees that Defendants were not entitled.

92.     In addition to the Eviction Fees, Defendants placed on Williams' account fees described as "Eviction Filing Fee" or the "Complaint Filing Fee" in the amount of $74.75 **Exhibit 11.**

93.     The "Eviction Filing Fee" is the same fee as the "Complaint Filing Fee" listed in N.C.G.S. § 42-46(e).

94.     Defendants did not "file and serve" the complaint in summary ejectment by the time that Defendants charged Williams with the "Eviction Filing Fee."

95.     Upon information and belief, each time Defendants filed a Complaint in Summary Ejectment in Wake County General Court of Justice, Defendants wrote that it "hereby omit[] any claim for rents or damages and is seeking possession of the premises only. [Defendants] reserve[] the right to seek any monetary damages in a separate civil action." See e.g., **Exhibits 12, 13, and 14.**

96.     Williams paid the Eviction Fees when they were not owed. See e.g., **Exhibit 11.**

97.     Upon information and belief, there were several occasions that Williams paid the Eviction Fees before he was even served with the Complaint in Summary Ejectment.

98.     Upon information and belief, it was only after Williams paid the Eviction Fees that Defendants filed a notice of voluntary dismissal without prejudice.

99.     Upon information and belief, Defendants only filed notices of voluntary dismissals without prejudice. By filing notices of voluntary dismissals without prejudice,

14

Defendants were not the prevailing party.

100. Upon information and belief, no court awarded Defendants with Eviction Fees against Williams in any summary ejectment case or thereafter.

101. Upon information and belief, Defendants only file notices of voluntary dismissals without prejudice when its tenants pay Eviction Fees prior to obtaining a judgment for possession.

102. At no point did Williams enter into a settlement agreement with Defendants regarding the Eviction Fees during his tenancy with Defendants.

103. At no point did a North Carolina judge award any portion of the Eviction Fees to Defendants. At no point did a North Carolina judge assess any portion of the Eviction Fees against Williams.

104. Even though a North Carolina court never awarded any portion of the Eviction Fees to Defendants, but in fact specifically assessed costs against Defendants, Defendants never refunded any portion of the Eviction Fees to Williams.

105. At no point did Defendants employ a law firm to collect upon any debt alleged to be owed by Williams.

## COMMON CLASS ALLEGATIONS

106. The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

107. Pursuant to Rule 23 of the North Carolina Rules of Civil Procedure, Plaintiffs bring this action individually and on behalf of the three (3) proposed classes:

15

**The Initial Collection Letter Class (represented by Williams):**

> All tenants of Defendants' Apartments in North Carolina who (a) at any point within the four (4) year period preceding the filing of Plaintiffs' Complaint through June 25, 2018 (b) resided in one of the apartments owned or managed by Defendants' in North Carolina (c) were sent Initial Collection Letters that (d) threatened to charge Eviction Fees in order to dismiss the eviction action.

**The Post-Filing Collection Letters Class (represented by Williams):**

> All tenants of Defendant's Apartments in North Carolina who (a) at any point within the four (4) year period preceding the filing of Plaintiffs' Complaint through June 25, 2018 (b) resided in one of the apartments owned or managed by Defendant's in North Carolina (c) were sent Post-Filing Collection Letters that (d) claimed that Eviction Fees were owed by the tenant prior to a North Carolina court awarding such Eviction Fees to Defendant.

**The Fee Class (represented by all Plaintiffs):**

> All tenants of Defendants' Apartments in North Carolina who (a) at any point within the four (4) year period preceding the filing of Plaintiffs' Complaint through June 25, 2018 (b) resided in one of the apartments owned or managed by Defendants' in North Carolina (c) were charged and (d) actually paid Eviction Fees prior to a North Carolina court awarding such Eviction Fees to Defendants.

108. Excluded from the classes are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendants and any entity in which Defendants has a controlling interest in Defendants and its legal representatives, assigns and successors; and (c) all persons and entities who properly execute and file a timely request for exclusion from the classes.

109. *Commonality*: All questions concerning Defendants' Collection Policy and Defendants sending the Initial Collection Letters and Post-Filing Collection Letters are common. Whether Defendants may lawfully charge Eviction Fees separate from and in addition to what is

16

authorized by N.C.G.S. § 42-46 is a question that is common for all members of the classes. Each and every member of the proposed Class is subject to Defendants' policies and procedures. Further, the answer to this question will drive other answers in the litigation, including whether the Initial Collection Letters and Post-Filing Collection Letters are lawful and whether any portion of Defendants' lease is void and unenforceable.

110.    *Predominance:* Common questions of law and fact predominate over any individual issues that may be presented, because Defendants have a pattern, practice and policy of charging tenants Eviction Fees after the 10th day of the month as described herein. These questions include, but are not limited to:

a.      Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect debt violated N.C.G.S. §§ 42-46 and 75-50 *et seq.* in that Defendants represented that a specific amount of debt may be increased by Eviction Fees prior to the award of such amounts by a North Carolina court;

b.      Whether Defendants' pattern, practice, and policy of utilizing the Initial Collection Letters violated N.C.G.S. §§ 42-46 and 75-50 *et seq.* by falsely representing Defendants' ability to collect Eviction Fees;

c.      Whether Defendants' pattern, practice, and policy of utilizing the Post-Filing Collection Letters violated N.C.G.S. §§ 42-46 and 75-50 *et seq.* by falsely representing Defendants' ability to collect Eviction Fees;

d.      Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect Eviction Fees was illegal under N.C.G.S. §§ 42-46 and 75-50 *et seq.*;

e.      Whether Defendants' pattern, practice, and policy of collecting and/or

17

attempting to collect Eviction Fees violated N.C.G.S. § 75-1.1 *et seq.*;

f.     Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect debt violated N.C.G.S. § 75-1.1 *et seq.* in that Defendants refused to refund Eviction Fees after a Court taxed the cost of the action against Defendants.

g.     Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect Attorneys' Fees was in violation of N.C.G.S. §§ 6-21.2, 42-46, and 75-50 *et seq.* in that Defendants' attorneys were not collecting upon any debt;

h.     Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect Eviction Fees constituted a violation of N.C.G.S. § 75-1.1 *et seq.* in that Defendants unlawfully claimed Attorneys' Fees were due and owing despite the absence of any statutory authority granting such fees.

i.     Whether any portion of Defendants' lease was void and unenforceable because it contains a fee for filing a complaint for summary ejectment and/or money owed other than the fees expressly authorized by N.C.G.S. § 42-46 (e) through (g).

111.   *Numerosity*: The Class members are so numerous that joinder of all is impractical. The names and addresses of the Class members are readily identifiable through the business records maintained by Defendants, and may be notified of the pendency of this action by published and/or mailed notice. Members of the classes include hundreds of present and former tenants of Defendants' Apartments who have been charged with Eviction Fees in violation of the law.

18

112.   *Typicality*: The claims of the Plaintiffs are typical of the claims of the proposed classes and all are based on the same facts and legal theories, as all such claims arise out of Defendants' conduct in that Defendants had a specific policy of attempting to unlawfully collect debt from each member of the proposed classes Eviction Fees following the expiration of the 5th day of the month.

113.   *Adequate Representation*: The Plaintiffs are adequate representatives of the class in that the Plaintiffs do not have antagonistic or conflicting claims with other members of the class. Plaintiffs have also retained counsel experienced in the prosecution of complex class actions and consumer litigation. Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action. Plaintiffs are aware of their responsibilities to the putative class and has accepted such responsibilities.

114.   *Superiority*: A class action is superior to all other available methods for fair and efficient adjudication of this controversy. Plaintiffs anticipate no difficulty in managing and maintaining this action as a class action. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

115.   Further, Defendants have acted and refused to act on grounds generally applicable to the proposed class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole.

19

## FIRST CAUSE OF ACTION:
### Violation of the North Carolina Residential Rental Agreements Act
### N.C.G. S. § 42-46
### (on behalf of all classes)

116. All paragraphs of this Complaint are incorporated herein as if fully restated.

117. Defendants' conduct as described above is subject to N.C.G.S. § 42-46 of the Residential Rental Agreements Act.

118. N.C.G.S. § 42-46(e)-(h) specifically limits the amounts that can be charged to a tenant for eviction related fees. Any amounts charged in excess of this limitation is against North Carolina's public policy and therefore void and unenforceable.

119. The Eviction Fees charged by Defendants to Plaintiffs and members of the Class were separate from and in excess of the amount allowed under N.C.G.S. § 42-46 and constituted a violation of North Carolina law.

120. The amount of Eviction Fees charged by Defendants to Plaintiffs and other members of the Class were in excess of the amounts allowed under N.C.G.S. § 42-46.

121. As a proximate result of Defendants' conduct, Plaintiffs and all members of the Class were damaged and are entitled to recover all amounts of Eviction Fees paid to Defendants in violation of N.C.G.S. § 42-46. This amount is in excess of $25,000.

## SECOND CAUSE OF ACTION
### Violation of North Carolina Debt Collection Act
### N.C.G.S. § 75-50, *et seq.*
### (on behalf of all classes)

122. All paragraphs of this Complaint are incorporated herein as if fully restated.

123. Plaintiffs and each member of the Class are "consumers," as that term is defined by N.C.G.S. § 75-50.

124. The amount purportedly owed to Defendants by Plaintiffs and each member of

20

the Proposed Class is a "debt," as that term is defined by N.C.G.S. § 75-50.

125.    At all times relevant to this action, Defendants, in the ordinary course of business as lessors of residential rental property, engaged in acts or practices affecting commerce within the meaning of N.C.G.S. § 75-1.1.

126.    Defendants, in seeking to recover past due rent, fees, and other charges, are "debt collectors" as defined by the North Carolina Debt Collection Act ("NCDCA"), N.C.G.S. § 75-50.

127.    Defendants' actions described above constitute the collection of a "debt" under N.C.G.S. § 75-50.

128.    Defendants are subject to the requirements of N.C.G.S. § 75-50 *et seq.*, that prohibits certain activities by debt collectors.

129.    The Initial Collection Letters violated N.C.G.S. § 75-50 *et seq.* by threatening to take actions that Defendants could not lawfully take.

130.    The Post-Filing Collection Letters violated N.C.G.S. § 75-50 *et seq.* by taking and/or threatening to take actions that Defendants could not lawfully take.

131.    Defendants violated N.C.G.S. § 75-51 by collecting or attempting to collect debt by means of unfair threats, coercions, or attempts to coerce, including by collecting or attempting to collect debt by threatening to take action not permitted by law.

132.    Defendants violated N.C.G.S. § 75-51(8) by threatening to take and taking actions not permitted by law, including, *inter alia*, threatening to assess and collect Eviction Fees without a legal justification.

133.    Defendants violated N.C.G.S. § 75-54 by collecting or attempting to collect a debt by means of fraudulent, deceptive, and/or misleading representations, including, *inter alia*,

21

assessing, threatening to assess, and collect or attempting to collect Eviction Fees without a legal justification.

134.    Defendants' communications to Plaintiffs and members of the Class constituted "communications attempting to collect a debt" subject to the disclosure requirement of N.C.G.S. § 75-54(2).

135.    Defendants' violated N.C.G.S. § 75-55 by collecting or attempting to collect debt by using unconscionable means.

136.    A violation of N.C.G.S § 42-46 constitutes an unfair debt collection attempt under N.C.G.S.§ 75-50 *et seq*.

137.    Defendants collected or attempted to collect from Plaintiffs and members of the class a charge, fee or expense incidental to the principal debt of the monthly rent owed, that was legally prohibited under N.C.G.S. 42-46, in violation of N.C.G.S. § 75-51(8), N.C.G.S. § 75-54, and N.C.G.S. §75-55 (2).

138.    Defendants' actions in violation of North Carolina's Unfair Debt Collection Act were willful.

139.    Plaintiffs and each member of the Class were injured by Defendants' actions and are entitled to damages to be established at trial as well as statutory damages per violation in an amount ranging from $500.00 to $4,000.00 per violation resulting from each of Defendants' unfair debt collection practices pursuant to N.C.G.S. §75-56.

140.    Plaintiffs and each member of the Class were injured and sustained damages by Defendants' actions and are entitled to actual damages to be established at trial as well as statutory damages for each violation in the maximum amount allowed by law, as well as reasonable attorneys' fees for an amount in excess of $25,000.00.

22

### THIRD CAUSE OF ACTION
Violation of the North Carolina Unfair and Deceptive Trade Practices Act
N.C.G.S. § 75-1.1, *et seq.*
(on behalf of all classes)

141. All paragraphs of this Complaint are incorporated herein as if fully restated.

142. At all times relevant herein, Defendants were engaged in commerce in the State of North Carolina.

143. The conduct of Defendants as set forth herein is against the established public policy of the State of North Carolina; is unethical, oppressive, unscrupulous, and substantially injurious to the consumers of North Carolina; and has the capacity and tendency to deceive the average consumer.

144. Defendants' violations of the UDTPA include, but are not limited to, (a) assessing and attempting to collect Eviction Fees when such amounts were not owed; (b) assessing and attempting to collect Eviction Fees when such amounts are expressly prohibited by N.C.G.S. § 42-46; (c) assessing and attempting to collect Eviction Fees prior to filing or serving a complaint in summary ejectment; (d) assessing and attempting to collect Eviction Fees prior to being awarded any such amounts by a North Carolina judge; (e) assessing and attempting to collect Eviction Fees after dismissing complaints in summary ejectments without prejudice; (f) failing to refund any portion of the Eviction Fees when a North Carolina magistrate judge orders costs to be assessed against Defendants; (g) misrepresenting the character, amount, or legal status of the obligation alleged to be owed by Plaintiffs and each member of the class; (h) employing a system, policies, and procedures for the collection of debt which is unfair, deceptive, and misleading, and not permitted by both the public policy of North Carolina and the express statutory provisions of N.C.G.S. § 42-46; (i) utilizing false representations and deceptive measures to collect or attempt to collect Eviction Fees which are unlawful; (j) undertaking

23

actions which Defendants knew, or should have known, offends well-established public policy, state law, and was otherwise unlawful, unfair, deceptive, misleading, coercive, and substantially injurious to consumers, such as Plaintiff; and (k) employing and otherwise undertaking the aforementioned procedures, policies, actions, and methods with the explicit knowledge that such conduct was in violation of applicable North Carolina law.

145.    The matters alleged herein were done willfully, or with the conscious disregard of the rights of Plaintiffs and each member of the Class.

146.    Plaintiffs and members of the Class suffered actual injury as a result of Defendants' unfair actions. Such injury consists of, but is not limited to emotional distress damages and money damages resulting from Defendants' demanding and obtaining fees and costs in excess of amounts allowed pursuant to North Carolina law from Plaintiffs and each member of the Class.

147.    Defendants' actions were in or affecting commerce and constitute unfair and deceptive trade practices, which are proscribed by Chapter 75 of the North Carolina General Statutes.

148.    Plaintiffs and each member of the Class have been damaged and are entitled to recover treble damages and attorneys' fees incurred in this action.

### FOURTH CAUSE OF ACTION
Petition for Declaratory Judgment N.C.G.S. § 1-253, *et seq.*
(on behalf of all classes)

149.    All paragraphs of this Complaint are incorporated herein as if fully restated.

150.    Plaintiffs and the members of the Classes file this Petition for a Declaratory Judgment under N.C.G.S. Chapter 1, Article 25, and the Court has jurisdiction of this matter under such statute.

24

151. Plaintiffs and the members of the Classes have an actual controversy with Defendants regarding the validity and enforceability of a portion of the Lease.

152. The Lease states that"[i]n the event we file a summary ejectment lawsuit against you, we may also recover from you the highest *one* of the following fees (which shall be in addition to late fees, attorney's fees, and any applicable court costs..." and immediately identified and described the three fees identified in N.C.G.S. § 42-46 (e) through (g): Complaint Filing Fee, Court Appearance Fee, and Second Trial Fee. Upon information and belief, every lease during the Relevant Time Period, including Plaintiffs' Leases, contains this same provision.

153. However, N.C.G.S. § 42-46(h)(3) stated (prior to the enactment of the Act) that "[i]t is contrary to public policy for a landlord to put in a lease or claim any fee for filing a complaint for summary ejectment and/or money owed other than the ones expressly authorized by subsections (e) through (g) of this section, and a reasonable attorney's fee as allowed by law."

154. The Eviction Fees, described as "any applicable court costs" in the Lease, constitute a "fee for filing a complaint for summary ejectment" and is separate from and in addition to "the ones expressly authorized by subsections (e) through (g)."

155. Under N.C.G.S. § 42-46(h)(4), "[a]ny provision of a residential rental agreement contrary to the provisions of this section is against the public policy of this State and therefore void and unenforceable." Therefore, because Defendants' lease contains a provision that is void and unenforceable, Plaintiffs and the members of the classes seek an order declaring the Defendants' North Carolina leases to be void and unenforceable insofar as such leases provide for a fee other than the ones expressly authorized by N.C.G.S. § 42-46 (e) through (g).

156. Plaintiffs and the members of the Classes have an actual controversy with

25

Defendants resulting from Defendants' erroneous interpretation of the applicable law.

157.    It is established law in North Carolina that N.G.S.S. § 42-33 is "remedial in nature and will apply only where the parties' lease does not cover the issue of forfeiture of the lease term upon nonpayment of rent. Where the contracting parties have considered the issue, negotiated a response, and memorialized their response within the lease, the trial court appropriately should decline to apply these statutory provisions." *Charlotte Office Tower Associates v. Carolina SNS Corp.*, 89 N.C. App. 697, 701 (N.C. App. 1998).

158.    Defendants entered into written leases that cover the issue of forfeiture of the lease term upon nonpayment of rent with Plaintiffs and members of the classes.

159.    Therefore, because the parties have considered the issue, negotiated a response, and memorialized the response within a written lease, Plaintiffs and the members of the classes seek an order declaring that N.C.G.S. § 42-33 is not applicable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff; and members of the proposed Classes respectfully request that this Court:

1.·    Assume jurisdiction over this action;

2.    Certify the Classes and appointing Plaintiffs and their counsel to represent the classes;

3.    Issue a declaratory judgment that Defendants' actions as set forth herein violated the rights of Plaintiffs and each member of the Proposed Class pursuant to N.C.G.S. § 75-54, or in the alternative N.C.G.S. § 75-1.1;

4.    Issue a declaratory judgment that Defendants' actions as set forth herein violated the rights of Plaintiffs and each member of the Proposed Class pursuant to N.C.G.S. § 75-55, or

26

in the alternative N.C.G.S. § 75-1.1;

5.      Issue a declaratory judgment that Defendants' Standard Lease and any substantially similar residential lease agreement used by Defendants is contrary to N.C.G.S. § 42-46 and therefore void and unenforceable as against public policy;

6.      Issue a declaratory judgment that N.C.G.S. § 42-33 is inapplicable in every instance in which Defendants entered into a written lease agreement that addresses forfeiture of the lease term upon the tenant's nonpayment of rent with Plaintiffs and the members of the classes;

7.      Award Plaintiffs and each member of the Proposed Class compensatory damages in an amount to be determined at trial;

8.      Award Plaintiffs and each member of the Proposed Classes punitive damages amount to be determined at trial;

9.      Award Plaintiffs and each class member a statutory penalty in the amount of no more than $4,000 for each violation of N.C.G.S. § 75-50 *et seq.*;

10.     Award Plaintiffs and each class member damages calculated pursuant to N.C.G.S. § 75-8 for each week that Defendants' illegal conduct occurred;

11.     Award Plaintiffs all statutory and actual damages to which they are entitled separate and apart from the Proposed Class in an amount in excess of $25,000.00;

12.     Treble all damages resulting from a violation of N.C.G.S. § 42-46 in accordance with N.C.G.S. § 75-1.1;

13.     Award attorneys' fees to Plaintiffs and members of the Proposed Class pursuant to N.C.G.S. § 75-16.1;

14.     Tax the costs of this action to Defendants, or any of them;

27

15. Allow a trial by jury on all issues so triable; and

16. Grant Plaintiffs and the members of the Proposed Class such other and further relief as the Court deems just and proper.

This the 21st day of September, 2018.

MAGINNIS LAW, PLLC

BY: _____
EDWARD H. MAGINNIS
N.C. State Bar No. 39317
KARL S. GWALTNEY
N.C. State Bar No. 45118
4801 Glenwood Avenue, Suite 310
Raleigh, North Carolina 27612
Telephone:    919.526.0450
Fax:              919.882.8763
emaginnis@maginnislaw.com
kgwaltney@maginnislaw.com

WHITFIELD BRYSON & MASON LLP

SCOTT C. HARRIS
N.C. Bar No.: 35328
PATRICK M. WALLACE
N.C Bar No..: 48138
900 W. Morgan Street
Raleigh, North Carolina 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
scott@wbmllp.com
pat@wbmllp.com

*Attorneys for Plaintiffs and the proposed Classes*

28

PLAINTIFF'S EXHIBIT 1

## Apartment Lease Contract



NATIONAL APARTMENT ASSOCIATION

Date of Lease Contract: **November 9, 2016**
(when the Lease Contract is filled out)

This is a binding document. Read carefully before signing.

### Moving In — General Information

**1. PARTIES.** This Lease Contract (sometimes referred to as the "lease") is between you, the resident(s) (list all people signing the Lease Contract): **Randi Milroy**

and us, the owner:

**LSREF3 Bravo (Raleigh), LLC**

(name of apartment community or title holder). You've agreed to rent Apartment No. **1400K**, at **1400 K Lake Front Drive**, (street address)
in **Raleigh**, (city), North Carolina, **27613** (zip code) for use as a private residence only. The terms "you" and "your" refer to all residents listed above. The terms "we," "us," and "our" refer to the owner listed above (or any of owner's successors' in interest or assigns). Written notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

**2. OCCUPANTS.** The apartment will be occupied only by you and (list all other occupants not signing the Lease Contract):

No one else may occupy the apartment. Persons not listed above must not stay in the apartment for more than 2 consecutive days without our prior written consent, and no more than twice that many days in any one month.

**3. LEASE TERM.** The initial term of the Lease Contract begins on the **22nd** day of **November**, **2016**, and ends at midnight the **21st** day of **November**, **2017**. This Lease Contract will automatically renew month-to-month unless either party gives at least **60** days written notice of termination or intent to move-out as required by paragraph 36.

**4. SECURITY DEPOSIT.** Unless modified by addenda, the total security deposit at the time of execution of this Lease Contract for all residents in the apartment is $ **0.00**, due on or before the date this Lease Contract is signed, to be administered in accordance with the North Carolina Tenant Security Deposit Act. N.C.G.S. § 42-50 et seq. →

In holding your security deposit, we will (check one):

☒ Deposit the security deposit in a trust account with (name of bank or savings institution) **Wells Fargo Bank, N.A.**

located at (address) **300 N. Greene St.,**
**Greensboro, NC 27401**

or

☐ Furnish a bond from (name or bonding company) _____ located at (address) _____

The security deposit may, in our discretion, be deposited in an interest-bearing account with the bank or savings institution named above. We may retain any interest earned upon the security deposit and may withdraw such interest, if any, from such account as it accrues as often as is permitted by the terms of the account.

Your security deposit will be held and, upon termination of your tenancy, be applied in the manner and for the purposes set forth in paragraphs 40 and 41 of this Lease Contract.

**5. KEYS AND FURNITURE.** You will be provided **2** apartment key(s), **2** mailbox key(s), and **0** other access devices for _____. Your apartment will be (check one):
☐ furnished or ☒ unfurnished.

**6. RENT AND CHARGES.** Unless modified by addenda, you will pay $ **822.00** per month for rent, payable in advance and without demand:
☒ at the on-site manager's office, or
☐ at our online payment site, or
☐ at **650 Lake Front Drive**

Prorated rent of $ **246.60** is due for the remainder of [check one]:
☒ 1st month or ☐ 2nd month, on _____

Otherwise, you must pay your rent on or before the 1st day of each month (due date) with no grace period. Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless expressly authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. If you don't pay all rent on or before the **5** day of the month, you'll pay a late charge of $ **25.00** as provided by law for each returned check or rejected electronic payment. If you don't pay rent on time, you'll be delinquent and all remedies under this Lease Contract will be authorized. We'll also have all other remedies for such violation.

**7. UTILITIES.** We'll pay for the following items, if checked and if permitted by law:
☐ water   ☐ gas   ☐ electricity   ☐ master antenna.
☐ wastewater   ☐ trash   ☐ cable TV   ☐ other _____

You'll pay for all other utilities, related deposits, and any charges, fees, or services on such utilities. You must not allow utilities to be disconnected—including disconnection for not paying your bills—until the lease term or renewal period ends. Cable channels that are provided may be changed during the lease term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-operated lighting. If any utilities are submetered for the apartment, or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance.

**8. INSURANCE.** We do not maintain insurance to cover your personal property or personal injury. We are not responsible to any resident, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other residents, occupants, or invited/uninvited guests or vandalism unless otherwise required by law.

We urge you to get your own insurance for losses to your personal property or injuries due to theft, fire, water damage, pipe leaks and the like.

Additionally, you are [check one] ☒ required to purchase personal liability insurance ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance is an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law.

You acknowledge that no portion of the rent paid by you under this agreement will be specifically allocated for the purchase of the owner's structural fire insurance, though the owner may use a portion of gross rental proceeds obtained from all rental units in the community to purchase such structural fire insurance, and in such an event, that you are in no way a co-insured under any such policy.

**9. LOCKS AND LATCHES.** Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done either before you move in or, if the apartment has a keyless deadbolt on each exterior door, within 10 days after you move in.

You may at any time ask us to: (1) install one keyed deadbolt lock on an exterior door if it does not have one; (2) install a bar and/or sliding door pinlock on each sliding glass door; (3) install one keyless deadbolt on each exterior door; (4) install one doorviewer on each exterior door; and (5) change or rekey locks or latches during the lease term. We must comply with these requests, but you must pay for them.

What You Are Now Requesting. You now request the following to be installed at your expense (if one is not already installed), subject to any statutory restrictions on what you may request.
☒ keyed deadbolt lock          ☐ doorviewer
☐ keyless deadbolt             ☐ sliding door pinlock
☐ sliding door bar

Payment for Rekeying, Repairs, Etc. You must pay for all repairs or replacements arising from misuse or damage to devices by you or your family, occupants, or guests during your occupancy. You may be required to pay in advance if we notify you within a reasonable time after your request that you are more than 30 days delinquent in reimbursing us for repairing or replacing a device which was misused or damaged by you, your guest or an occupant; or if you have requested that we repair, install, change or rekey the same device during the 30 days preceding your request and we have complied with your request.

☑ This document was executed via the NAA E-signature System - ID: 102374827

**10. SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed lease form.

**See special provisions on the last page**

*See any additional special provisions.*

**11. REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the apartment community due to violation of the Lease Contract or rules, improper use, or negligence by you or your guests or occupants. Unless the damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacement costs, and damage to the following if occurring during the Lease Contract term or renewal period:(1) damage to doors, windows, or screens unless caused by either than your negligence; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

**12. (A) EVICTION OR SUMMARY EJECTMENT AND PROPERTY LEFT IN THE APARTMENT.**

In the event you violate any terms or conditions of this Lease Contract or fail to perform any promise, duty or obligation you have agreed to or imposed upon you by law, then we, in addition to all other rights and remedies provided by law, may, at our option and with or without notice to you, either (1) terminate this Lease Contract or (2) terminate your right to possession of the premises without terminating the Lease Contract.

Regardless of whether we terminate this Lease Contract or only terminate your right of possession without terminating this Lease Contract, we shall be immediately entitled to possession of the premises, and you shall peacefully surrender possession of the premises to us immediately upon our demand. In the event that you fail to surrender possession, we shall re-enter and re-take possession through a summary ejectment proceeding or expedited eviction proceeding as provided by North Carolina law. In the event that we terminate this Lease Contract, all of our duties under this agreement shall terminate and we shall be entitled to collect from you all accrued and unpaid rents, realized remittances, and damages arising under this Lease Contract.

If we bring a suit against you for summary ejectment, the County sheriff may remove your personal property from the apartment within 7 days from the time the sheriff receives the Writ of Possession. You must retake possession of your property if it is removed by the sheriff. If you do not do so, the sheriff may arrange for the storage of your property, and you will be liable for the costs of the proceedings and the storage of your property.

If the sheriff does not store your personal property removed from the apartment, we may take possession of it and move it for storage purposes. In the event of an execution of a Writ of Possession against you, you agree that this sentence hereby constitutes our offer to release your personal property to you during our regular business hours for the seven calendar day period following the execution of a Writ of Possession. Seven days after being placed in lawful possession of your personal property by execution of the Writ of Possession, we may throw away, dispose of, or sell your property. If you request that we release your property to you during the seven day period, we must do so during our regular business hours. If we elect to sell your property, we must give you at least seven days notice prior to the sale, and we must release your property to you if you so request before the sale. If you do not request the release of your property within seven days, all costs of summary ejectment, execution and storage proceedings shall be charged to you as court costs and shall constitute a lien against the stored property.

In the event we terminate your right of possession without terminating the Lease Contract, you shall remain liable for the full performance of all the covenants, and we shall use reasonable efforts to re-rent the premises on your behalf and you shall remain liable for any resulting costs, deficiencies or damages. Any such rentals reserved from re-renting shall be applied first to the cost of re-renting the premises and then to the rentals due under this Lease Contract. Re-entry shall not bar the right of

recovery of rent or damages for breach of covenants, nor shall the partial receipt of rent alter conditions broken be deemed a waiver of forfeiture, as provided by N.C.G.S. In order to entitle us to re-enter and/or terminate this Lease Contract for default, it shall not be deemed necessary to give notice of rent being due and unpaid or of other conditions broken or to make demands for rent, the execution of this Lease signed by you and us being sufficient notice of all terms of this Lease Contract including of the rent being due and demand for the same. We shall have all rights granted pursuant to N.C.G.S. §43-23.9 and §43-35A.

**(B) ABANDONED PROPERTY**

If you abandon personal property with a value of $750 or less from apartment or fail to remove such property at the time of execution of a Writ of Possession, we may, as an alternative to the procedures described above, deliver the property to a non-profit organization regularly providing free or inexpensive clothing or household furnishings to people in need, provided that such organization agrees to store the property separately for a thirty-day period, and to release it to you without charge during this thirty-day period. We will deem personal property to be abandoned if we find evidence clearly showing the apartment has been voluntarily vacated after the rental period has expired and we have no notice of a disability that caused the vacancy.

If the total value of the property left in the apartment at the time of execution of a Writ of Possession is less than $500, we may deem the property abandoned after five days and may throw away or dispose of the property.

**13. FAILING TO PAY FIRST MONTH'S RENT.** If you don't pay the first month's rent when or before the Lease Contract begins, we may end your right of occupancy and recover damages, future rent, reletting charges, attorney's fees, court costs, and other lawful charges. This paragraph does not apply to termination of this Lease Contract 14 or more days before occupancy by Military Personnel under Paragraph 22.

**14. RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10, by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under paragraph 17. If, at least 5 days before the advance notice deadline referred to in paragraph 3, we give you written notice of rent increases or lease changes effective when the lease term or renewal period ends, this Lease Contract will automatically continue month-to-month with the increased rent or lease changes. The new modified Lease Contract will begin on the date stated in the notice (without necessity of your signature) unless you give us written move-out notice under paragraph 36.

**15. DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay. The Lease Contract will remain in force subject for: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or Lease Contract termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the apartment.

If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the apartment is ready for occupancy, but not later.

(1) If we give written notice to any of you when or after the initial term as set forth in Paragraph 3—and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date—you may terminate the Lease Contract within 3 days of your receiving the notice, but not later.

(2) If we give written notice to any of you before the initial term as set forth in Paragraph 3 and the notice states that construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days after any of you receives written notice, but not later. The readiness date is considered the new initial term as set forth in Paragraph 3 for all purposes. This new date may not be moved to an earlier date unless we and you agree.

**16. DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it.

**17. COMMUNITY POLICIES OR RULES.** You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are considered part of this Lease Contract. We may make reasonable changes to written rules, effective immediately, if they are distributed and applicable to all units in the apartment community and do not change dollar amounts on page 1 of this Lease Contract.

**18. LIMITATIONS ON CONDUCT.** The apartment and other areas reserved for your private use must be kept clean. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in all common areas. You, your occupants, or guests may not anywhere in the apartment community: use candles or use kerosene lamps or kerosene heaters without our prior written approval; cook on balconies or outside; or solicit business or contributions. Conducting any kind of business (including child care services) in your apartment or in the

apartment community is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas. You'll be liable to us for damage caused by you or any guests or occupants.

We may exclude from the apartment community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community.

You agree to notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance, violence to another person or destruction of property. You also agree to notify us if you or any occupant registers as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our right to evict you.

11092016379702EN02110626

☑ This document was executed via the NAA E-signature System - ID: 102374827

**19. PROHIBITED CONDUCT.** You and your occupants or guests may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the apartment community.

**20. PARKING.** We may regulate the time, manner, and place of parking cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles by anyone. We may have unauthorized or illegally parked vehicles towed under an appropriate statute. A vehicle is unauthorized or illegally parked in the apartment community if it:

(1) has a flat tire or other condition rendering it inoperable; or
(2) is on jacks, blocks or has wheel(s) missing; or
(3) has no current license or no current inspection sticker; or
(4) takes up more than one parking space; or
(5) belongs to a resident or occupant who has surrendered or abandoned the apartment; or
(6) is parked in a marked handicap space without the legally required handicap insignia; or
(7) is parked in a space marked for manager, staff, or guest at the office; or
(8) blocks another vehicle from exiting; or
(9) is parked in a fire lane or designated "no parking" area; or
(10) is parked in a space marked for other resident(s) or unit(s); or
(11) is parked on the grass, sidewalk, or patio; or
(12) blocks garbage trucks from access to a dumpster.

**21. RELEASE OF RESIDENT.** Unless you're entitled to terminate this Lease Contract under paragraphs 10, 15, 22, or 36, you won't be released from this Lease Contract for any reason—including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, or death.

**22. MILITARY PERSONNEL CLAUSE.** You may terminate the Lease Contract if you enlist or are drafted or commissioned in the U.S. Armed Forces. You also may terminate the Lease Contract if:

(1) you are (i) a member of the U.S. Armed Forces or reserves on active duty or (ii) a member of the National Guard called to active duty for more than 30 days in response to a national emergency declared by the President; and

(2) you are either (i) given change-of-station orders to permanently depart the local area, (ii) deployed with a military unit for 90 days or more, or (iii) relieved or released from active duty.

After you deliver to us your written termination notice, the Lease Contract will be terminated under this military clause 30 days after our receipt of the notice. You must furnish us a copy of your permanent change-of-station orders, call-up orders, or deployment orders or letter. Military permission for base housing doesn't constitute a permanent change-of-station order. After your move out, we'll return your security deposit, less lawful deductions. If you or any co-resident are a dependent of a servicemember covered by the U.S. Servicemembers Civil Relief Act, this Lease Contract may not be terminated under this paragraph without applying to a court and showing that your ability to comply with the Lease Contract is materially affected by reason of the servicemember's military service. A co-resident who is not your spouse or dependent cannot terminate under this military clause. If you terminate the Lease Contract 14 or more days before occupancy, no damages or penalties of any kind shall be due.

**23. RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke detectors and carbon monoxide detectors, keyed deadbolt locks, keyless bolting devices, window latches, and other safety or security devices. You agree to make every effort to follow the Security Guidelines on page 6.

**Smoke Detectors and Carbon Monoxide Detectors.** We'll furnish smoke detectors and carbon monoxide detectors as required by statute, and we'll test them and provide working batteries, if applicable, when you first take possession. After that, you must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must periodically inspect the smoke detectors and carbon monoxide detectors to ensure their operability and immediately report smoke detector and carbon monoxide detector malfunctions to us. Neither you nor others may disable smoke detectors and carbon monoxide detectors. If you disable or damage the smoke detector and carbon monoxide detectors, or fail to replace a dead battery or report malfunctions to us, you may be liable to us and others for any loss, damage, or fines from fire, smoke, or water.

**Casualty Loss.** We're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, or vandalism unless otherwise required by law. Unless we instruct otherwise, you must—for 24 hours a day during freezing weather—(1) keep the apartment heated to at least 50 degrees; (2) keep cabinet and closet doors open; and (3) drip hot and cold water faucets. You'll be liable for damage to our and others' property if damage is caused by broken water pipes due to your violating these requirements. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for those services.

**Crime or Emergency.** Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity or other emergency involving imminent harm. You should then contact our representative. You won't treat any of our security measures as an express or implied warranty of security, or as a guarantee against crime or of reduced risk of crime. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. We're not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security unless required by statute. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You must also furnish us with the law-enforcement agency's incident report number upon request.

**24. CONDITION OF THE PREMISES AND ALTERATIONS.** You'll be given an Inventory and Condition form on or before move-in. You must note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke detectors and carbon monoxide detectors, furniture, telephone and cable TV wiring, screens, locks, and security devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

**25. REQUESTS, REPAIRS, AND MALFUNCTIONS. IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST—FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS—IT MUST BE SIGNED AND IN WRITING TO OUR DESIGNATED REPRESENTATIVE** (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, crime in progress, or imminently dangerous conditions as specifically defined by law). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to property, health, or safety. We may charge you or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are rarely emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections.

If we believe that fire or catastrophic damage is substantial, or that performance of needed repairs poses a danger to you, we may terminate this Lease Contract within a reasonable time by giving you written notice. If the Lease Contract is so terminated, we'll refund prorated rent and all deposits, less lawful deductions.

**26. ANIMALS.** No animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the apartment or apartment community unless we've so authorized in writing. If we allow an animal, you must sign a separate animal addendum, which may require additional deposits, rents, fees or other charges. This additional deposit is considered a part of the general security deposit. You must remove an illegal animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. We will authorize a support animal for a disabled (handicapped) person. We may require a written statement from a qualified professional verifying the need for the support animal. You must not feed stray or wild animals.

If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. You shall remove any pet previously permitted under this Lease Contract and the Animal Addendum within ___24___ hours of written notification from us that the pet, in our sole judgment, creates a nuisance or disturbance or is, in our opinion, undesirable. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for defleaing, deodorizing, and shampooing. Initial and daily animal-violation charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules.

**27. WHEN WE MAY ENTER.** If you or any guest or occupant is present, then repairers, servicers, contractors, our representatives or other persons listed in (2) below may peacefully enter the apartment at reasonable times.

11092016379703008022112626

☑ This document was executed via the NAA E-signature System - ID: 102374827

for the purposes listed in (2) below. If reason... ...y is in the apartment, such persons may enter peacefully and at reasonable times by duplicate or master key (or by breaking a window or other means when necessary in emergencies) if:

(1) written notice of the entry is left in a conspicuous place in the apartment immediately after the entry; and
(2) entry is for: responding to your request; making repairs or replacements; estimating repair or refurbishing costs; performing pest control; doing preventive maintenance; changing filters; testing or replacing smoke-detector batteries; retrieving unreturned tools, equipment, or appliances; preventing waste of utilities; leaving notices; delivering, installing, reconnecting, or replacing appliances, furniture, equipment, or security devices; removing or rekeying unauthorized security devices; stopping excessive noise; cutting off electricity provided to statute; retrieving property owned or leased by former residents; inspecting when immediate danger to person or property is reasonably suspected; allowing persons to enter as you authorized in your rental application (if you did, or are incarcerated,

etc.); allowing... ...y by a law officer with search or arrest warrant or in hot pursuit; showing apartment to prospective residents (after move-out or resume notice has been given) or showing apartment to government inspectors for the limited purpose of determining housing and fire ordinance compliance by us and to lenders, appraisers, contractors, prospective buyers, or insurance agents.

**28.** MULTIPLE RESIDENTS OR OCCUPANTS. Each resident is jointly and severally liable for all lease obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of lease termination, repair requests, and entry permissions) constitute notice from all residents. Security-deposit refunds and deduction itemizations of multiple residents will comply with paragraph 41.

## Replacements

**29.** REPLACEMENTS AND SUBLETTING. Replacing a resident, subletting, or assignment is allowed only when we consent in writing. If departing or remaining residents find a replacement resident acceptable to us before moving out and we expressly consent to the replacement, subletting, or assignment, then:

(1) a reletting charge will not be due;
(2) a reasonable administrative (paperwork) and/or transfer fee will be due, and a rekeying fee will be due if rekeying is requested or required; and
(3) the departing and remaining residents will remain liable for all Lease Contract obligations for the rest of the original Lease Contract term.

Procedures for Replacement. If we approve a replacement resident, then, at our option: (1) the replacement resident must sign this Lease Contract with or without an increase in the total security deposit; or (2) the remaining and replacement residents must sign an entirely new Lease Contract. Unless we agree otherwise in writing, your security deposit will automatically transfer to the replacement resident as of the date we approve. The departing resident will no longer have a right of occupancy or security-deposit refund, but will remain liable for the remainder of the original Lease Contract term unless we agree otherwise in writing—even if a new Lease Contract is signed.

## Responsibilities of Owner and Resident

**30.** RESPONSIBILITIES OF OWNER. We'll act with customary diligence to:

(1) comply with the applicable building and housing codes;
(2) make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition;
(3) keep all common areas of the premises in safe condition;
(4) maintain in good and safe working order and promptly repair all facilities and appliances supplied or required to be supplied by us; and.
(5) provide operable smoke detectors and replace or repair the smoke detectors within 15 days of receipt of your written notification to us.

**31.** DEFAULT BY RESIDENT. You'll be in default if you or any guest or occupant violates any terms of this Lease Contract including but not limited to the following violations: (1) you don't pay rent or other amounts that you owe when due; (2) you or any guest or occupant violates the apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (3) you abandon the apartment; (4) you give incorrect or false answers in a rental application; (5) you or any occupant is arrested, convicted, or given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; (6) any illegal drugs or paraphernalia are found in your apartment; (7) you or any guest or occupant engages in any of the prohibited conduct in Paragraph 19; or (8) you or any occupant, in bad faith, makes an invalid complaint to an official or employee of a utility company or the government.

Eviction. If you default, we may re-enter and re-take possession of the premises as provided in Paragraph 12 and may immediately institute proceedings for summary ejectment as provided by law without notice or demand. Termination of your possession rights or subsequent reletting doesn't release you from liability for future rent or other lease obligations. After filing a summary ejectment suit, we may still accept a partial payment of rent or a partial housing subsidy payment; the filing or acceptance doesn't waive or diminish our right of eviction, or any other contractual or statutory right. Accepting a partial payment of rent or a partial housing subsidy payment at any time doesn't waive your default of this Lease Contract; our right in damages past or future rent or other sums; or to file an eviction or to continue with filed eviction proceedings; nor does our exercise of any of our rights in this Paragraph violate Chapter 75 of the N.C. General Statutes.

Holdover. You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then: (1) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (2) rent for the holdover period will be increased by 25% over the then-existing rent, without notice; (3) you'll be liable to us for actual damages arising out of full term of the previously signed Lease Contract of a new resident who

can't occupy because of the holdover; and (4) at our option, we may extend the lease term—for up to one month from the date of notice of lease extension—by delivering written notice to you or your apartment while you continue to hold over.

Other Remedies. If your rent is delinquent and we give you 5 days' prior written notice, we may terminate electricity that we've furnished at your expense, unless governmental regulations on submetering or utility proration provide otherwise, or unless otherwise prohibited by law. We may report unpaid amounts to credit agencies. If you default and move out early, you will pay us any amounts stated in our rental discounts in paragraph 10, in addition to other sums due. Upon your default, we have all other legal remedies, including lease termination and summary ejectment under state statute. We may recover from you attorney's fees and all litigation costs to the extent permitted by law. In the event we file a summary ejectment lawsuit against you, we may also recover from you the highest one of the following fees (which shall be in addition to late fees, attorney's fees, and any applicable court costs):

(1) Complaint Filing Fee. If you are in default of this Lease Contract and if we file and serve a summary ejectment complaint or a complaint for money owed against you, and if we elect to dismiss the complaint after you cure the default, you shall owe Us a Complaint Filing Fee equal to $15.00 or five percent (5%) of the monthly rent, whichever is higher. If the rent is subsidized by a government entity, the Complaint Filing Fee will be $15.00 or 5% of your share of the monthly rent, whichever is higher.

(2) Court Appearance Fee. In the event that (i) we file, serve, and prosecute successfully a summary ejectment complaint or complaint for money owed against you and (ii) a judgment is entered against you, and (iii) if you fail to appeal the judgment within the legally prescribed timeframe, you shall owe us—in lieu of the Complaint Filing Fee—a Court Appearance Fee equal to ten percent (10%) of the monthly rent. If the rent is subsidized by a government entity, the Court Appearance Fee will be 10% of your share of the monthly rent.

(3) Second Trial Fee. In the event that (i) you appeal a judgment of a magistrate and (ii) we prove that you are in default of the lease at the new trial and (iii) we obtain a judgment against you at the new trial, you shall owe us—in lieu of the Complaint Filing Fee and Court Appearance Fee—a Second Trial Fee equal to twelve percent (12%) of the monthly rent. If the monthly rent is subsidized by a government entity, the Second Trial Fee will be 12% of your share of monthly rent.

Mitigation of Damages. If you move out early, you'll be subject to all remedies under North Carolina law. We'll exercise customary diligence to relet and minimize damages. We'll credit all subsequent rent that we actually receive from subsequent residents against your liability for past-due and future rent and other sums due.

## General Clauses

**32.** MISCELLANEOUS. Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us. Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing. No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, liens, or other rights isn't a waiver under any circumstances. Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person

giving a notice under this Lease Contract should retain a copy of the memo, letter or fax that was given. Fax signatures are binding. All notices must be signed.

Exercising one remedy won't constitute an election or waiver of other remedies. Unless prohibited by law or the respective insurance policies, insurance subrogation is waived by all parties. All remedies are cumulative. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations by virtue of acting on our behalf. This Lease Contract binds subsequent owners. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract. All notices and documents may be in English and, at our option, in any language that you read or speak. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies. This Lease Contract is

1109201637070430021130626

Randi. Milroy
© 2016, National Apartment Association, Inc. - 8/2016, North Carolina

Page 4 of 6

☑ This document was executed via the NAA E-signature System - ID: 102374827

subordinate or superior to existing and . . .re recorded mortgages, at lender's option. All Lease Contract obligations must be performed in the county where the apartment is located.

All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.

**Obligation to Vacate.** Resident shall vacate the Premises and remove all of Resident's personal property therefrom at the expiration of the lease term without further notice or demand from Owner.

**FORCE MAJEURE.** If we are prevented from completing performance of any obligations hereunder by an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or other occurrence which is beyond the control of the parties, then we shall be excused from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

Furthermore, if such an event damages the property to materially affect its habitability by some or all residents, we reserve the right to vacate any and all leases and you agree to excuse us from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

**33. PAYMENTS.** At our option and without notice, we may apply money received (other than sale proceeds under paragraph 13, late fees under paragraph 6, or utility payments subject to governmental regulations) first

to any of our un, . . obligations, then to current rent—regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments.

**34. ASSOCIATION MEMBERSHIP.** We represent that either: (1) we or (2) the management company that represents us, is at the time of signing this Lease Contract or a renewal of this Lease Contract, a member of both the National Apartment Association and any affiliated state and local apartment (multi-housing) associations for the area where the apartment is located.

**35. SECURITY GUIDELINES.** In cooperation with the National Apartment Association, we'd like to give you some important safety guidelines. We recommend you follow the guidelines and use common sense in practicing safe conduct. Inform all other occupants in your dwelling, including any children you may have, about these guidelines.

**PERSONAL SECURITY—WHILE INSIDE YOUR APARTMENT**

1. Lock your doors and windows—even while you're inside.
2. Engage the keyless deadbolts on all doors while you're inside.
3. When answering the door, see who is there by looking through a window or peephole. If you don't know the person, first talk with him or her without opening the door. Don't open the door if you have any doubts.
4. If children (who are old enough to take care of themselves) are left alone in your apartment, tell them to use the keyless deadbolt and refuse to let anyone inside while you are gone—regardless of whether the person is a stranger or an apartment maintenance or management employee.
5. Don't put your name, address, or phone number on your key ring.
6. If you're concerned because you've lost your key or because someone you distrust has a key, ask the management to rekey the locks. You have a right to have that done, as long as you pay for the rekeying.
7. Dial 911 for emergencies. If the 911 number does not operate in your area, keep phone numbers handy for the police, fire, and emergency medical services. If an emergency arises, call the appropriate governmental authorities first, then call the management.
8. Check your smoke detector and carbon monoxide detector monthly to make sure it is working properly and the batteries are still okay.
9. Check your door locks, window latches, and other devices regularly to be sure they are working properly.
10. If your doors or windows are unsecure due to break-ins or malfunctioning locks or latches, stay with friends or neighbors until the problem is fixed.
11. Immediately report to management—in writing, dated and signed—any needed repairs of locks, latches, doors, windows, smoke detectors, and alarm systems.
12. Immediately report to management—in writing, dated and signed—any malfunction of other safety devices outside your apartment, such as broken gate locks, burned-out lights in stairwells and parking lots, blocked passages, broken railings, etc.
13. Close curtains, blinds, and window shades at night.
14. Mark or engrave your driver's license number or other identification on valuable personal property.

**PERSONAL SECURITY—WHILE OUTSIDE YOUR APARTMENT**

15. Lock your doors while you're gone. Lock any door handle lock, keyed deadbolt lock, sliding door pin lock, sliding door handle latch, and sliding door bar that you have.
16. Leave a radio or TV playing softly while you're gone.
17. Close and latch your windows while you're gone, particularly when you're on vacation.
18. Tell your roommate or spouse where you're going and when you'll be back.
19. Don't walk alone at night. Don't allow your family to do so.
20. Don't hide a key under the doormat or a nearby flowerpot. These are the first places a burglar will look.
21. Don't give entry keys, codes or electronic gate cards to anyone.
22. Use lamp timers when you go out in the evening or go away on vacation. They can be purchased at most hardware stores.
23. Let the manager and your friends know if you'll be gone for an extended time. Ask your neighbors to watch your apartment since the management cannot assume that responsibility.
24. While on vacation, temporarily stop your newspaper and mail delivery, or have your mail and newspaper picked up daily by a friend.
25. Carry your door key in your hand, whether it is daylight or dark, when walking to your entry door. You are more vulnerable when looking for your keys at the door.

**PERSONAL SECURITY—WHILE USING YOUR CAR**

26. Lock your car doors while driving. Lock your car doors and roll up the windows when leaving your car parked.
27. Don't leave exposed items in your car, such as cassette tapes, wrapped packages, briefcases, or purses.
28. Don't leave your keys in the car.
29. Carry your key ring in your hand whenever you are walking to your car—whether it is daylight or dark and whether you are at home, school, work, or on vacation.
30. Always park in a well-lighted area. If possible, try to park your car in an off-street parking area rather than on the street.
31. Check the backseat before getting into your car.
32. Be careful when stopping at gas stations or automatic-teller machines at night—or anytime when you suspect danger.

**PERSONAL SECURITY AWARENESS**

No security system is failsafe. Even the best system can't prevent crime. Always act as if security systems don't exist since they are subject to malfunction, tampering, and human error. We disclaim any express or implied warranties of security. The best safety measures are the ones you perform as a matter of common sense and habit.

**36. MOVE-OUT NOTICE.** Before moving out, you must give our representative advance written move-out notice as provided below. Your move-out notice will not release you from liability for the full term of the Lease Contract or renewal term. You will still be liable for the entire Lease Contract term if you move out early (paragraph 21) except under the military clause (paragraph 22). **YOUR MOVE-OUT NOTICE MUST COMPLY WITH EACH OF THE FOLLOWING:**

- We must receive advance written notice of your move-out date. The advance notice must be at least the number of days of notice required in paragraph 3. Oral move-out notice will not be accepted and will not terminate your Lease Contract.
- Your move-out notice must not terminate the Lease Contract sooner than the end of the Lease Contract term or renewal period.

**YOUR NOTICE IS NOT ACCEPTABLE IF IT DOES NOT COMPLY WITH ALL OF THE ABOVE.** Please use our written move-out form. You must obtain from our representative a written acknowledgment that we received your move-out notice. If we terminate the Lease Contract, we must give you the same advance notice—unless you are in default.

**37. MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the lease term or renewal period ends unless all rent for the entire lease term or renewal period is paid in full. Early move-out may result in reletting charges. You're prohibited by law from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must vacate the apartment before the

30-day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

**38. CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

**39. MOVE-OUT INSPECTION.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

**40. SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** We may deduct sums from your security deposit for charges related to the following: your possible non-payment of rent, costs of water and sewer services provided, damage to the premises, damage or destruction of smoke detectors or carbon monoxide detectors, nonfulfillment of the rental period, any unpaid bills that became a lien against the demised property due to your occupancy, costs of re-renting the premises after breach by you, including but not limited to any reasonable fees or commission paid by the landlord to a licensed real estate broker to re-rent the premises, costs of removal and storage of your property after a summary ejectment proceeding, court costs, or any fee authorized by N.C. GEN. STAT. § 42-46.

1109201637970SMMJ2110626

☑ This document was executed via the NAA E-signature System - ID: 102374823

**41. DEPOSIT RETURN, SURRENDER, A.  ABANDONMENT.** If we can determine the full extent of our deductions from your security deposit, we'll mail you your security deposit refund (less lawful deductions) and an itemized accounting of any deductions no later than 30 days after termination of your tenancy under this Lease Contract and delivery of possession by you, unless statutes provide otherwise. If we cannot determine the full extent of our deductions from your security deposit within the aforementioned 30 day period, we'll mail you an interim itemized accounting of our deductions from the deposit within 30 days after termination of your tenancy under this Lease Contract and delivery of possession by you, and we'll also mail your security deposit refund (less lawful deductions) and a final itemized accounting of any deductions no later than 60 days after termination of your tenancy under this Lease Contract and delivery of possession by you.

You have surrendered the apartment when: (1) the move-out date has passed and no one is living in the apartment in our reasonable judgment; or (2) all apartment keys and access devices listed in paragraph 5 have been turned in where rent is paid—whichever date occurs first.

You have abandoned the apartment when all of the following have occurred: (1) everyone appears to have moved out in our reasonable judgment; (2) clothes, furniture, and personal belongings have been substantially removed in our reasonable judgment; (3) you've been in default for non-payment of rent for 5 consecutive days or water, gas, or electric service for the apartment not connected in our name has been terminated; and (4) you've not responded for 2 days to our notice left on the inside of the main entry door, stating that we consider the apartment abandoned. An apartment is also "abandoned" 10 days after the death of a sole resident.

Surrender, abandonment, and judicial eviction end your right of possession for all purposes and gives us the immediate right to clean up, make repairs in, and relet the apartment, and determine any security deposit deductions. Surrender, abandonment, and judicial eviction affect your rights to property left in the apartment (paragraph 12), but do not affect our mitigation obligations (paragraph 31).

**42. ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, with original signatures—one for you and one or more for us. Our rules and community policies, if any, will be attached to the Lease Contract and given to you at signing. When an Inventory and Condition form is completed, both you and we should retain a copy. The items checked below are attached to this Lease Contract and are binding even if not initialed or signed.

☒ Animal Addendum
☒ Inventory and Condition Form
☒ Mold Addendum
☐ Enclosed Garage Addendum
☒ Community Policies Addendum
☐ Lease Contract Guaranty (_____, guarantee, if more than one)
☐ Notice of Intent to Move Out Form
☐ Parking Permit or Sticker (quantity: _____)
☒ Satellite Dish or Antenna Addendum
☐ Asbestos Addendum (if asbestos is present)
☐ Lead Hazard Information and Disclosure Addendum (federal)
☒ Utility Addendum
☐ Remote Control, Card or Code Access Gate Addendum
☐ Intrusion Alarm Addendum
☒ Other NCHC Rules & Regs
☒ Other Bed Bug Addendum

You are legally bound by this document.
Read it carefully before signing.

Resident or Residents (all sign below)
_Daisy_

_____
_____
_____
_____

Owner or Owner's Representative (signing on behalf of owner)
_William Hubbard_

Address and phone number of owner's representative for notice purposes
**650 Lake Front Drive**
**Raleigh, NC 27613**
**(919) 781-6294**

Name and address of locator service (if applicable)
_____
_____
_____

Date form is filled out (same as on top of page 1) ____11/09/2016____

SPECIAL PROVISIONS (CONTINUED FROM PAGE 1) __Notwithstanding language in sec.32 of this Lease,__
__parties do not waive any rights of subrogation. Your rent, utility (as further described in__
__the utility addenda attached to the Agreement) and pest/trash/etc. charges will be combined__
__in one mailing Resident OneBill. These charges will be payable to Owner on or before the__
__date on the OneBill. A rent service fee of $1.69 will appear on each monthly statement. This__
__fee is related to rent billing and does not include the billing fee for water, sewer or__
__trash. Fees for these items are disclosed on the Water/Wastewater Utility Addendum. If this__
__Lease Contract has automatically renewed month to month at least a 30 day written notice of__
__termination or intent to move-out will be required by either party as required by par. 36.__

_____
_____
_____
_____
_____
_____
_____

**Bell Partners Inc.**
**Randi Milroy**

© 2016, National Apartment Association, Inc.        North Carolina/National Apartment Association Official Form, August 2016

1109201637970626NN02110626

Page 6 of 6

☑ This document was executed via the NAA E-signature System - ID: 102374827

Case 5:18-cv-00516-D    Document 1-1    Filed 10/30/18    Page 39 of 79


PLAINTIFF'S EXHIBIT 2



# Apartment Lease Contract

**NATIONAL APARTMENT ASSOCIATION**

Date of Lease Contract: __November 20, 2017__
(when the Lease Contract is filled out)

*This is a binding document. Read carefully before signing.*

## Moving In — General Information

**1. PARTIES.** This Lease Contract (sometimes referred to as the "lease") is between you, the resident(s) (list all people signing the Lease Contract): __Randi Milroy__

_____ and us, the owner:
__LSREF3 Bravo (Raleigh), LLC__

(name of apartment community or title holder). You've agreed to rent Apartment No. __1400K__ at __1400 K Lake Front Drive__ ,
(street address)
in __Raleigh__ (city), North Carolina
__27613__ (zip code) for use as a private residence only. The terms "you" and "your" refer to all residents listed above. The terms "we," "us," and "our" refer to the owner listed above for any of owner's successors in interest or assigns). Written notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

**2. OCCUPANTS.** The apartment will be occupied only by you and (list all other occupants not signing the Lease Contract):
_____
_____
_____
_____

No one else may occupy the apartment. Persons not listed above must not stay in the apartment for more than 2 consecutive days without our prior written consent, and no more than twice that many days in any one month.

**3. LEASE TERM.** The initial term of the Lease Contract begins on the __22nd__ day of __November__ , __2017__ , and ends at midnight the __21st__ day of __November__ , __2018__ . This Lease Contract will automatically renew month-to-month unless either party gives at least __60__ days written notice of termination or intent to move-out as required by paragraph 36.

**4. SECURITY DEPOSIT.** Unless modified by addenda, the total security deposit at the time of execution of this Lease Contract for all residents in the apartment is $ __0.00__ , due on or before the date this Lease Contract is signed, to be administered in accordance with the North Carolina Tenant Security Deposit Act, N.C.G.S. § 42-50 et seq.

In holding your security deposit, we will (check one):

☒ Deposit the security deposit in a trust account with (name of bank or savings institution) Wells Fargo Bank, N.A.

located at (address) 300 N. Greene St.
Greensboro, NC 27401

or

☐ Furnish a bond from (name of bonding company) _____ located at
(address) _____

The security deposit may, in our discretion, be deposited in an interest-bearing account with the bank or savings institution named above. We may retain any interest earned upon the security deposit and may withdraw such interest, if any, from such account as it accrues as often as is permitted by the terms of the account.

Your security deposit will be held and, upon termination of your tenancy, be applied in the manner and for the purposes set forth in paragraphs 40 and 41 of this Lease Contract.

**5. KEYS AND FURNITURE.** You will be provided __2__ apartment key(s), __2__ mailbox key(s), and __0__ other access devices for _____ . Your apartment will be (check one):
☐ furnished or ☒ unfurnished.

**6. RENT AND CHARGES.** Unless modified by addenda, you will pay $ __838.00__ per month for rent, payable in advance and without demand:
☒ at the on-site manager's office, or
☐ at our online payment site, or
☒ at __650 Lake Front Drive__
_____

Prorated rent of $ __251.40__ is due for the remainder of (check one):
☒ 1st month or ☐ 2nd month, on _____

Otherwise, you must pay your rent on or before the 1st day of each month (due date) with no grace period. Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless expressly authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. If you don't pay all rent on or before the __5__ day of the month, you'll pay a late charge of 5% of the rental payment or $15.00, whichever is greater. You'll also pay a charge of $ __25.00__ as provided by law for each returned check or rejected electronic payment. If you don't pay rent on time, you'll be delinquent and all remedies under this Lease Contract will be authorized. We'll also have all other remedies for such violation.

**7. UTILITIES.** We'll pay for the following items, if checked and if permitted by law:
☐ water ☐ gas ☐ electricity ☐ master antenna.
☐ wastewater ☐ trash ☐ cable TV ☐ other _____.

You'll pay for all other utilities, related deposits, and any charges, fees, or services on such utilities. You must not allow utilities to be disconnected—including disconnection for not paying your bills—until the lease term or renewal period ends. Cable channels that are provided may be changed during the lease term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-operated lighting. If any utilities are submetered for the apartment, or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance.

**8. INSURANCE.** We do not maintain insurance to cover your personal property or personal injury. We are not responsible in any resident, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other residents, occupants, or invited/uninvited guests or vandalism unless otherwise required by law.

We urge you to get your own insurance for losses to your personal property or injuries due to theft, fire, water damage, pipe leaks and the like.

Additionally, you are (check one) ☒ required to purchase personal liability insurance ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance is an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law.

You acknowledge that no portion of the rent paid by you under this agreement will be specifically allocated for the purchase of the owner's structural fire insurance, though the owner may use a portion of gross rental proceeds obtained from all rental units in the community to purchase such structural fire insurance, and in such an event, that you are in no way a co-insured under any such policy.

**9. LOCKS AND LATCHES.** Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done either before you move in or, if the apartment has a keyless deadbolt on each exterior door, within 10 days after you move in.

You may at any time ask us to: (1) install one keyed deadbolt lock on an exterior door if it does not have one; (2) install a bar and/or sliding door pinlock on each sliding glass door; (3) install one keyless deadbolt on each exterior door; (4) install one doorviewer on each exterior door; and (5) change or rekey locks or latches during the lease term. We must comply with those requests, but you must pay for them.

What You Are Now Requesting. You now request the following to be installed at our expense (if one is not already installed), subject to any statutory restrictions on what you may request:

☒ keyed deadbolt lock ☐ doorviewer
☐ keyless deadbolt ☐ sliding door pinlock
☐ sliding door bar

Payment for Rekeying, Repairs, Etc. You must pay for all repairs or replacements arising from misuse or damage to devices by you or your family, occupants, or guests during your occupancy. You may be required to pay in advance if we notify you within a reasonable time after your request that you are more than 30 days delinquent in reimbursing us for repairing or replacing a device which was misused or damaged by you, your guest or an occupant; or if you have requested that we repair, install, change or rekey the same device during the 30 days preceding your request and we have complied with your request.

☑ This document was executed via the NAA E-signature System - ID: 126393975

**10. SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed lease form.

*See special provisions on the last page*

See any additional special provisions.

**11. REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the apartment community due to violation of the Lease Contract or rules, improper use, or negligence by you or your guests or occupants. Unless the damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacement costs, and damage to the following if occurring during the Lease Contract term or renewal period:(1) damage to doors, windows, or screens unless caused by other than your negligence; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

**12. (A) EVICTION OR SUMMARY EJECTMENT AND PROPERTY LEFT IN THE APARTMENT.**

In the event you violate any terms or conditions of this Lease Contract or fail to perform any promise, duty or obligation you have agreed to or imposed upon you by law, then we, in addition to all other rights and remedies provided by law, may, at our option and with or without notice to you, either (1) terminate this Lease Contract or (2) terminate your right to possession of the premises without terminating the Lease Contract.

Regardless of whether we terminate this Lease Contract or only terminate your right of possession without terminating this Lease Contract, we shall be immediately entitled to possession of the premises and you shall peacefully surrender possession of the premises to us immediately upon our demand. In the event that you fail to surrender possession, we shall re-enter and re-take possession through a summary ejectment proceeding or expedited eviction proceeding as provided by North Carolina law. In the event that we terminate this Lease Contract, all of our duties under this agreement shall terminate and we shall be entitled to collect from you all accrued and unpaid rents, realized concessions, and damages arising under this Lease Contract.

If we bring a suit against you for summary ejectment, the County sheriff may remove your personal property from the apartment within 7 days from the time the sheriff receives the Writ of Possession. You must retake possession of your property if it is removed by the sheriff. If you do not do so, the sheriff may arrange for the storage of your property, and you will be liable for the costs of the proceedings and the storage of your property.

If the sheriff does not store your personal property removed from the apartment, we may take possession of it and store it for storage purposes. In the event of an execution of a Writ of Possession against you, you agree that this sentence hereby constitutes our offer to release your personal property to you during our regular business hours for the seven calendar-day period following the execution of a Writ of Possession. Seven days after being placed in lawful possession of your personal property by execution of the Writ of Possession, we may throw away, dispose of, or sell your property. If you request that we release your property to you during the seven day period, we must do so during our regular business hours. If we elect to sell your property, we must give you at least seven days notice prior to the sale, and we must release your property to you if you so request before the sale. If you do not request the release of your property within seven days, all costs of summary ejectment, execution and storage proceedings shall be charged to you as court costs and shall constitute a lien against the stored property.

In the event we terminate your right of possession without terminating this Lease Contract, you shall remain liable for the full performance of all the covenants, and we shall use reasonable efforts to re-rent the premises on your behalf and you shall remain liable for any resulting costs, deficiencies or damages. Any such rentals received from re-renting shall be applied first to the cost of re-renting the premises and then to the rentals due under this Lease Contract. Re-entry shall not bar the right of

recovery of rent or damages for breach of covenants, nor shall the partial receipt of rent after conditions broken be deemed a waiver of forfeiture, as provided by N.C.G.S. In order to entitle us to re-enter and/or terminate this Lease Contract for default, it shall not be deemed necessary to give notice of rent being due and unpaid or of other conditions broken or to make demands for rent, the execution of this Lease signed by you and us being sufficient notice of all terms of this Lease Contract including of the rent being due and demand for the same. We shall have all rights granted pursuant to N.C.G.S. §42-25.9 and §42-25.6.

**(B) ABANDONED PROPERTY**

If you abandon personal property with a value of $750 or less from apartment or fail to remove such property at the time of execution of a Writ of Possession, we may, as an alternative to the procedures described above, deliver the property to a non-profit organization regularly providing free or inexpensive clothing or household furnishings to people in need, provided that such organization agrees to store the property separately for a thirty-day period, and to release it to you without charge during this thirty-day period. We will deem personal property to be abandoned if we find evidence clearly showing the apartment has been voluntarily vacated after the rental period has expired and we have no notice of a disability that caused the vacancy.

If the total value of the property left in the apartment at the time of execution of a Writ of Possession is less than $500, we may deem the property abandoned after five days and may throw away or dispose of the property.

**13. FAILING TO PAY FIRST MONTH'S RENT.** If you don't pay the first month's rent when or before the Lease Contract begins, we may end your right of occupancy and recover damages, future rent, reletting charges, attorney's fees, court costs, and other lawful charges. This paragraph does not apply to termination of this Lease Contract 14 or more days before occupancy by Military Personnel under Paragraph 22.

**14. RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10, by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under paragraph 17. If, at least 5 days before the advance notice deadline referred to in paragraph 3, we give you written notice of rent increases or lease changes effective when the Lease term or renewal period ends, this Lease Contract will automatically continue month-to-month with the increased rent or lease changes. The new modified Lease Contract will begin on the date stated in the notice (without necessity of your signature) unless you give us written move-out notice under paragraph 36.

**15. DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or Lease Contract termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the apartment.

If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the apartment is ready for occupancy, but not later.

(1) If we give written notice to any of you when on after the initial term as set forth in Paragraph 3—and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date—you may terminate the Lease Contract within 3 days of your receiving the notice, but not later.

(2) If we give written notice to any of you before the initial term as set forth in Paragraph 3 and the notice states that construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days after any of you receives written notice, but not later. The readiness date is considered the new initial term as set forth in Paragraph 3 for all purposes. This new date may not be moved to an earlier date unless we and you agree.

**16. DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it.

**17. COMMUNITY POLICIES OR RULES.** You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are considered part of this Lease Contract. We may make reasonable changes to written rules, effective immediately, if they are distributed and applicable to all units in the apartment community and do not change dollar amounts on page 1 of this Lease Contract.

**18. LIMITATIONS ON CONDUCT.** The apartment and other areas reserved for your private use must be kept clean. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in all common areas. You, your occupants, or guests may not anywhere in the apartment community: use candles or use kerosene lamps or kerosene heaters without our prior written approval; cook on balconies or outside; or solicit business or contributions. Conducting any kind of business (including child care services) in your apartment or in the

apartment community is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas. You'll be liable to us for damage caused by you or any guests or occupants.

We may exclude from the apartment community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community.

You agree to notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance, violence to another person or destruction of property. You also agree to notify us if you or any occupant registers as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our right to evict you.

☑ This document was executed via the NAA E-signature System - ID: 176393971

**19. PROHIBITED CONDUCT.** You and your occupants or guests may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the apartment community.

**20. PARKING.** We may regulate the time, manner, and place of parking cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles by anyone. We may have unauthorized or illegally parked vehicles towed under an appropriate statute. A vehicle is unauthorized or illegally parked in the apartment community if it:

(1) has a flat tire or other condition rendering it inoperable; or
(2) is on jacks, blocks or has wheel(s) missing; or
(3) has no current license or no current inspection sticker; or
(4) takes up more than one parking space; or
(5) belongs to a resident or occupant who has surrendered or abandoned the apartment; or
(6) is parked in a marked handicap space without the legally required handicap insignia; or
(7) is parked in space marked for manager, staff, or guest at the office; or
(8) blocks another vehicle from exiting; or
(9) is parked in a fire lane or designated "no parking" area; or
(10) is parked in a space marked for other resident(s) or unit(s); or
(11) is parked on the grass, sidewalk, or patio; or
(12) blocks garbage trucks from access to a dumpster.

**21. RELEASE OF RESIDENT.** Unless you're entitled to terminate this Lease Contract under paragraphs 10, 15, 22, or 36, you won't be released from this Lease Contract for any reason—including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, or death.

**22. MILITARY PERSONNEL CLAUSE.** You may terminate the Lease Contract if you enlist or are drafted or commissioned in the U.S. Armed Forces. You also may terminate the Lease Contract if:

(1) you are (i) a member of the U.S. Armed Forces or reserves an active duty or (ii) a member of the National Guard called to active duty for more than 30 days in response to a national emergency declared by the President; and
(2) you are either (i) given change-of-station orders to permanently depart the local area, (ii) deployed with a military unit for 90 days or more, or (iii) relieved or released from active duty.

After you deliver to us your written termination notice, the Lease Contract will be terminated under this military clause 30 days after your receipt of the notice. You must furnish us a copy of your permanent change-of-station orders, call-up orders, or deployment orders or letter. Military permission for base housing doesn't constitute a permanent change-of-station order. After your move out, we'll return your security deposit, less lawful deductions. If you or any co-resident are a dependent of a servicemember covered by the U.S. Servicemembers Civil Relief Act, this Lease Contract may not be terminated under this paragraph without applying to a court and showing that your ability to comply with the Lease Contract is materially affected by reason of the servicemember's military service. A co-resident who is not your spouse or dependent cannot terminate under this military clause. If you terminate this Lease Contract 14 or more days before occupancy, no damages or penalties of any kind shall be due.

**23. RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke detectors and carbon monoxide detectors, keyed deadbolt locks, keyless bolting devices, window latches, and other safety or security devices. You agree to make every effort to follow the Security Guidelines on page.

**Smoke Detectors and Carbon Monoxide Detectors.** We'll furnish smoke detectors and carbon monoxide detectors as required by statute, and we'll test them and provide working batteries, if applicable, when you first take possession. After that, you must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must periodically inspect the smoke detectors and carbon monoxide detectors to ensure their operability and immediately report smoke detector and carbon monoxide detector malfunctions to us. Neither you nor others may disable smoke detectors and carbon monoxide detectors. If you disable or damage the smoke detector and carbon monoxide detectors, or fail to replace a dead battery or report malfunctions to us, you may be liable to us and others for any loss, damage, or lines from fire, smoke, or water.

**Casualty Loss.** We're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, or vandalism unless otherwise required by law. Unless we instruct otherwise, you must—for 24 hours a day during freezing weather—(1) keep the apartment heated to at least 50 degrees; (2) keep cabinet and closet doors open; and (3) drip hot and cold water faucets. You'll be liable for damage to our and others' property if damage is caused by broken water pipes due to your violating these requirements. If you ask our representative to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for those services.

**Crime or Emergency.** Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity or other emergency involving imminent harm. You should then contact our representative. You won't treat any of our security measures as an express or implied warranty of security, or as a guarantee against crime or of reduced risk of crime. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. We're not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security unless required by statute. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You must also furnish us with the law-enforcement agency's incident report number upon request.

**24. CONDITION OF THE PREMISES AND ALTERATIONS.** You'll be given an Inventory and Condition form on or before move-in. You must note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke detectors, furniture, telephone and cable TV wiring, screens, locks, and security devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

**25. REQUESTS, REPAIRS, AND MALFUNCTIONS. IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST—FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS—IT MUST BE SIGNED AND IN WRITING TO OUR DESIGNATED REPRESENTATIVE** (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, crime in progress, or imminently dangerous conditions as specifically defined by law). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to property, health, or safety. We may charge or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are rarely emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections.

If we believe that fire or catastrophic damage is substantial, or that performance of needed repairs poses a danger to you, we may terminate this Lease Contract within a reasonable time by giving you written notice. If the Lease Contract is so terminated, we'll refund prorated rent and all deposits, less lawful deductions.

**26. ANIMALS.** *No animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the apartment or apartment community unless we've so authorized in writing.* If we allow an animal, you must sign a separate animal addendum, which may require additional deposits, rents, fees or other charges. This additional deposit is considered a part of the general security deposit. You must remove an illegal animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. We will authorize a support animal for a disabled (handicapped) person. We may require a written statement from a qualified professional verifying the need for the support animal. You must not feed stray or wild animals.

If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. You shall remove any pet previously permitted under this Lease Contract and the Animal Addendum within ____24____ hours of written notification from us that the pet, in our sole judgment, creates a nuisance or disturbance or is, in our opinion, undesirable. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for defleaing, deodorizing, and shampooing. Initial and daily animal-violation charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules.

**27. WHEN WE MAY ENTER.** If you or any guest or occupant is present, then repairers, servicers, contractors, our representatives or other persons listed in (2) below may peaceably enter the apartment at reasonable times

☑ This document was executed via the NAA E-signature System - ID: 126393975

for the purposes listed in (2) below. If nobody is in the apartment, such persons may enter peacefully and at reasonable times by duplicate or master key (or by breaking a window or other means when necessary in emergencies) if:

(1) written notice of the entry is left in a conspicuous place in the apartment immediately after the entry; and

(2) entry is for: responding to your request; making repairs or replacements; estimating repair or refurbishing costs; performing pest control; doing preventive maintenance; changing filters; testing or replacing smoke-detector batteries; retrieving unreturned tools, equipment, or appliances; preventing waste of utilities; leaving notices; delivering, installing, reconnecting, or replacing appliances, furniture, equipment, or security devices; removing or rekeying unauthorized security devices; stopping excessive noise; cutting off electricity according to statute; retrieving property owned or leased by former residents; inspecting when immediate danger to person or property is reasonably suspected; allowing persons to enter as you authorized in your rental application (if you die, are incarcerated,

etc.); allowing entry by a law officer with search or arrest warrant or in hot pursuit; showing apartment to prospective residents (after move-out or vacate notice has been given) or showing apartment to government personnel or the limited purpose of determining housing and fire ordinance compliance by us and to lenders, appraisers, contractors, prospective buyers, or insurance agents.

**28. MULTIPLE RESIDENTS OR OCCUPANTS.** Each resident is jointly and severally liable for all lease obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of lease termination, repair requests, and entry permissions) constitute notice from all residents. Security-deposit refunds and deduction itemizations of multiple residents will comply with paragraph 41.

**29. REPLACEMENTS AND SUBLETTING.** Replacing a resident, subletting, or assignment is allowed only when we consent in writing. If departing or remaining residents find a replacement resident acceptable to us before moving out and we expressly consent to the replacement, subletting, or assignment, then

(1) a reletting charge will not be due;

(2) a reasonable administrative (paperwork) and/or transfer fee will be due, and a rekeying fee will be due if rekeying is requested or required; and

(3) the departing and remaining residents will remain liable for all Lease Contract obligations for the rest of the original Lease Contract term.

Procedures for Replacement. If we approve a replacement resident, then, at our option: (1) the replacement resident must sign this Lease Contract with or without an increase in the total security deposit; or (2) the remaining and replacement residents must sign an entirely new Lease Contract. Unless we agree otherwise in writing, your security deposit will automatically transfer to the replacement resident as of the date we approve. The departing resident will no longer have a right of occupancy or security-deposit refund, but will remain liable for the remainder of the original Lease Contract term unless we agree otherwise in writing—even if a new Lease Contract is signed.

**30. RESPONSIBILITIES OF OWNER.** We'll act with customary diligence to:

(1) comply with the applicable building and housing codes;

(2) make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition;

(3) keep all common areas of the premises in safe condition;

(4) maintain in good and safe working order and promptly repair all facilities and appliances supplied or required to be supplied by us and;

(5) provide operable smoke detectors and replace or repair the smoke detectors within 15 days of receipt of your written notification to us.

**31. DEFAULT BY RESIDENT.** You'll be in default if you or any guest or occupant violates any terms of this Lease Contract including but not limited to the following violations: (1) you don't pay rent or other amounts that you owe when due; (2) you or any guest or occupant violates the apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (3) you abandon the apartment; (4) you give incorrect or false answers in a rental application; (5) you or any occupant is arrested, convicted, or given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; (6) any illegal drugs or paraphernalia are found in your apartment; (7) you or any guest or occupant engages in any of the prohibited conduct in Paragraph 19; or (8) you or any occupant, in bad faith, makes an invalid complaint to an official or employee of a utility company or the government.

Eviction. If you default, we may re-enter and re-take possession of the premises as provided in Paragraph 22 and may immediately institute proceedings for summary ejectment as provided by law without notice or demand. Termination of your possession rights or subsequent reletting doesn't release you from liability for future rent or other lease obligations. After filing a summary ejectment suit, we may still accept a partial payment of rent or a partial housing subsidy payment; the filing of acceptance doesn't waive or diminish our right of eviction, or any other contractual or statutory right. Accepting a partial payment of rent or a partial housing subsidy payment at any time doesn't waive your default of this Lease Contract; our right to damages; past or future rent or other sums; or an file an eviction or to continue with filed eviction proceedings; nor does our exercise of any of our rights in this Paragraph violate Chapter 75 of the N.C. General Statutes.

Holdover. You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then: (1) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (2) rent for the holdover period will be increased by 25% over the then-existing rent, without notice; (3) you'll be liable to us for actual damages arising out of full term of the previously signed Lease Contract of a new resident who

**32. MISCELLANEOUS.** Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us. Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing. No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, liens, or other rights isn't a waiver under any circumstances. Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person

can't occupy any because of the holdover; and (4) at our option, we may extend the lease term—for up to one month from the date of notice of lease extension—by delivering written notice to you or your apartment while you continue to hold over.

Other Remedies. If your rent is delinquent and we give you 5 days' prior written notice, we may terminate electricity that we've furnished at our expense, unless governmental regulations on submetering or utility proration provide otherwise, or unless otherwise prohibited by law. We may report unpaid amounts to credit agencies. If you default and move out early, you will pay us any amounts stated to be rental discounts in paragraph 10, in addition to other sums due. Upon your default, we have all other legal remedies, including lease termination and summary ejectment under state statute. We may recover from you attorney's fees and all litigation costs to the extent permitted by law. In the event we file a summary ejectment lawsuit against you, we may also recover from you the highest one of the following fees (which shall be in addition to late fees, attorney's fees, and any applicable court costs):

(1) Complaint Filing Fee. If you are in default of this Lease Contract and if we file and serve a summary ejectment complaint or a complaint for money owed against you, and if we elect to dismiss the complaint after you cure the default, you shall owe us a Complaint Filing Fee equal to $15.00 or five percent (5%) of the monthly rent, whichever is higher. If the rent is subsidized by a government entity, the Complaint Filing Fee will be $15.00 or 5% of your share of the monthly rent, whichever is higher.

(2) Court Appearance Fee. In the event that (i) we file, serve, and prosecute successfully a summary ejectment complaint or complaint for money owed against you and (ii) a judgment is entered against you, you shall owe us—in lieu of the Complaint Filing Fee—a Court Appearance Fee equal to ten percent (10%) of the monthly rent. If the rent is subsidized by a government entity, the Court Appearance Fee will be 10% of your share of the monthly rent.

(3) Second Trial Fee. In the event that (i) you appeal a judgment of a magistrate and (ii) we prove that you are in default of the lease at the new trial and (iii) we obtain a judgment against you at the new trial, you shall owe us—in lieu of the Complaint Filing Fee and Court Appearance Fee—a Second Trial Fee equal to twelve percent (12%) of the monthly rent. If the monthly rent is subsidized by a government entity, the Second Trial Fee will be 12% of your share of monthly rent.

Mitigation of Damages. If you move out early, you'll be subject to all remedies under North Carolina law. We'll exercise customary diligence to relet and minimize damages. We'll credit all subsequent rent that we actually receive from subsequent residents against your liability for past-due and future rent and other sums due.

giving a notice under this Lease Contract should retain a copy of the memo, letter or fax that was given. Fax signatures are binding. All notices must be signed.

Exercising one remedy won't constitute an election or waiver of other remedies. Unless prohibited by law or the respective insurance policies, insurance subrogation is waived by all parties. All remedies are cumulative. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf. This Lease Contract binds subsequent owners. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract. All notices and documents may be in English and, at our option, in any language that you read or speak. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies. This Lease Contract is

Randi M.Lroy
© 2017, National Apartment Association, Inc. - 3/2017, North Carolina

Page 4 of 6

[✓] This document was executed via the NAA E-signature System - ID: 126393975

subordinate or superior to existing and future recorded mortgages, at lender's option. All Lease Contract obligations must be performed in the county where the apartment is located.

All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.

**Obligation to Vacate.** Resident shall vacate the Premises and remove all of Resident's personal property therefrom at the expiration of the lease term without further notice or demand from Owner.

**FORCE MAJEURE** If we are prevented from completing performances of any obligations hereunder by an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or other occurrence which is beyond the control of the parties, then we shall be excused from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

Furthermore, if such an event damages the property to materially affect its habitability by some or all residents, we reserve the right to vacate any and all leases and you agree to excuse us from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

**33. PAYMENTS.** At our option and without notice, we may apply money received (other than sale proceeds under paragraph 12, late fees under paragraph 6, or utility payments subject to governmental regulations) first

to any of your unpaid obligations, then to current rent—regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we don't have to accept the rent or any other payments.

**34. ASSOCIATION MEMBERSHIP.** We represent that either: (1) we or(2) the management company that represents us, is at the time of signing this Lease Contract or a renewal of this Lease Contract, a member of both the National Apartment Association and any affiliated state and local apartment (multi-housing) associations for the area where the apartment is located.

Security Guidelines for Residents

**35. SECURITY GUIDELINES.** In cooperation with the National Apartment Association, we'd like to give you some important safety guidelines. We recommend you follow the guidelines and use common sense in practicing safe conduct. Inform all other occupants in your dwelling, including any children you may have, about these guidelines.

**PERSONAL SECURITY—WHILE INSIDE YOUR APARTMENT**
1. Lock your doors and windows—even while you're inside.
2. Engage the keyless deadbolts on all doors while you're inside.
3. When answering the door, see who is there by looking through a window or peephole. If you don't know the person, first talk with him or her without opening the door. Don't open the door if you have any doubts.
4. If children (who are old enough to take care of themselves) are left alone in your apartment, tell them to use the keyless deadbolt and refuse to let anyone inside while you are gone—regardless of whether the person is a stranger or an apartment maintenance or management employee.
5. Don't put your name, address, or phone number on your key ring.
6. If you're concerned because you've lost your key or because someone you distrust has a key, ask the management to rekey the locks. You have a right to have that done, as long as you pay for the rekeying.
7. Dial 911 for emergencies. If the 911 number does not operate in your area, keep phone numbers handy for the police, fire, and emergency medical services. If an emergency arises, call the appropriate governmental authorities first, then call the management.
8. Check your smoke detector and carbon monoxide detector monthly to make sure it is working properly and the batteries are still okay.
9. Check your door locks, window latches, and other devices regularly to be sure they are working properly.
10. If your doors or windows are unsecure due to break-ins or malfunctioning locks or latches, stay with friends or neighbors until the problem is fixed.
11. Immediately report to management—in writing, dated and signed—any needed repairs of locks, latches, doors, windows, smoke detectors, and alarm systems.
12. Immediately report to management—in writing, dated and signed—any malfunction of other safety devices outside your apartment, such as broken gate locks, burned-out lights in stairwells and parking lots, blocked passages, broken railings, etc.
13. Close curtains, blinds, and window shades at night.
14. Mark or engrave your driver's license number or other identification on valuable personal property.

**PERSONAL SECURITY—WHILE OUTSIDE YOUR APARTMENT**
15. Lock your doors while you're gone. Lock any door handle lock, keyed deadbolt lock, sliding door pin lock, sliding door handle latch, and sliding door bar that you have.
16. Leave a radio or TV playing softly while you're gone.
17. Close and latch your windows while you're gone, particularly when you're on vacation.
18. Tell your roommate or spouse where you're going and when you'll be back.
19. Don't walk alone at night. Don't allow your family to do so.
20. Don't hide a key under the doormat or a nearby flowerpot. These are the first places a burglar will look.
21. Don't give entry keys, codes or electronic gate cards to anyone.
22. Use lamp timers when you go out in the evening or go away on vacation. They can be purchased at most hardware stores.
23. Let the manager and close friends know if you'll be gone for an extended time. Ask your neighbors to watch your apartment since the management cannot assume that responsibility.
24. While on vacation, temporarily stop your newspaper and mail delivery, or have your mail and newspaper picked up daily by a friend.
25. Carry your door key in your hand, whether it is daylight or dark, when walking to your entry door. You are more vulnerable when looking for your keys at the door.

**PERSONAL SECURITY—WHILE USING YOUR CAR**
26. Lock your car doors while driving. Lock your car doors and roll up the windows when having your car parked.
27. Don't leave exposed items in your car, such as cassette tapes, wrapped packages, briefcases, or purses.
28. Don't leave your keys in the car.
29. Carry your key ring in your hand whenever you are walking to your car—whether it is daylight or dark and whether you are at home, school, work, or on vacation.
30. Always park in a well-lighted area. If possible, try to park your car in an off-street parking area rather than on the street.
31. Check the backseat before getting into your car.
32. Be careful when stopping at gas stations or automatic-teller machines at night—or anytime when you suspect danger.

**PERSONAL SECURITY AWARENESS**
No security system is failsafe. Even the best system can't prevent crime. Always act as if security systems don't exist since they are subject to malfunction, tampering, and human error. We disclaim any express or implied warranties of security. The best safety measures are the ones you perform as a matter of common sense and habit.

When Moving Out

**36. MOVE-OUT NOTICE.** Before moving out, you must give our representative advance written move-out notice as provided below. Your move-out notice will not release you from liability for the full term of the Lease Contract or renewal term. You will still be liable for the entire Lease Contract term if you move out early (paragraph 21) except under the military clause (paragraph 23). YOUR MOVE-OUT NOTICE MUST COMPLY WITH EACH OF THE FOLLOWING:

- We must receive advance written notice of your move-out date. The advance notice must be at least the number of days of notice required in paragraph 3. Oral move-out notice will not be accepted and will not terminate your Lease Contract.

- Your move-out notice must not terminate the Lease Contract sooner than the end of the Lease Contract term or renewal period.

YOUR NOTICE IS NOT ACCEPTABLE IF IT DOES NOT COMPLY WITH ALL OF THE ABOVE. Please use our written move-out form. You must obtain from our representative written acknowledgment that we received your move-out notice. If we terminate the Lease Contract, we must give you the same advance notice—unless you are in default.

**37. MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the lease term or renewal period ends unless all rent for the entire lease term or renewal period is paid in full. Early move-out may result in reletting charges. You're prohibited by law from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must vacate the apartment before the

30-day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

**38. CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

**39. MOVE-OUT INSPECTION.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

**40. SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** We may deduct sums from your security deposit for charges related to the following: your possible non-payment of rent, costs of water and sewer services provided, damage to the premises, damage or destruction of smoke detectors or carbon monoxide detectors, nonfulfillment of the rental period, any unpaid bills that become a lien against the demised property due to your occupancy, costs of re-renting the premises after breach by you, including but not limited to any reasonable fees or commissions paid by the landlord to a licensed real estate broker to re-rent the premises, costs of removal and storage of your property after a summary ejectment proceeding, court costs, or any fee authorized by N.C. GEN. STAT. § 42-46.

☑ This document was executed via the NAA E-signature System - ID: 126393979

**41. DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.** If we can determine the full extent of our deductions from your security deposit, we'll mail you your security deposit refund (less lawful deductions) and an itemized accounting of any deductions no later than 30 days after termination of your tenancy under this Lease Contract and delivery of possession by you, unless statutes provide otherwise. If we cannot determine the full extent of our deductions from your security deposit within the aforementioned 30 day period, we'll mail you an interim itemized accounting of our deductions from the deposit within 30 days after termination of your tenancy under this Lease Contract and delivery of possession by you, and we'll also mail your security deposit refund (less lawful deductions) and a final itemized accounting of any deductions no later than 60 days after termination of your tenancy under this Lease Contract and delivery of possession by you.

You have surrendered the apartment when: (1) the move-out date has passed and no one is living in the apartment in our reasonable judgment; or (2) all apartment keys and access devices listed in paragraph 5 have been turned in where rent is paid—whichever date occurs first.

You have abandoned the apartment when all of the following have occurred: (1) everyone appears to have moved out in our reasonable judgment; (2) clothes, furniture, and personal belongings have been substantially removed in our reasonable judgment; (3) you've been in default for non-payment of rent for 5 consecutive days or water, gas, or electric service for the apartment not connected in our name has been terminated; and (4) you've not responded for 2 days to our notice left on the inside of the main entry door, stating that we consider the apartment abandoned. An apartment is also "abandoned" 10 days after the death of a sole resident.

Surrender, abandonment, and judicial eviction end your right of possession for all purposes and gives us the immediate right to clean up, make repairs in, and relet the apartment, and determine any security deposit deductions. Surrender, abandonment, and judicial eviction affect your rights to property left in the apartment (paragraph 12), but do not affect our mitigation obligations (paragraph 31).

**42. ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, with original signatures—one for you and one or more for us. Our rules and community policies, if any, will be attached to the Lease Contract and given to you at signing. When an Inventory and Condition form is completed, both you and we should retain a copy. The items checked below are attached to this Lease Contract and are binding even if not initialed or signed.

- ☒ Animal Addendum
- ☐ Inventory and Condition Form
- ☒ Mold Addendum
- ☐ Enclosed Garage Addendum
- ☒ Community Policies Addendum
- ☐ Lease Contract Guaranty (_____ guaranties, if more than one)
- ☐ Notice of Intent to Move Out Form
- ☐ Parking Permit or Sticker (quantity: _____)
- ☒ Satellite Dish or Antenna Addendum
- ☐ Asbestos Addendum (if asbestos is present)
- ☐ Lead Hazard Information and Disclosure Addendum (federal)
- ☒ Utility Addendum
- ☐ Remote Control, Card or Code Access Gate Addendum
- ☐ Intrusion Alarm Addendum
- ☒ Other HCUC Rules & Regs
- ☒ Other 2nd Bug Addendum _____

You are legally bound by this document.
Read it carefully before signing.

Resident or Residents (all sign below)

_Randi E Milroy_
_____
_____
_____

Owner or Owner's Representative (signing on behalf of owner)

_Jordan Mister_
_____

Address and phone number of owner's representative for notice purposes

650 Lake Front Drive
Raleigh, NC 27613
(919) 781-6294

Name and address of locator service (if applicable)

_____
_____
_____

Date form is filled out (same as on top of page 1)   **11/20/2017**

SPECIAL PROVISIONS (CONTINUED FROM PAGE 1)   Notwithstanding language in sec.32 of this Lease, parties do not waive any rights of subrogation. Your rent, utility (as further described in the applicable utility addenda attached to the Agreement) and rent/trash/etc. charges will be combined in one mailing ("Resident OneBill"). These charges will be payable to Owner on or before the date indicated on the Resident OneBill. A rent service fee of $1.68 will appear on each monthly statement. This fee is related to rent billing. The rent service fee does not include the billing fee for water, sewer or trash billing. The rent service fee may be changed or increased at any time with a 30 day notice to Residents. Fees for water, sewer and trash billing are disclosed on the Water/Wastewater Utility Addendum attached hereto. If this Lease Contract has automatically renewed month to month at least a 30 day written notice of termination or intent to move-out will be required by either party as required by par. 36.

_____
_____
_____
_____

Ball Partners Inc.
Randi Milroy

©2017, National Apartment Association, Inc.    North Carolina/National Apartment Association Official Form, March 2017    Page 6 of 6

☑ This document was executed via the NAA E-Signature System - ID: 126393975


PLAINTIFF'S EXHIBIT 3

# Apartment Lease Contract


NATIONAL APARTMENT ASSOCIATION

Date of Lease Contract: __September 6, 2016__
(when the Lease Contract is filled out)

*This is a binding document. Read carefully before signing.*

## Moving In — General Information

**1. PARTIES.** This Lease Contract (sometimes referred to as the "lease") is between you, the resident(s) (list all people signing the Lease Contract):
__Dan L. Williams__

_____ and us, the owner:
__DPR Westover, LLC__

(name of apartment community or title holder). You've agreed to rent Apartment No. __1114__, at __1114 Millhous Drive__
(street address)
in __Cary__ (city), North Carolina, __27513__ (zip code) for use as a private residence only. The terms "you" and "your" refer to all residents listed above. The terms "we," "us," and "our" refer to the owner listed above (or any of owner's successors' in interest or assigns). Written notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

**2. OCCUPANTS.** The apartment will be occupied only by you and (list all other occupants not signing the Lease Contract):

_____
_____
_____

No one else may occupy the apartment. Persons not listed above must not stay in the apartment for more than 2 consecutive days without our prior written consent, and no more than twice that many days in any one month.

**3. LEASE TERM.** The initial term of the Lease Contract begins on the __25th__ day of __September__, __2016__, and ends at midnight the __24th__ day of __September__, __2017__. This Lease Contract will automatically renew month-to-month unless either party gives at least __60__ days written notice of termination or intent to move-out as required by paragraph 36. If the number of days isn't filled in, at least 30 days notice is required.

**4. SECURITY DEPOSIT.** Unless modified by addenda, the total security deposit at the time of execution of this Lease Contract for all residents in the apartment is $ __99.00__, due on or before the date this Lease Contract is signed, to be administered in accordance with the North Carolina Tenant Security Deposit Act, N.C.G.S. § 42-50 et seq.

In holding your security deposit, we will [check one]:

☒ Deposit the security deposit in a trust account with (name of bank or savings institution) __Wells Fargo__

located at (address) _____
_____

or

☐ Furnish a bond from (name of bonding company)_____
_____ located at
(address) _____

The security deposit may, in our discretion, be deposited in an interest-bearing account with the bank or savings institution named above. We may retain any interest earned upon the security deposit and may withdraw such interest, if any, from such account as it accrues as often as is permitted by the terms of the account.

Your security deposit will be held and, upon termination of your tenancy, be applied in the manner and for the purposes set forth in paragraphs 40 and 41 of this Lease Contract.

**5. KEYS AND FURNITURE.** You will be provided __2__ apartment key(s), __2__ mailbox key(s), and __0__ other access devices for _____. Your apartment will be [check one]:
☐ furnished or ☒ unfurnished.

**6. RENT AND CHARGES.** Unless modified by addenda, rent payment for the following month-to-month unless

Prorated rent of $ __231.00__ is due for the remainder of [check one]:
☒ 1st month or ☐ 2nd month, on __September 25__, __2016__.

Otherwise, you must pay your rent on or before the 1st day of each month (due date) with no grace period. Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. If you don't pay all rent on or before the __5__ day of the month, you'll pay a late charge of 5% of the rental payment or $15.00, whichever is greater. You'll also pay a charge of $ __25.00__ as provided by law for each returned check or rejected electronic payment. If you don't pay rent on time, you'll be delinquent and all remedies under this Lease Contract will be authorized. We'll also have all other remedies for such violation.

**7. UTILITIES.** We'll pay for the following items, if checked and if permitted by law:
☐ water      ☐ gas      ☐ electricity      ☐ master antenna,
☐ wastewater ☐ trash    ☐ cable TV         ☐ other_____

You'll pay for all other utilities, related deposits, and any charges, fees, or services on such utilities. You must not allow utilities to be disconnected—including disconnection for not paying your bills—until the lease term or renewal period ends. Cable channels that are provided may be changed during the lease term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-operated lighting. If any utilities are submetered for the apartment, or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance.

**8. INSURANCE.** We do not maintain insurance to cover your personal property or personal injury. We are not responsible to any resident, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other residents, occupants, or invited/uninvited guests or vandalism unless otherwise required by law.

We urge you to get your own insurance for losses to your personal property or injuries due to theft, fire, water damage, pipe leaks and the like.

Additionally, you are [check one] ☒ required to purchase personal liability insurance ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance is an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law.

You acknowledge that no portion of the rent paid by you under this agreement will be specifically allocated for the purchase of the owner's structural fire insurance, though the owner may use a portion of gross rental proceeds obtained from all rental units in the community to purchase such structural fire insurance, and in such an event, that you are in no way a co-insured under any such policy.

**9. LOCKS AND LATCHES.** Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done either before you move in or, if the apartment has a keyless deadbolt on each exterior door, within 10 days after you move in.

You may at any time ask us to: (1) install one keyed deadbolt lock on an exterior door if it does not have one; (2) install a bar and /or sliding door pinlock on each sliding glass door; (3) install one keyless deadbolt on each exterior door; (4) install one doorviewer on each exterior door; and (5) change or rekey locks or latches during the lease term. We must comply with these requests, but you must pay for them.

What You Are Now Requesting. You now request the following to be installed at your expense (if one is not already installed), subject to any statutory restrictions on what you may request.

☒ keyed deadbolt lock      ☒ doorviewer
☒ keyless deadbolt         ☐ sliding door pinlock
☐ sliding door bar

**10. SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed lease form.

_____

_____

_____

See any additional special provisions.

**11. REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the apartment community due to violation of the Lease Contract or rules, improper use, or negligence by you or your guests or occupants. Unless the damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacement costs, and damage to the following if occurring during the Lease Contract term or renewal period:(1) damage to doors, windows, or screens unless caused by other than your negligence; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

**12. (A) EVICTION OR SUMMARY EJECTMENT AND PROPERTY LEFT IN THE APARTMENT.**

In the event you violate any terms or conditions of this Lease Contract or fail to perform any promise, duty or obligation you have agreed to or imposed upon you by law, then we, in addition to all other rights and remedies provided by law, may, at our option and with or without notice to you, either (1) terminate this Lease Contract or (2) terminate your right to possession of the premises without terminating this Lease Contract.

Regardless of whether we terminate this Lease Contract or only terminate your right of possession without terminating this Lease Contract, we shall be immediately entitled to possession of the premises and you shall peacefully surrender possession of the premises to us immediately upon our demand. In the event that you fail to surrender possession, we shall re-enter and re-take possession through a summary ejectment proceeding or expedited eviction proceeding as provided by North Carolina law. In the event that we terminate this Lease Contract, all of our duties under this agreement shall terminate and we shall be entitled to collect from you all accrued and unpaid rents, realized concessions, and damages arising under this Lease Contract.

If we bring a suit against you for summary ejectment, the County sheriff may remove your personal property from the apartment within 7 days from the time the sheriff receives the Writ of Possession. You must retake possession of your property if it is removed by the sheriff. If you do not do so, the sheriff may arrange for the storage of your property, and you will be liable for the costs of the proceeding and the storage of your property.

If the sheriff does not store your personal property removed from the apartment, we may take possession of it and move it for storage purposes. In the event of an execution of a Writ of Possession against you, you agree that this sentence hereby constitutes our offer to release your personal property to you during our regular business hours for the seven calendar-day period following the execution of a Writ of Possession. Seven days after being placed in lawful possession of your personal property by execution of the Writ of Possession, we may throw away, dispose of, or sell your property. If you request that we release your property to you during the seven day period, we must do so during our regular business hours. If we elect to sell your property, we must give you at least seven days notice prior to the sale, and we must release your property to you if you so request before the sale. If you do not request the release of your property within seven days, all costs of summary ejectment, execution and storage proceedings shall be charged to you as court costs and shall constitute a lien against the stored property.

In the event we terminate your right of possession without terminating this Lease Contract, you shall remain liable for the full performance of all the covenants, and we shall use reasonable efforts to re-rent the premises on your behalf and you shall remain liable for any resulting costs, deficiencies or damages. Any such rentals reserved from re-renting shall be applied first to the cost of re-renting the premises and then to the rentals due under this Lease Contract. Re-entry shall not bar the right of

recovery of rent or damages for breach of covenants, nor shall the receipt of rent after conditions broken be deemed a waiver of forfeiture. In order to entitle us to re-enter and/or terminate this Lease Contract for default, it shall not be deemed necessary to give notice of rent being due and unpaid or of other conditions broken or to make demands for rent, the execution of this Lease signed by you and us being sufficient notice of all terms of this Lease Contract including of the rent being due and demand for the same. We shall have all rights granted pursuant to N.C.G.S. §42-25.9 and §42-25.6.

**(B) ABANDONED PROPERTY**

If you abandon personal property with a value of $750 or less from apartment or fail to remove such property at the time of execution of a Writ of Possession, we may, as an alternative to the procedures described above, deliver the property to a non-profit organization regularly providing free or inexpensive clothing or household furnishings to people in need, provided that such organization agrees to store the property separately for a thirty-day period, and to release it to you without charge during this thirty-day period. We will deem personal property to be abandoned if we find evidence clearly showing the apartment has been voluntarily vacated after the rental period has expired and we have no notice of a disability that caused the vacancy.

If the total value of the property left in the apartment at the time of execution of a Writ of Possession is less than $500, we may deem the property abandoned after five days and may throw away or dispose of the property.

**13. FAILING TO PAY FIRST MONTH'S RENT.** If you don't pay the first month's rent when or before the Lease Contract begins, we may end your right of occupancy and recover damages, future rent, reletting charges, attorney's fees, court costs, and other lawful charges. This paragraph does not apply to termination of this Lease Contract 14 or more days before occupancy by Military Personnel under Paragraph 22.

**14. RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10, by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under paragraph 17. If, at least 5 days before the advance notice deadline referred to in paragraph 3, we give you written notice of rent increases or lease changes effective when the lease term or renewal period ends, this Lease Contract will automatically continue month-to-month with the increased rent or lease changes. The new modified Lease Contract will begin on the date stated in the notice (without necessity of your signature) unless you give us written move-out notice under paragraph 36.

**15. DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or Lease Contract termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the apartment.

If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the apartment is ready for occupancy, but not later.

(1) If we give written notice to any of you when or after the initial term as set forth in Paragraph 3—and the notice states the occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date—you may terminate the Lease Contract within 3 days of your receiving the notice, but not later.

(2) If we give written notice to any of you before the initial term as set forth in Paragraph 3 and the notice states that construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days after any of you receives written notice, but not later. The readiness date is considered the new initial term as set forth in Paragraph 3 for all purposes. This new date may not be moved to an earlier date unless we and you agree.

**16. DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it.

**17. COMMUNITY POLICIES OR RULES.** You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are considered part of this Lease Contract. We may make reasonable changes to written rules effective immediately if they are distributed and

apartment community is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and

**19. PROHIBITED CONDUCT.** You and your occupants or guests may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the apartment community.

**20. PARKING.** We may regulate the time, manner, and place of parking cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles by anyone. We may have unauthorized or illegally parked vehicles towed under an appropriate statute. A vehicle is unauthorized or illegally parked in the apartment community if it:

(1) has a flat tire or other condition rendering it inoperable; or
(2) is on jacks, blocks or has wheel(s) missing; or
(3) has no current license or no current inspection sticker; or
(4) takes up more than one parking space; or
(5) belongs to a resident or occupant who has surrendered or abandoned the apartment; or
(6) is parked in a marked handicap space without the legally required handicap insignia; or
(7) is parked in space marked for manager, staff, or guest at the office; or
(8) blocks another vehicle from exiting; or
(9) is parked in a fire lane or designated "no parking" area; or
(10) is parked in a space marked for other resident(s) or unit(s); or
(11) is parked on the grass, sidewalk, or patio; or
(12) blocks garbage trucks from access to a dumpster.

**21. RELEASE OF RESIDENT.** Unless you're entitled to terminate this Lease Contract under paragraphs 10, 19, 22, or 36, you won't be released from this Lease Contract for any reason—including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, or death.

**22. MILITARY PERSONNEL CLAUSE.** You may terminate the Lease Contract if you enlist or are drafted or commissioned in the U.S. Armed Forces. You also may terminate the Lease Contract if:

(1) you are (i) a member of the U.S. Armed Forces or reserves on active duty or (ii) a member of the National Guard called to active duty for more than 30 days in response to a national emergency declared by the President; and
(2) you are either (i) given change-of-station orders to permanently depart the local area, (ii) deployed with a military unit for 90 days or more, or (iii) relieved or released from active duty.

After you deliver to us your written termination notice, the Lease Contract will be terminated under this military clause 30 days after our receipt of the notice. You must furnish us a copy of your permanent change-of-station orders, call-up orders, or deployment orders or letter. Military permission for base housing doesn't constitute a permanent change-of-station order. After your move out, we'll return your security deposit, less lawful deductions. If you or any co-resident are a dependant of a servicemember covered by the U.S. Servicemembers Civil Relief Act, this Lease Contract may not be terminated under this paragraph without applying to a court and showing that your ability to comply with the Lease Contract is materially affected by reason of the servicemember's military service. A co-resident who is not your spouse or dependant cannot terminate under this military clause. If you terminate the Lease Contract 14 or more days before occupancy, no damages or penalties of any kind shall be due.

**23. RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke detectors and carbon monoxide detectors, keyed deadbolt locks, keyless bolting devices, window latches, and other safety or security devices. You agree to make every effort to follow the Security Guidelines on page 6.

Smoke Detectors and Carbon Monoxide Detectors. We'll furnish smoke detectors and carbon monoxide detectors as required by statute, and we'll test them and provide working batteries, if applicable, when you first take possession. After that, you must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must periodically inspect the smoke detectors and carbon monoxide detectors to ensure their operability and immediately report smoke detector and carbon monoxide detector malfunctions to us. Neither you nor others may disable smoke detectors and carbon monoxide detectors. If you disable or damage the smoke detector and carbon monoxide detectors, or fail to replace a dead battery or report malfunctions to

Crime or Emergency. Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity or other emergency involving imminent harm. You should then contact our representative. You won't treat any of our security measures as an express or implied warranty of security, or as a guarantee against crime or of reduced risk of crime. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. We're not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security unless required by statute. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You must also furnish us with the law-enforcement agency's incident report number upon request.

**24. CONDITION OF THE PREMISES AND ALTERATIONS.** You'll be given an Inventory and Condition form on or before move-in. You must note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke detectors and carbon monoxide detectors, furniture, telephone and cable TV wiring, screens, locks, and security devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

**25. REQUESTS, REPAIRS, AND MALFUNCTIONS. IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST—FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS—IT MUST BE SIGNED AND IN WRITING TO OUR DESIGNATED REPRESENTATIVE** (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, crime in progress, or imminently dangerous conditions as specifically defined by law). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are rarely emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections.

If we believe that fire or catastrophic damage is substantial, or that performance of needed repairs poses a danger to you, we may terminate this Lease Contract within a reasonable time by giving you written notice. If the Lease Contract is so terminated, we'll refund prorated rent and all deposits, less lawful deductions.

**26. ANIMALS.** No animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the apartment or apartment community unless we've so authorized in writing. If we allow an animal, you must sign a separate animal addendum, which may require additional deposits, rents, fees or other charges. This additional deposit is considered a part of the general security deposit. You must remove an illegal animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. We will authorize a support animal for a disabled (handicapped) person. We may require a written statement from a qualified professional verifying the need for the support animal. You must not feed stray or wild animals.

If an occupant or guest violates animal restrictions (with or

for the purposes listed in (2) below. If nobody is in the apartment, such persons may enter peacefully and at reasonable times by duplicate or master key (or by breaking a window or other means when necessary in emergencies) if:

(1) written notice of the entry is left in a conspicuous place in the apartment immediately after the entry; and

(2) entry is for: responding to your request; making repairs or replacements; estimating repair or refurbishing costs; performing pest control; doing preventive maintenance; changing filters; testing or replacing smoke-detector batteries; retrieving unreturned tools, equipment or appliances; preventing waste of utilities; leaving notices; delivering, installing, reconnecting, or replacing appliances, furniture, equipment, or security devices; removing or rekeying unauthorized security devices; stopping excessive noise; cutting off electricity according to statute; retrieving property owned or leased by former residents; inspecting when immediate danger to person or property is reasonably suspected; allowing persons to enter as you authorized in your rental application (if you die, are incarcerated,

etc.); allowing entry by a law officer with search or arrest warrant or in hot pursuit; showing apartment to prospective residents (after move-out or vacate notice has been given); or showing apartment to government inspectors for the limited purpose of determining housing and fire ordinance compliance by us and to lenders, appraisers, contractors, prospective buyers, or insurance agents.

**28. MULTIPLE RESIDENTS OR OCCUPANTS.** Each resident is jointly and severally liable for all lease obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of lease termination, repair requests, and entry permissions) constitute notice from all residents. Security-deposit refunds and deduction itemizations of multiple residents will comply with paragraph 41.

## Replacements

**29. REPLACEMENTS AND SUBLETTING.** Replacing a resident, subletting, or assignment is allowed only when we consent in writing. If departing or remaining residents find a replacement resident acceptable to us before moving out and we expressly consent to the replacement, subletting, or assignment, then:

(1) a reletting charge will not be due;

(2) a reasonable administrative (paperwork) and/or transfer fee will be due, and a rekeying fee will be due if rekeying is requested or required; and

(3) the departing and remaining residents will remain liable for all Lease Contract obligations for the rest of the original Lease Contract term.

Procedures for Replacement. If we approve a replacement resident, then, at our option: (1) the replacement resident must sign this Lease Contract with or without an increase in the total security deposit; or (2) the remaining and replacement residents must sign an entirely new Lease Contract. Unless we agree otherwise in writing, your security deposit will automatically transfer to the replacement resident as of the date we approve. The departing resident will no longer have a right of occupancy or security-deposit refund, but will remain liable for the remainder of the original Lease Contract term unless we agree otherwise in writing—even if a new Lease Contract is signed.

## Responsibilities of Owner and Resident

**30. RESPONSIBILITIES OF OWNER.** We'll act with customary diligence to:

(1) comply with the applicable building and housing codes;

(2) make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition;

(3) keep all common areas of the premises in safe condition;

(4) maintain in good and safe working order and promptly repair all facilities and appliances supplied or required to be supplied by us; and.

(5) provide operable smoke detectors and replace or repair the smoke detectors within 15 days of receipt of your written notification to us.

**31. DEFAULT BY RESIDENT.** You'll be in default if you or any guest or occupant violates any terms of this Lease Contract including but not limited to the following violations: (1) you don't pay rent or other amounts that you owe when due; (2) you or any guest or occupant violates the apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (3) you abandon the apartment; (4) you give incorrect or false answers in a rental application; (5) you or any occupant is arrested, convicted, or given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; (6) any illegal drugs or paraphernalia are found in your apartment; (7) you or any guest or occupant engages in any of the prohibited conduct in Paragraph 19; or (8) you or any occupant, in bad faith, makes an invalid complaint to an official or employee of a utility company or the government.

Eviction. If you default, we may re-enter and re-take possession of the premises as provided in Paragraph 12 and may immediately institute proceedings for summary ejectment as provided by law without notice or demand. Termination of your possession rights or subsequent reletting doesn't release you from liability for future rent or other lease obligations. After filing a summary ejectment suit, we may still accept a partial payment of rent or a partial housing subsidy payment; the filing or acceptance doesn't waive or diminish our right of eviction, or any other contractual or statutory right. Accepting a partial payment of rent or a partial housing subsidy payment at any time doesn't waive your default of this Lease Contract; our right to damages; past or future rent or other sums; or to file an eviction or to continue with filed eviction proceedings; nor does our exercise of any of our rights in this Paragraph violate Chapter 75 of the N.C. General Statutes.

Holdover. You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then: (1) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (2) rent for the holdover period will be increased by 25% over the then-existing rent, without notice; (3) you'll be liable to us for actual damages arising out of full term of the previously signed Lease Contract of a new resident who

can't occupy because of the holdover; and (4) at our option, we may extend the lease term—for up to one month from the date of notice of lease extension—by delivering written notice to you or your apartment while you continue to hold over.

Other Remedies. If your rent is delinquent and we give you 5 days' prior written notice, we may terminate electricity that we've furnished at our expense, unless governmental regulations on submetering or utility provision provide otherwise, or unless otherwise prohibited by law. We may report unpaid amounts to credit agencies. If you default and move out early, you will pay us any amounts stated to be rental discounts in paragraph 10, in addition to other sums due. Upon your default, we have all other legal remedies, including lease termination and summary ejectment under state statute. We may recover from you attorney's fees and all litigation costs to the extent permitted by law. In the event we file a summary ejectment lawsuit against you, we may also recover from you the highest one of the following fees (which shall be in addition to late fees, attorney's fees, and any applicable court costs):

(1) Complaint Filing Fee. If you are in default of this Lease Contract and if we file and serve a summary ejectment complaint or a complaint for money owed against you, and if we elect to dismiss the complaint after you cure the default, you shall owe Us a Complaint Filing Fee equal to $15.00 or five percent (5%) of the monthly rent, whichever is higher. If the rent is subsidized by a government entity, the Complaint Filing Fee will be $15.00 or 5% of your share of the monthly rent, whichever is higher.

(2) Court Appearance Fee. In the event that (i) we file, serve, and prosecute successfully a summary ejectment complaint tor complaint for money owed against you and (ii) a judgment is entered against you, and (iii) if you fail to appeal the judgment within the legally proscribed timeframe, you shall owe us—in lieu of the Complaint Filing Fee—a Court Appearance Fee equal to ten percent (10%) of the monthly rent. If the rent is subsidized by a government entity, the Court Appearance Fee will be 10% of your share of the monthly rent.

(3) Second Trial Fee. In the event that (i) you appeal a judgment of a magistrate and (ii) we prove that you are in default of the lease at the new trial and (iii) we obtain a judgment against you at the new trial, you shall owe us—in lieu of the Complaint Filing Fee and Court Appearance Fee—a Second Trial Fee equal to twelve percent (12%) of the monthly rent. If the monthly rent is subsidized by a government entity, the Second Trial Fee will be 12% of your share of monthly rent.

Mitigation of Damages. If you move out early, you'll be subject to all remedies under North Carolina law. We'll exercise customary diligence to relet and minimize damages. We'll credit all subsequent rent that we actually receive from subsequent residents against your liability for past-due and future rent and other sums due.

subordinate or superior to existing and future recorded mortgages, at lender's option. All Lease Contract obligations must be performed in the county where the apartment is located.

All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.

Obligation to Vacate. Resident shall vacate the Premises and remove all of Resident's personal property therefrom at the expiration of the lease term without further notice or demand from Owner.

FORCE MAJEURE: If we are prevented from completing performances of any obligations hereunder by an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or other occurrence which is beyond the control of the parties, then we shall be excused from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

Furthermore, if such an event damages the property to materially affect its habitability by some or all residents, we reserve the right to vacate any and all leases and you agree to excuse us from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

**33. PAYMENTS.** At our option and without notice, we may apply money received (other than sale proceeds under paragraph 12, late fees under paragraph 6, or utility payments subject to governmental regulations) first to any of your unpaid obligations, then to current rent—regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments.

**34. ASSOCIATION MEMBERSHIP.** We represent that either: (1) we or (2) the management company that represents us, is at the time of signing this Lease Contract or a renewal of this Contract, a member of both the National Apartment Association and any affiliated state and local apartment (multi-housing) associations for the area where the apartment is located.

## Security Guidelines for Residents

**35. SECURITY GUIDELINES.** In cooperation with the National Apartment Association, we'd like to give you some important safety guidelines. We recommend you follow the guidelines and use common sense in practicing safe conduct. Inform all other occupants in your dwelling, including any children you may have, about these guidelines.

### PERSONAL SECURITY—WHILE INSIDE YOUR APARTMENT

1. Lock your doors and windows—even while you're inside.
2. Engage the keyless deadbolts on all doors while you're inside.
3. When answering the door, see who is there by looking through a window or peephole. If you don't know the person, first talk with him or her without opening the door. Don't open the door if you have any doubts.
4. If children (who are old enough to take care of themselves) are left alone in your apartment, tell them to use the keyless deadbolt and refuse to let anyone inside while you are gone—regardless of whether the person is a stranger or an apartment maintenance or management employee.
5. Don't put your name, address, or phone number on your key ring.
6. If you're concerned because you've lost your key or because someone you distrust has a key, ask the management to rekey the locks. You have a right to have that done, as long as you pay for the rekeying.
7. Dial 911 for emergencies. If the 911 number does not operate in your area, keep phone numbers handy for the police, fire, and emergency medical services. If an emergency arises, call the appropriate governmental authorities first, then call the management.
8. Check your smoke detector and carbon monoxide detector monthly to make sure it is working properly and the batteries are still okay.
9. Check your doorlocks, window latches, and other devices regularly to be sure they are working properly.
10. If your doors or windows are insecure due to break-ins or malfunctioning locks or latches, stay with friends or neighbors until the problem is fixed.
11. Immediately report to management—in writing, dated and signed—any needed repairs of locks, latches, doors, windows, smoke detectors, and alarm systems.
12. Immediately report to management—in writing, dated and signed—any malfunction of other safety devices outside your apartment, such as broken gate locks, burned-out lights in stairwells and parking lots, blocked passages, broken railings, etc.
13. Close curtains, blinds, and window shades at night.
14. Mark or engrave your driver's license number or other identification on valuable personal property.

### PERSONAL SECURITY—WHILE OUTSIDE YOUR APARTMENT

15. Lock your doors while you're gone. Lock any door handle lock, keyed deadbolt lock, sliding door pin lock, sliding door handle latch, and sliding door bar that you have.
16. Leave a radio or TV playing softly while you're gone.
17. Close and latch your windows while you're gone, particularly when you're on vacation.
18. Tell your roommate or spouse where you're going and when you'll be back.
19. Don't walk alone at night. Don't allow your family to do so.
20. Don't hide a key under the doormat or a nearby flowerpot. These are the first places a burglar will look.
21. Don't give entry keys, codes or electronic gate cards to anyone.
22. Use lamp timers when you go out in the evening or go away on vacation. They can be purchased at most hardware stores.
23. Let the manager and your friends know if you'll be gone for an extended time. Ask your neighbors to watch your apartment since the management cannot assume that responsibility.
24. While on vacation, temporarily stop your newspaper and mail delivery, or have your mail and newspaper picked up daily by a friend.
25. Carry your door key in your hand, whether it is daylight or dark, when walking to your entry door. You are more vulnerable when looking for your keys at the door.

### PERSONAL SECURITY—WHILE USING YOUR CAR

26. Lock your car doors while driving. Lock your car doors and roll up the windows when leaving your car parked.
27. Don't leave exposed items in your car, such as cassette tapes, wrapped packages, briefcases, or purses.
28. Don't leave your keys in the car.
29. Carry your key ring in your hand whenever you are walking to your car—whether it is daylight or dark and whether you are at home, school, work, or on vacation.
30. Always park in a well-lighted area. If possible, try to park your car in an oft-street parking area rather than on the street.
31. Check the backseat before getting into your car.
32. Be careful when stopping at gas stations or automatic-teller machines at night—or anytime when you suspect danger.

### PERSONAL SECURITY AWARENESS

No security system is failsafe. Even the best system can't prevent crime. Always act as if security systems don't exist since they are subject to malfunction, tampering, and human error. We disclaim any express or implied warranties of security. The best safety measures are the ones you perform as a matter of common sense and habit.

## When Moving Out

**36. MOVE-OUT NOTICE.** Before moving out, you must give our representative advance written move-out notice as provided below. Your move-out notice will not release you from liability for the full term of the Lease Contract or renewal term. You will still be liable for the entire Lease Contract term if you move out early (paragraph 21) except under the military clause (paragraph 23). YOUR MOVE-OUT NOTICE MUST COMPLY WITH EACH OF THE FOLLOWING:

• We must receive advance written notice of your move-out date. The advance notice must be at least the number of days of notice required in paragraph 3. Oral move-out notice will not be accepted and will not terminate your Lease Contract.

30-day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

**38. CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

**39. MOVE-OUT INSPECTION.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any ... ... as mitigation ... our representative are subject to our

**41. DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.** If we can determine the full extent of our deductions from your security deposit, we'll mail you your security deposit refund (less lawful deductions) and an itemized accounting of any deductions no later than 30 days after termination of your tenancy under this Lease Contract and delivery of possession by you, unless statutes provide otherwise. If we cannot determine the full extent of our deductions from your security deposit within the aforementioned 30 day period, we'll mail you an interim itemized accounting of our deductions from the deposit within 30 days after termination of your tenancy under this Lease Contract and delivery of possession by you, and we'll also mail your security deposit refund (less lawful deductions) and a final itemized accounting of any deductions no later than 60 days after termination of your tenancy under this Lease Contract and delivery of possession by you.

You have surrendered the apartment when: (1) the move-out date has passed and no one is living in the apartment in our reasonable judgment; or (2) all apartment keys and access devices listed in paragraph 5 have been turned in where rent is paid—whichever date occurs first.

You have abandoned the apartment when all of the following have occurred: (1) everyone appears to have moved out in our reasonable judgment; (2) clothes, furniture, and personal belongings have been substantially removed in our reasonable judgment; (3) you've been in default for non-payment of rent for 5 consecutive days or water, gas, or electric service for the apartment not connected in our name has been terminated; and (4) you've not responded for 2 days to our notice left on the inside of the main entry door, stating that we consider the apartment abandoned. An apartment is also "abandoned" 10 days after the death of a sole resident.

Surrender, abandonment, and judicial eviction end your right of possession for all purposes and gives us the immediate right to: clean up, make repairs in, and relet the apartment, and determine any security deposit deductions. Surrender, abandonment, and judicial eviction affect your rights to property left in the apartment (paragraph 12), but do not affect our mitigation obligations (paragraph 31).

Signatures, Originals and Attachments

**42. ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, with original signatures—one for you and one or more for us. Our rules and community policies, if any, will be attached to the Lease Contract and given to you at signing. When an Inventory and Condition form is completed, both you and we should retain a copy. The items checked below are attached to this Lease Contract and are binding even if not initialed or signed.

☒ Animal Addendum
☒ Inventory and Condition Form
☒ Mold Addendum
☒ Enclosed Garage Addendum
☒ Community Policies Addendum
☐ Lease Contract Guaranty ( __0__ guaranties, if more than one)
☐ Notice of Intent to Move Out Form
☐ Parking Permit or Sticker (quantity: __0__ )
☒ Satellite Dish or Antenna Addendum
☐ Asbestos Addendum (if asbestos is present).
☐ Lead Hazard Information and Disclosure Addendum (federal)
☒ Utility Addendum
☒ Remote Control, Card or Code Access Gate Addendum
☐ Intrusion Alarm Addendum
☐ Other_____
☐ Other_____

> You are legally bound by this document.
> Read it carefully before signing.

**Resident or Residents** *(all sign below)*
Ⓖ Signed by Dan L. Williams
Sun Sep 13 11:26:11 AM EDT 2016

_____

_____

_____

**Owner or Owner's Representative** *(signing on behalf of owner)*
Ⓖ Signed by Lala Rooneyhall
Sun Oct 2 02:51:30 PM EDT 2016

**Address and phone number of owner's representative for notice purposes**

**1000 Heathermoor Lane**

**Cary, NC 27513**

**(919) 677-7887**

**Name and address of locator service** *(if applicable)*

_____

_____

**Date form is filled out** *(same as on top of page 1)* ___ **09/06/2016**

SPECIAL PROVISIONS (CONTINUED FROM PAGE 2) _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

## Apartment Lease Contract



Date of Lease Contract_____ **March 1, 2018**_____
(when the Lease Contract is filled out)

*This is a binding document. Read carefully before signing.*

**1. PARTIES.** This Lease Contract (sometimes referred to as the "lease") is between you, the resident(s) *(list all people signing the Lease Contract):*
**Dan Williams**
_____
_____
_____ and us, the owner:
**Hudson Capital Weston LLC**
_____

*(name of apartment community or title holder).* You've agreed to rent
Apartment No. _____**1114**_____, at **1114 Millhous Dr.**
_____ *(street address)*
in _____**Cary**_____ *(city),* North Carolina,
**27513** *(zip code) for use as a private residence only.* The terms "you" and "your" refer to all residents listed above. The terms "we," "us," and "our" refer to the owner listed above *(or any of owner's successors in interest or assigns).* Written or electronic notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

**2. OCCUPANTS.** The apartment will be occupied only by you and *(list all other occupants not signing the Lease Contract):*
_____
_____
_____
_____
No one else may occupy the apartment. Persons not listed above must not stay in the apartment for more than 2 consecutive days without our prior written consent, and no more than twice that many days in any one month.

**3. LEASE TERM.** The initial term of the Lease Contract begins on the **1st** day of **March** , **2018** , and ends at midnight the **28th** day of **February** , **2019** . This Lease Contract will automatically renew month-to-month unless either party gives at least **60** days written notice of termination or intent to move-out as required by paragraph 35 (Move-Out Notice).

**4. SECURITY DEPOSIT.** Unless modified by addenda, the total security deposit at the time of execution of this Lease Contract for all residents in the apartment is $ **99.00** , due on or before the date this Lease Contract is signed, to be administered in accordance with the North Carolina Tenant Security Deposit Act, N.C.G.S. § 42-50 et seq.

In holding your security deposit, we will *(check one):*

☒ Deposit the security deposit in a trust account with (name of bank or savings institution) **Wells Fargo Bank N.A.**

located at (address) **300 N. Greene St.**
**Greensboro, NC 27501**

or

☐ Furnish a bond from (name of bonding company) _____
_____ located at
(address) _____

The security deposit may, in our discretion, be deposited in an interest-bearing account with the bank or savings institution named above. We may retain any interest earned upon the security deposit and may withdraw such interest, if any, from such account as it accrues as often as is permitted by the terms of the account.

Your security deposit will be held and, upon termination of your tenancy, be applied in the manner and for the purposes set forth in paragraphs 39 (Security Deposit Deductions and Other Charges) and 40 (Deposit Return, Surrender, and Abandonment) of this Lease Contract.

**5. KEYS AND FURNITURE.** You will be provided _____**1**_____ apartment key(s), _____**1**_____ mailbox key(s), and _____**1**_____ other access devices for **gate card** . Your apartment will be *(check one):*
☐ furnished or ☒ unfurnished.

**6. RENT AND CHARGES.** Unless modified by addenda, you will pay $ **1195.00** per month for rent, payable in advance and without demand:

☒ at the on-site manager's office, or
☒ at our online payment site, or
☒ at **www.bellresidents.com**

Prorated rent of $ _____ is due for the remainder of *(check one):*
☒ 1st month or ☐ 2nd month, on _____

Otherwise, you must pay your rent on or before the 1st day of each month *(due date)* with no grace period. Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless expressly authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. At our discretion, we may convert any and all checks via the Automated Clearing House (ACH) system for the purposes of collecting payment. If you don't pay all rent on or before the **5** day of the month, you'll pay a late charge of 5% of the rental payment or $15.00, whichever is greater. You'll also pay a charge of $ **25.00** as provided by law for each returned check or rejected electronic payment. If you don't pay rent on time, you'll be delinquent and all remedies under this Lease Contract will be authorized. We'll also have all other remedies for such violation.

**7. UTILITIES.** We'll pay for the following items, if checked and if permitted by law:
☐ water      ☐ gas      ☐ electricity      ☐ master antenna.
☐ wastewater   ☐ trash   ☐ cable TV    ☐ other_____

You'll pay for all other utilities, related deposits, and any charges, fees, or services on such utilities. You must not allow utilities to be disconnected—including disconnection for not paying your bills—until the lease term or renewal period ends. Cable channels that are provided may be changed during the lease term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-operated lighting. If any utilities are submetered for the apartment, or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance.

**8. INSURANCE.** We do not maintain insurance to cover your personal property or personal injury. We are not responsible to any resident, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other residents, occupants, or invited/uninvited guests or vandalism unless otherwise required by law.

We urge you to get your own insurance for losses to your personal property or injuries due to theft, fire, water damage, pipe leaks and the like.

Additionally, you are *(check one)* ☒ required to purchase personal liability insurance ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance throughout your tenancy, including any renewal periods and/or lease extensions, is an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law.

You acknowledge that no portion of the rent paid by you under this agreement will be specifically allocated for the purchase of the owner's structural fire insurance, though the owner may use a portion of gross rental proceeds obtained from all rental units in the community to purchase such structural fire insurance, and in such an event, that you are in no way a co-insured under any such policy.

**9. LOCKS AND LATCHES.** Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done before you move into your apartment.

You may at any time ask us to change or rekey locks or latches during the Lease Term. We must comply with these requests, but you must pay for them, unless otherwise provided by law.

Payment for Rekeying, Repairs, Etc. You must pay for all repairs or replacements arising from misuse or damage to devices by you or your occupants, or guests during your occupancy. You may be required to pay in advance if we notify you within a reasonable time after your request that you are more than 30 days delinquent in reimbursing us for repairing or replacing a device which was misused or damaged by you, your guest or an occupant; or if you have requested that we repair or change or rekey the same device during the 30 days preceding your request and we have complied with your request. Otherwise, you must pay immediately after the work is completed.



☒ This document was executed via the NAA E-signature System - ID: 123961769 ]

**10. SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed lease form.

**See special provisions on the last page**

See any additional special provisions.

**11. REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the apartment community due to violation of the Lease Contract or rules, improper use, or negligence by you or your guests or occupants. Unless the damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacement costs, and damage to the following that result from your or your invitees, guests, or occupants' negligence or intentional acts: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, excluding advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

**12. (A) EVICTION OR SUMMARY EJECTMENT AND PROPERTY LEFT IN THE APARTMENT.**

In the event you violate any terms or conditions of this Lease Contract or fail to perform any promise, duty or obligation you have agreed to or imposed upon you by law, then we, in addition to all other rights and remedies provided by law, may, at our option and with or without notice to you, either (1) terminate this Lease Contract or (2) terminate your right to possession of the premises without terminating this Lease Contract.

Regardless of whether we terminate this Lease Contract or only terminate your right of possession without terminating this Lease Contract, we shall be immediately entitled to possession of the premises and you shall peacefully surrender possession of the premises to us immediately upon our demand. In the event that you fail to surrender possession, we shall re-enter and re-take possession through a summary ejectment proceeding or expedited eviction proceeding as provided by North Carolina law. In the event that we terminate this Lease Contract, all of our duties under this agreement shall terminate and we shall be entitled to collect from you all accrued and unpaid rents, realized concessions, and damages arising under the Lease Contract.

If we bring a suit against you for summary ejectment, the County sheriff may remove your personal property from the apartment within 7 days from the time the sheriff receives the Writ of Possession. You must retake possession of your property if it is removed by the sheriff. If you do not do so, the sheriff may arrange for the storage of your property, and you will be liable for the costs of the proceedings and the storage of your property.

If the sheriff does not store your personal property removed from the apartment, we may take possession of it and move it for storage purposes. In the event of an execution of a Writ of Possession against you, you agree that this sentence hereby constitutes our offer to release your personal property to you during our regular business hours for the seven calendar-day period following the execution of a Writ of Possession. Seven days after being placed in lawful possession of your personal property by execution of the Writ of Possession, we may throw away, dispose of, or sell your property. If you request that we release your property to you during the seven day period, we must do so during our regular business hours. If we elect to sell your property, we must give you at least seven days notice prior to the sale, and we must release your property to you if you so request before the sale. If you do not request the release of your property within seven days, all costs of summary ejectment, execution and storage proceedings shall be charged to you as court costs and shall constitute a lien against the stored property.

In the event we terminate your right of possession without terminating this Lease Contract, you shall remain liable for the full performance of all the covenants, and we shall use reasonable efforts to re-rent the premises on your behalf and you shall remain liable for any resulting costs, deficiencies or damages. Any such rentals reserved from re-renting shall be applied first to the cost of re-renting the premises and then to the rentals due under this Lease Contract. Re-entry shall not bar the right of recovery of rent or damages for breach of covenants, nor shall the partial

receipt of rent other conditions broken be deemed a waiver of forfeiture, as provided by N.C.G.S. In order to entitle us to re-enter and/or terminate this Lease Contract for default, it shall not be deemed necessary to give notice of rent being due and unpaid or of other conditions broken or to make demands for rent, the execution of this Lease signed by you and us being sufficient notice of all terms of this Lease Contract including of the rent being due and demand for the same. We shall have all rights granted pursuant to N.C.G.S. §42-25.9 and §42-25.6.

**(B) ABANDONED PROPERTY**

If you abandon personal property with a value of $750 or less from apartment or fail to remove such property at the time of execution of a Writ of Possession, we may, as an alternative to the procedures described above, deliver the property to a non-profit organization regularly providing free or inexpensive clothing or household furnishings to people in need, provided that such organization agrees to store the property separately for a thirty-day period, and to release it to you without charge during this thirty-day period. We will deem personal property to be abandoned if we find evidence clearly showing the apartment has been voluntarily vacated after the rental period has expired and we have no notice of a disability that caused the vacancy.

If the total value of the property left in the apartment at the time of execution of a Writ of Possession is less than $500, we may deem the property abandoned after five days and may throw away or dispose of the property.

**13. FAILING TO PAY FIRST MONTH'S RENT.** If you don't pay the first month's rent when or before the Lease Contract begins, we may end your right of occupancy and recover damages, future rent, reletting charges, attorney's fees, court costs, and other lawful charges. This paragraph does not apply to termination of this Lease Contract 14 or more days before occupancy by Military Personnel under paragraph 22.

**14. RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10 (Special Provisions), by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under paragraph 17 (Community Policies or Rules). If, at least 5 days before the advance notice deadline referred to in paragraph 3 (Lease Term), we give you written notice of rent increases or lease changes effective when the lease term or renewal period ends, this Lease Contract will automatically continue month-to-month with the increased rent or lease changes. The new modified Lease Contract will begin on the date stated in the notice (without necessity of your signature) unless you give us written move-out notice under paragraph 35 (Move-Out Notice).

**15. DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or Lease Contract termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the apartment.

If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the apartment is ready for occupancy, but not later.

(1) If we give written notice to any of you when or after the initial term as set forth in paragraph 3 (Lease Term)—and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date—you may terminate the Lease Contract within 3 days of your receiving the notice, but not later.

(2) If we give written notice to any of you before the initial term as set forth in paragraph 3 (Lease Term) and the notice states that construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days after any of you receives written notice, but not later. The readiness date is considered the new initial term as set forth in paragraph 3 (Lease Term) for all purposes. This new date may not be moved to an earlier date unless we and you agree.

**16. DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it.

**17. COMMUNITY POLICIES OR RULES.** You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are considered part of this Lease Contract. We may make reasonable changes to written rules, effective immediately, if they are distributed and applicable to all units in the apartment community and do not change dollar amounts on page 1 of this Lease Contract.

**18. LIMITATIONS ON CONDUCT.** The apartment and other areas reserved for your private use must be kept clean. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in all common areas. You, your occupants, or guests may not anywhere in the apartment community: use candles or use kerosene lamps or kerosene heaters without our prior written approval; cook on balconies or outside; or solicit business or contributions. Conducting any kind of

business (including child care services) in your apartment or in the apartment community is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas. You'll be liable to us for damage caused by you or any guests or occupants.

We may exclude from the apartment community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest if a specific resident in the community.

You agree to notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance, violence to another person or destruction of property. You also agree to notify us if you or any

This document was executed via the NAA E-signature System. ID: 132051763

occupant registers as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our right to evict you.

**19. PROHIBITED CONDUCT.** You and your occupants or guests may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the apartment community.

**20. PARKING.** We may regulate the time, manner, and place of parking cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles by anyone. We may have unauthorized or illegally parked vehicles towed under an appropriate statute. A vehicle is unauthorized or illegally parked in the apartment community if it:

(1) has a flat tire or other condition rendering it inoperable; or
(2) is on jacks, blocks or has wheel(s) missing; or
(3) has no current license or no current inspection sticker; or
(4) takes up more than one parking space; or
(5) belongs to a resident or occupant who has surrendered or abandoned the apartment; or
(6) is parked in a marked handicap space without the legally required handicap insignia; or
(7) is parked in space marked for manager, staff, or guest at the office; or
(8) blocks another vehicle from exiting; or
(9) is parked in a fire lane or designated "no parking" area; or
(10) is parked in a space marked for other resident(s) or unit(s); or
(11) is parked on the grass, sidewalk, or patio; or
(12) blocks garbage trucks from access to a dumpster; or
(13) belongs to a resident and is parked in a visitor or retail parking space.

**21. RELEASE OF RESIDENT.** Unless you're entitled to terminate your tenancy under paragraphs 10 (Special Provisions), 15 (Delay of Occupancy), 22 (Military Personnel Clause), or 30 (Move-Out Notice), you won't be released from this Lease Contract for any reason—including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, or death.

**22. MILITARY PERSONNEL CLAUSE.** You may terminate your tenancy if you enlist or are drafted or commissioned in the U.S. Armed Forces. You also may terminate your tenancy if:

(1) you are (i) a member of the U.S. Armed Forces or reserves on active duty or (ii) a member of the National Guard called to active duty for more than 30 days in response to a national emergency declared by the President; and
(2) you are either (i) given change-of-station orders to permanently depart the local area, (ii) deployed with a military unit for 90 days or more, or (iii) relieved or released from active duty.

After you deliver to us your written termination notice, your tenancy will be terminated under this military clause 30 days after our receipt of the notice. You must furnish us a copy of your permanent change-of-station orders, call-up orders, or deployment orders or letter. Military permission for base housing doesn't constitute a permanent change-of-station order. After your move out, we'll return your security deposit, less lawful deductions. If you or any co-resident are a dependent of a servicemember covered by the U.S. Servicemembers Civil Relief Act, your tenancy may not be terminated under this paragraph without applying to a court and showing that your ability to comply with the Lease Contract is materially affected by reason of the servicemember's military service. A co-resident who is not your spouse or dependent cannot terminate under this military clause. If you terminate your tenancy 14 or more days before occupancy, no damages or penalties of any kind shall be due.

**23. RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke detectors and carbon monoxide detectors, keyed deadbolt locks, keyless bolting devices, window latches, and access control devices.

Smoke Detectors and Carbon Monoxide Detectors. We'll furnish smoke detectors and carbon monoxide detectors as required by statute, and we'll test them and provide working batteries, if applicable, when you first take possession. After that, you must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must periodically inspect the smoke detectors and carbon monoxide detectors to ensure their operability and immediately report smoke detector and carbon monoxide detector malfunctions to us. Neither you nor others may disable smoke detectors and carbon monoxide detectors. If you disable or damage the smoke detector and carbon monoxide detectors, or fail to replace a dead battery or report malfunctions to us, you may be liable to us and others for any loss, damage, or fines from fire, smoke, or water.

Casualty Loss. We're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, or vandalism unless otherwise required by law. During freezing weather, you must ensure that the temperature in the apartment is sufficient to make sure that the pipes do not freeze (we suggest at least 50 degrees). If the pipes freeze or any other damage is caused by your failure to properly maintain the heat in your apartment, you'll be liable

for damage to our and other's property. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for those services.

Crime or Emergency. Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity or other emergency involving imminent harm. You should then contact our representative. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. We're not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security. If we provide any access control devices or security measures upon the property, they are not a guarantee to prevent crime or to reduce the risk of crime on the property. You agree that no access control or security measures can eliminate all crime and that you will not rely upon any provided access control or security measures as a warranty or guarantee of any kind. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You must also furnish us with the law-enforcement agency's incident report number upon request.

**24. CONDITION OF THE PREMISES AND ALTERATIONS.** You'll be given an Inventory and Condition form on or before move-in. You must note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke detectors and carbon monoxide detectors, furniture, telephone and cable TV wiring, screens, locks, and access control devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

**25. REQUESTS, REPAIRS, AND MALFUNCTIONS.** IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST—FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS—IT MUST BE SUBMITTED THROUGH EITHER THE ONLINE RESIDENT/MAINTENANCE PORTAL, OR SIGNED AND IN WRITING AND DELIVERED TO OUR DESIGNATED REPRESENTATIVE (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, crime in progress, or imminently dangerous conditions as specifically defined by law). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are rarely emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections.

If we believe that fire or catastrophic damage is substantial, or that performance of needed repairs poses a danger to you, we may terminate your tenancy within a reasonable time by giving you written notice. If your tenancy is so terminated, we'll refund prorated rent and all deposits, less lawful deductions.

**26. ANIMALS.** No animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the apartment or apartment community unless we've so authorized in writing. If we allow an animal, you must sign a separate animal addendum, which may require additional deposits, rents, fees or other charges. This additional deposit is considered a part of the general security deposit. You must remove an unauthorized animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. We will authorize support and/or service animals for you, your guests, and occupants pursuant to the parameters and guidelines established by the Fair Housing Act and the HUD regulatory guidelines. We may require a written statement from a qualified professional verifying the need for the support and/or service animal. You must not feed stray or wild animals.

If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. You shall remove any pet previously permitted under this Lease Contract and the Animal

Ben 91111.crm
© 2017, National Apartment Association, Inc. - 10/2017, North Carolina

Case 5:18-cv-00510-D   Document 1-1   Filed 10/30/18   Page 54 of 79

Addendum within ___24___ hours of written notification from us that the pet, in our sole judgment, creates a nuisance or disturbance or is, in our opinion, undesirable. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for defleaing, deodorizing, and shampooing. Initial and daily animal-violation charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules.

27. **WHEN WE MAY ENTER.** If you or any guest or occupant is present, then repairers, servicers, contractors, our representatives or other persons listed in (2) below may peacefully enter the apartment at reasonable times for the purposes listed in (2) below. If nobody is in the apartment, such persons may enter peacefully and at reasonable times by duplicate or master key (or by breaking a window or other means when necessary in emergencies) if:

(1) written notice of the entry is left in a conspicuous place in the apartment immediately after the entry; and

(2) entry is for: responding to your request; making repairs or re-placements; estimating repair or refurbishing costs; performing pest control; doing preventive maintenance; changing filters; testing or replacing smoke-detector batteries; retrieving unreturned tools, equipment, or appliances; preventing waste of utilities; leaving notices; delivering, installing, reconnecting, or replacing appliances,

furniture, equipment, or access control devices; removing or rekeying unauthorized access control devices; stopping excessive noise; cutting off electricity according to statute; retrieving property owned or leased by former residents; inspecting when immediate danger to person or property is reasonably suspected; allowing persons to enter as you authorized in your rental application (if you die, are incarcerated, etc.); allowing entry by a law officer with search or arrest warrant or in bad pursuit; showing apartment to prospective residents (after move-out or vacate notice has been given); or showing apartment to government inspectors for the limited purpose of determining housing and fire ordinance compliance by us and to lenders, appraisers, contractors, prospective buyers, or insurance agents.

28. **MULTIPLE RESIDENTS OR OCCUPANTS.** Each resident is jointly and severally liable for all lease obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of tenancy termination, repair requests, and entry permissions) constitute notice from all residents. Security-deposit refunds and deduction itemizations of multiple residents will comply with paragraph 40 (Deposit Return, Surrender, and Abandonment).

29. **REPLACEMENTS AND SUBLETTING.** Replacing a resident, subletting, or assignment is allowed only when we consent in writing. If departing or remaining residents find a replacement resident acceptable to us before moving out and we expressly consent to the replacement, subletting, or assignment, then

(1) a reletting charge will not be due;

(2) a reasonable administrative (paperwork) and/or transfer fee will be due, and a rekeying fee will be due if rekeying is requested or required; and

(3) the departing and remaining residents will remain liable for all Lease Contract obligations for the rest of the original Lease Contract term.

**Procedures for Replacement.** If we approve a replacement resident, then, at our option: (1) the replacement resident must sign this Lease Contract with or without an increase in the total security deposit or (2) the remaining and replacement residents must sign an entirely new Lease Contract. Unless we agree otherwise in writing, your security deposit will automatically transfer to the replacement resident as of the date we approve. The departing resident will no longer have a right of occupancy or security-deposit refund, but will remain liable for the remainder of the original Lease Contract term unless we agree otherwise in writing—even if a new Lease Contract is signed.

30. **RESPONSIBILITIES OF OWNER.** We'll act with customary diligence to:

(1) comply with the applicable building and housing codes;

(2) make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition;

(3) keep all common areas of the premises in safe condition;

(4) maintain in good and safe working order and promptly repair all facilities and appliances supplied or required to be supplied by us; and.

(5) provide operable smoke detectors and replace or repair the smoke detectors within 15 days of receipt of your written notification to us.

31. **DEFAULT BY RESIDENT.** You'll be in default if you or any guest or occupant violates any terms of this Lease Contract including but not limited to the following violations: (1) you don't pay rent or other amounts that you owe when due; (2) you or any guest or occupant violates the apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (3) you abandon the apartment; (4) you give incorrect or false answers in a rental application; (5) you or any occupant is arrested, convicted, or given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; (6) any illegal drugs or paraphernalia are found in your apartment; (7) you or any guest or occupant engages in any of the prohibited conduct in paragraph 19 (Prohibited Conduct); or (8) you or any occupant, in bad faith, makes an invalid complaint to an official or employee of a utility company or the government.

**Eviction.** If you default, we may re-enter and re-take possession of the premises as provided in paragraph 12 (Eviction or Summary Ejectment and Property Left in the Apartment) and may immediately institute proceedings for summary ejectment as provided by law without notice or demand. Termination of your possession rights or subsequent reletting doesn't release you from liability for future rent or other lease obligations. After filing a summary ejectment suit, we may still accept a partial payment of rent or a partial housing subsidy payment; the filing or acceptance doesn't waive or diminish our right of eviction, or any other contractual or statutory right. Accepting a partial payment of rent or a partial housing subsidy payment at any time doesn't waive your default of this Lease Contract; our right to damages; past or future rent or other sums; or to file an eviction or to continue with filed eviction proceedings; nor does our exercise of any of our rights in this Paragraph violate Chapter 75 of the N.C. General Statutes.

**Holdover.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then: (1) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (2) rent for the holdover period will be increased by 25% over the then-existing rent, without notice; (3) you'll be liable to us for actual damages arising out of full term of the previously signed Lease Contract of a new resident who can't occupy because of the holdover; and (4) at our option, we may extend the lease term—for up to one month from the date of notice of lease extension—by delivering written notice to you or your apartment while you continue to hold over.

**Other Remedies.** If your rent is delinquent and we give you 5 days' prior written notice, we may terminate electricity that we've furnished at our expense, unless governmental regulations on submetering or utility proration provide otherwise, or unless otherwise prohibited by law. We may report unpaid amounts to credit agencies. If you default and move out early, you will pay us any amounts stated to be rental discounts in paragraph 10 (Special Provisions), in addition to other sums due. Upon your default, we have all other legal remedies, including lease termination and summary ejectment under state statute. We may recover from you attorney's fees and all litigation costs to the extent permitted by law. In the event we file a summary ejectment lawsuit against you, we may also recover from you the highest one of the following fees (which shall be in addition to late fees, attorney's fees, and any applicable court costs):

(1) Complaint Filing Fee. If you are in default of this Lease Contract and if we file and serve a summary ejectment complaint or a complaint for money owed against you, and if we elect to dismiss the complaint after you cure the default, you shall owe Us a Complaint Filing Fee equal to $15.00 or five percent (5%) of the monthly rent, whichever is higher. If the rent is subsidized by a governmental entity, the Complaint Filing Fee will be $15.00 or 5% of your share of the monthly rent, whichever is higher.

(2) Court Appearance Fee. In the event that (i) we file, serve, and prosecute successfully a summary ejectment complaint or complaint for money owed against you and (ii) a judgment is entered against you, you shall owe us—in lieu of the Complaint Filing Fee—a Court Appearance Fee equal to ten percent (10%) of the monthly rent. If the rent is subsidized by a government entity, the Court Appearance Fee will be 10% of your share of the monthly rent.

(3) Second Trial Fee. In the event that (i) you appeal a judgment of a magistrate and (ii) we prove that you are in default of the lease at the new trial and (iii) we obtain a judgment against you at the new trial, you shall owe us—in lieu of the Complaint Filing Fee and Court Appearance Fee—a Second Trial Fee equal to twelve percent (12%) of the monthly rent. If the monthly rent is subsidized by a government entity, the Second Trial Fee will be 12% of your share of monthly rent.

**Mitigation of Damages.** If you move out early, you'll be subject to all remedies under North Carolina law. We'll exercise customary diligence to relet and minimize damages. We'll credit all subsequent rent that we actually receive from subsequent residents against your liability for past-due and future rent and other sums due.

**Lease Renewal When A Breach or Default Has Occurred.** In the event that you enter into a subsequent Lease prior to the expiration of this Lease and you breach or otherwise commit a default under this Lease, We may, at our sole and absolute discretion, terminate the subsequent Lease, even if the subsequent Lease term has yet to commence. We may terminate said subsequent Lease by sending you written notice of our desire to terminate said subsequent Lease

**Remedies Cumulative.** Any remedies set forth herein shall be cumulative, in addition to, and not in limitation of, any other remedies available to Landlord under any applicable law.

This document was executed via the NAA E-signature System. ID: 132961763

**32. MISCELLANEOUS.** Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us. Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing. No action or omission of our representative will be considered a waiver of any subsequent violation, default, or term or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, liens, or other rights isn't a waiver under any circumstances. Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo, letter or fax that was given. Fax signatures are binding. All notices must be signed.

Exercising one remedy won't constitute an election or waiver of other remedies. Unless prohibited by law or the respective insurance policies, insurance subrogation is waived by all parties. All remedies are cumulative. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf. This Lease Contract binds subsequent owners. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract. All notices and documents may be in English and, at our option, in any language that you read or speak. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies. This Lease Contract is subordinate or superior to existing and future recorded mortgages, at lender's option. All Lease Contract obligations must be performed in the county where the apartment is located.

Consent to Solicitation. You hereby expressly authorize us, our representative(s), and any collection agency or debt collector (hereinafter collectively referred to as the "Authorized Entities") to communicate with you. The communication may be made through any method for any reason related to amounts due and owing under this Lease. You authorize any and all of the communication methods even if you will incur a fee or a cost to receive such communications. You further promise to immediately notify the Authorized Entities if any telephone number or email address or other unique electronic identifier or mode that you provided to any Authorized Entity changes or is no longer used by you.

All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.

Obligation to Vacate. If we provide you with a notice to vacate, or if you provide us with a written notice to vacate or intent to move-out in accordance with the Lease Terms paragraph, and we accept such written notice, then you are required to vacate the Apartment and remove all of your personal property therefrom at the expiration of the Lease term, or by the date set forth in the notice to vacate, whichever date is earlier, without further notice or demand from us.

FORCE MAJEURE: If we are prevented from completing performances of any obligations hereunder by an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or other occurrence which is beyond the control of the parties, then we shall be excused from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

Furthermore, if such an event damages the property to materially affect its habitability by some or all residents, we reserve the right to vacate any and all leases and you agree to excuse us from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

**33. PAYMENTS.** At our option and without notice, we may apply money received (other than sale proceeds under paragraph 12 (Eviction or Summary Ejectment and Property Left in the Apartment), late fees under paragraph 6 (Rent and Charges), or utility payments subject to governmental regulations) first to any of your unpaid obligations, then to current rent—regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments.

**34. ASSOCIATION MEMBERSHIP.** We represent that either: (1) we or (2) the management company that represents us, is at the time of signing this Lease Contract or a renewal of this Lease Contract, a member of both the National Apartment Association and any affiliated state and local apartment (multi-housing) associations for the area where the apartment is located.

**35. MOVE-OUT NOTICE.** Before moving out, you must give our representative advance written move-out notice as provided below. Your move-out notice will not release you from liability for the full term of the Lease Contract or renewal term. You will still be liable for the entire Lease Contract term if you move out early (paragraph 21 - Release of Resident) except under the military clause (paragraph 22 - Military Personnel Clause). YOUR MOVE-OUT NOTICE MUST COMPLY WITH EACH OF THE FOLLOWING:

* We must receive advance written notice of your move-out date. The advance notice must be at least the number of days of notice required in paragraph 3 (Lease Term). Oral move-out notice will not be accepted and will not terminate your Lease Contract.

* Your move-out notice must not terminate your tenancy sooner than the end of the Lease Contract term or renewal period.

YOUR NOTICE IS NOT ACCEPTABLE IF IT DOES NOT COMPLY WITH ALL OF THE ABOVE. Please use our written move-out form. You must obtain from our representative written acknowledgment that we received your move-out notice. If we terminate your tenancy, we must give you the same advance notice—unless you are in default.

**36. MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the lease term or renewal period ends unless all rent for the entire lease term or renewal period is paid in full. Early move-out may result in reletting charges. You're prohibited by law from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must vacate the apartment before the 30-day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

**37. CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

**38. MOVE-OUT INSPECTION.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

**39. SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** We may deduct sums from your security deposit for charges related to the following: your possible non-payment of rent, costs of water and sewer services provided, damage to the premises, damage or destruction of smoke detectors or carbon monoxide detectors, nonfulfillment of the rental period, any unpaid bills that become a lien against the demised property due to your occupancy, costs of re-renting the premises after

breach by you, including but not limited to any reasonable fees or commissions paid by the landlord to a licensed real estate broker to re-rent the premises, costs of removal and storage of your property after a summary ejectment proceeding, court costs, or any fee authorized by N.C. GEN. STAT. § 42-46.

**40. DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.**
Deposit Return and Forwarding Address. You are required to provide us written notice of your forwarding address, on or before termination of this Lease Contract. If we can determine the full extent of our deductions from your security deposit, we'll mail you, to the forwarding address you provide, your security deposit refund (less lawful deductions) and an itemized accounting of any deductions no later than 30 days after termination of your tenancy under this Lease Contract and delivery of possession by you, unless statutes provide otherwise. If we cannot determine the full extent of our deductions from your security deposit within the aforementioned 30 day period, we'll mail you an interim itemized accounting of our deductions from the security deposit within 30 days after termination of your tenancy under this Lease Contract and delivery of possession by you, and we'll also mail your security deposit refund (less lawful deductions) and a final itemized accounting of any deductions no later than 60 days after termination of your tenancy under this Lease Contract and delivery of possession by you. If you fail to provide us with your forwarding address in writing, as required above, we will process the unclaimed security deposit in accordance with state law.

Surrender. You have surrendered the apartment when: (1) the move-out date has passed and no one is living in the apartment in our reasonable judgment; or (2) all apartment keys and access devices listed in paragraph 5 (Keys and Furniture) have been turned in where rent is paid—whichever date occurs first.

Abandonment. You have abandoned the apartment when all of the following have occurred: (1) everyone appears to have moved out in our reasonable judgment; (2) clothes, furniture, and personal belongings have been substantially removed in our reasonable judgment; (3) you've been in default for non-payment of rent for 5 consecutive days or water, gas, or electric service for the apartment not connected in our name has been terminated; and (4) you've not responded for 2 days to our notice left on the inside of the main entry door, stating that we consider the apartment abandoned. An apartment is also "abandoned" 10 days after the death of a sole resident.

Surrender, abandonment, and judicial eviction end your right of possession for all purposes and gives us the immediate right to: clean up, make repairs in, and relet the apartment, and determine any security deposit deductions. Surrender, abandonment, and judicial eviction affect your rights to property left in the apartment (paragraph 12 - Eviction or Summary Ejectment and Property Left in the Apartment), but do not affect our mitigation obligations (paragraph 31 - Default by Resident).

This document was executed via the NAA E-signature System - ID: 123961762

**41. SEVERABILITY.** If any provision of this Lease Contract is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Lease Contract. The court shall interpret the lease and provisions herein in a manner such as to uphold the valid portions of this Lease Contract while preserving the intent of the parties.

**42. ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, with original signatures. We will provide you with a copy of the Lease Contract. Your copy of the Lease Contract may be in paper format, in an electronic format at your request, or sent via e-mail if we have communicated by e-mail about this Lease. Our rules and community policies, if any, will be attached to the Lease Contract and provided to you at signing. When an Inventory and Condition form is completed, you should retain a copy, and we should retain a copy. Any addenda or amendments you sign as a part of executing this Lease Contract are binding and hereby incorporated into and made part of the Lease Contract between you and us. This lease is the entire agreement between you and us. You acknowledge that you are NOT relying on any oral representations.

> You are legally bound by this document.
> Read it carefully before signing.

Resident or Residents *(all sign below)*

Dan L Williams

Owner or Owner's Representative *(signing on behalf of owner)*

Aali Cara

Address and phone number of owner's representative for notice purposes

1000 Heathmoor Lane

Cary, NC 27513

(919) 677-7887

Name and address of locator service *(if applicable)*

Date form is filled out *(same as on top of page 1)* ___03/01/2018___

SPECIAL PROVISIONS (CONTINUED FROM PAGE 2) __Notwithstanding the language in Sec. 32 of this lease,__ the parties DO NOT waive any of their rights of subrogation. Roommate add/deletion changes $100.00 per change. "Your rent, utility (as further described in the applicable utility addenda attached to the Agreement) and pest/trash/etc. charges may be combined in one mailing ("Resident OneBill"). These charges will be payable to Owner on or before the date indicated on the Resident OneBill. A rent service fee of $1.71 will appear on each monthly statement. This fee is charged to rent billing services and related operational fees. The rent service fee does not include the Utility Commission approved billing fee for water and sewer. The rent service fee may be changed or increased at any time with a 30 day notice to Residents. Fees for water, sewer and trash billing are disclosed on the Utility and Services Addendum attached hereto." If this Lease Contract has automatically renewed month to month at least a 30 day written notice of termination or intent to move-out will be required by either party as required by par. 36.

Bell Partners Inc.
Dan Williams

Case 5:18-cv-00516-D    Document 1-1    Filed 10/30/18    Page 57 of 79

This document was executed via the NAA E-signature System    ID: 133881762

1/9/2018

Dan Williams, #1114

Re: Late Rental Payment

**PLAINTIFF'S EXHIBIT**
**5**

To all Resident(s) in possession:

As of today, your rental payment for January 2018 has not been received.

The total amount due on your account is $3,431.58. Please remit the total amount due to the office immediately to bring your account up to date. Your payment must be in the form of a money order or cashier's check. A personal check cannot be accepted.

If payment is not received in full by the Eleventh (11th) of this month before 10:00 am, we will submit your account for court filings to be initiated wherein we will seek to terminate your right to possession of the premises.

If a summary ejectment (eviction) lawsuit is filed against you, you will incur additional expenses including but not limited to the following: $191 for 1 defendant, $221 for 2 defendants or $251 for 3 defendants. In addition, you will be assessed one of the following fees as a result of the eviction proceeding: (i) a Complaint Filing Fee equal to five percent (5%) of your monthly rent; (ii) a Court Appearance Fee equal to ten percent (10%) of your monthly rent; or (iii) a Second Trial Fee equal to twelve percent (12%) of your monthly rent.

Again, all of the above amounts must be paid via money order or cashier's check, or the attempted payment cannot be accepted.

If you have any questions, or feel you have received this letter in error, please contact our office at 919-677-7887. Thank you for your prompt attention to this matter.

*This communication is in an attempt to collect a debt. Any information obtained will be used solely for that purpose.*

Respectfully,

Brandi Cole

*Assistant Community Manager*


PLAINTIFF'S
EXHIBIT
6

Cary Reserve at Weston
1000 Heathmoor Lane

Cary, NC 27513

Date: 4/6/2018

To:     Dan Williams

        1114 Millhous Dr.

        Cary, NC 27513

Re: Notice of Default

In accordance with the provisions of Chapter 42 of the General Statutes of NC, you are hereby
notified that you are in default of payment of rent, late charges, service fees and miscellaneous
charges.

As stated in your lease contract, rent and related charges are due on or before the First day of the month,
and are considered late on the Sixth day of the month. Your account still reflects a balance due as of the
above referenced date.

Total amount now past due: $1,484.25 .This past due amount includes water, late fees and any past due
balance. Payment must be submitted in the form of money order or certified check. No personal checks will
be accepted.

We ask that you take care of this matter immediately. If you have any questions or believe our records to
be in error, please call or come by the rental office.

Should you fail to tender the full amount due, we reserve the right to file a summary ejectment
(eviction) lawsuit against you after close of business on the 10th calendar day of the month. In that
event, you will be charged a $201.00 court filing fee plus $30.00 per leaseholder resident for service
by sheriff. In the event we file an eviction lawsuit against you, you will also owe us a Complaint
Filing Fee equal to five percent (5%) of your monthly rent whenever we agree to file a Voluntary
Dismissal of the eviction case against you. All of the above amounts must be paid in via money order
or cashier's check, or the attempted payment will be rejected.

Sincerely,

Keli Cave
Community Manager

***We accept Visa, Master Card, and Discover. Please call us for details.

cc: resident's file

NOTE: This is an attempt to collect a debt.
Any information obtained from you will be used for that purpose.

 **BELL** | APARTMENT LIVING

Cary Reserve at Weston

1000 Heathmoor Lane, Cary, NC 57513

www.CaryReserveAtWeston.com

January 12, 2018

Re: Court Filing for Non-Payment

Apt: 1114

Dear Dan Williams,

As of today we have not received your rent payment for this month. In accordance with your lease and the late letter, court papers were filed today for possession of the home. Your current balance due is **$3,697.33.**

If you are able to submit the above payment in full prior to the court date, we will dismiss the case. All payments must be in the form of money order or certified check. No personal checks will be accepted.

If you are not able to pay prior to the court date, possession of the home will be requested and you will then have 10 days to pay before the WRIT for Eviction is filed. At that time, additional fees will be due.

Please contact our office to let us know when you may be able to submit your rent payment.

Respectfully,

Brandi Cole, *Assistant Community Manager*

Cary Reserve at Weston

**PLAINTIFF'S
EXHIBIT
7**



# BELL PARTNERS
APARTMENT INVESTMENT & MANAGEMENT

Date:       4/12/2018

From:       Brandi Cole, Assistant Community Manager / Agent for Owner
            Cary Reserve at Weston
            1000 Heathmoor Lane
            Cary, NC 27513
            919.677.7887

To:         Dan Williams
            1114 Millhous Drive
            Cary, NC 27513

Apt: 1114

Dear Dan Williams,

This letter is to inform you that we have submitted the paperwork to our lawyers to file a summary ejectment (eviction) lawsuit for possession of your home on 4/11/18. You will receive notice from the County Courthouse of your court date. As of this date, our records indicate that your total amount due is $1,404.25. Once our lawyers file the lawsuit with the court you will be responsible for all additional court costs and legal fees as per the terms of the lease agreement. Please contact the leasing office for your updated balance due prior to submitting payment. Any payment for this balance must be in full and in certified funds— either money order or cashier's check. Payments not made in full will be rejected and returned to you.

Please remit your payment at least 24 hours prior to your court date to help ensure dismissal of your case. Any payments received less than 24 hours before the court date do not guarantee a dismissal.

In the event we file, serve, and prosecute a summary ejectment and a judgment is entered against you, a court appearance fee equal to 10% of your monthly rent will immediately be due along with all delinquent rent, fees, and other applicable charges.

If you have questions regarding this balance due, please call or come by the management office.

Sincerely,

Brandi Cole,
Assistant Community Manager / Agent for Owner

This is an attempt to collect a debt. Any information obtained will be used for that purpose.

CARY RESERVE AT WESTON
PH 919.677.7887 | FAX 919.677.9486
1000 Heathmoor Lane
Cary, NC 27513



PLAINTIFF'S
EXHIBIT
8



**BELL PARTNERS**
APARTMENT INVESTMENT & MANAGEMENT

## Cary Reserve at Weston

## NOTICE OF COURT DATE

Date: 4/13/2018

From: Brandi Cole, Assistant Community Manager/Agent for Owner
1000 Heathmoor Lane
Cary, NC 27513
PH: (919) 677-7887

To: Dan Williams
1114 Millhous Dr.
Cary, NC 27513

To all Resident(s) in possession, including:

Dan Williams,

This letter is to inform you of your court date for failure to pay rent for the month of April 2018. Your court date is scheduled for 4/25/18 at the Wake County Court House.

As of this date, our records indicate that your total amount due is $1,665.00. The payment for this balance must be in the form of *money order or cashier's check only.*

Please remit the total amount due prior to your court date in order for your case to be dismissed. Please remit the payment at least 24 hours prior to your court date to help insure dismissal of your case. Any payments received less than 24 hours before the court case can not guarantee a dismissal.

As of the 25th of the current month, your past due balance will not be accepted without the following month's rent as well.

If payment is not received, possession of your apartment will be requested in court. We ask that you please contact the management office as soon as possible to let us know at what time you plan to make the payment for the full amount listed above.

If you have any questions regarding this balance due, please call or visit the management office.

Sincerely,

*Brandi Cole*

Brandi Cole, Assistant Community Manager/Agent for Owner
Cary Reserve at Weston

PLAINTIFF'S EXHIBIT
9

PLAINTIFF'S EXHIBIT

10

**Date : 5/22/2018**

| Code | 10020627 | Property | p91358 | Lease From | 11/22/2017 |
| Name | Randi Milroy | Unit | | Lease To | 11/21/2018 |
| Address | 1400 K Lake Front Drive | Status | 1400K | Move In | 11/22/2016 |
| | | Current | | Move Out | 11/22/2016 |
| City | Raleigh, NC 27613 | Rent | 838.00 | Phone (W) | |
| | | Phone (H) | (585) 969-0379 | | |

| Date | Description | Charge | Payment | Balance | Chg/Rec |
|---|---|---|---|---|---|
| 02/28/2017 | chk# :ACH-WEB Online Payment - EFT Payment | | 839.93 | (839.93) | 417732 |
| 03/01/2017 | Rent - MF (03/2017) | 822.00 | | (17.93) | 761399 |
| 03/01/2017 | Storm Water Fee (03/2017) | 2.00 | | (15.93) | 761855 |
| 03/01/2017 | Trash Pick Up (03/2017) | 16.00 | | 0.07 | 761856 |
| 03/01/2017 | Admin Fee Submeter Water (12/24/2016 - 1/22/2017) | 3.75 | | 3.82 | 765737 |
| 03/01/2017 | Rent Service Fee (12/24/2016 - 1/22/2017) | 1.62 | | 5.44 | 765738 |
| 03/01/2017 | Admin Fee Submeter Water (12/24/2016 - 1/22/2017) | 6.48 | | 11.92 | 765739 |
| 03/01/2017 | Submeter - Water (12/24/2016 - 1/22/2017) | 7.91 | | 19.83 | 765740 |
| 03/01/2017 | Submeter - Water (12/24/2016 - 1/22/2017) | 10.32 | | 30.15 | 765741 |
| 03/01/2017 | Rent Service Fee Credit (03/01/2017) | (0.07) | | 30.08 | 780303 |
| 04/01/2017 | Admin Fee Submeter Water (1/23/2017 - 2/21/2017) | 10.23 | | 40.31 | 790872 |
| 04/01/2017 | Rent Service Fee (1/23/2017 - 2/21/2017) | 1.62 | | 41.93 | 791231 |
| 04/01/2017 | Submeter - Water (1/23/2017 - 2/21/2017) | 13.58 | | 55.51 | 791585 |
| 04/01/2017 | Rent - MF (04/2017) | 822.00 | | 877.51 | 805219 |
| 04/01/2017 | Storm Water Fee (04/2017) | 2.00 | | 879.51 | 805693 |
| 04/01/2017 | Trash Pick Up (04/2017) | 16.00 | | 895.51 | 805694 |
| 04/05/2017 | chk# :ACH-WEB Online Payment - EFT Payment | | 73.51 | 822.00 | 434879 |
| 04/06/2017 | Late Charges - MF, 5% of $822.00 | 41.10 | | 863.10 | 811230 |
| 04/20/2017 | chk# 14759098 Credit Card One Time Payment : Web - Resident Services | | 1,105.20 | (242.10) | 439395 |
| 05/01/2017 | Admin Fee Submeter Water (2/22/2017 - 3/23/2017) | 10.23 | | (231.87) | 825253 |
| 05/01/2017 | Rent Service Fee (2/22/2017 - 3/23/2017) | 1.62 | | (230.25) | 825624 |
| 05/01/2017 | Submeter - Water (2/22/2017 - 3/23/2017) | 13.20 | | (217.05) | 825995 |
| 05/01/2017 | Rent - MF (05/2017) | 822.00 | | 604.95 | 840474 |
| 05/01/2017 | Storm Water Fee (05/2017) | 2.00 | | 606.95 | 840951 |
| 05/01/2017 | Trash Pick Up (05/2017) | 16.00 | | 622.95 | 840952 |
| 05/02/2017 | Eviction - Attorney/Legal Fees | 201.00 | | 823.95 | 813719 |
| 05/02/2017 | 5% Complaint Filing Fee | 41.10 | | 865.05 | 813720 |
| 05/05/2017 | chk# :ACH-WEB Online Payment - EFT Payment | | 822.00 | 43.05 | 458527 |
| 06/01/2017 | Rent - MF (06/2017) | 822.00 | | 865.05 | 935762 |
| 06/01/2017 | Storm Water Fee (06/2017) | 2.00 | | 867.05 | 936215 |
| 06/01/2017 | Trash Pick Up (06/2017) | 16.00 | | 883.05 | 936226 |
| 06/01/2017 | Admin Fee Submeter Water (3/24/2017 - 4/22/2017) | 10.23 | | 893.28 | 938097 |
| 06/01/2017 | Rent Service Fee (3/24/2017 - 4/22/2017) | 1.62 | | 894.90 | 938469 |
| 06/01/2017 | Submeter - Water (3/24/2017 - 4/22/2017) | 10.83 | | 905.73 | 938840 |
| 06/06/2017 | Late Charges - MF, 5% of $822.00 | 41.10 | | 946.83 | 974406 |
| 06/10/2017 | chk# 16056252 Credit Card One Time Payment : Web - Resident Services | | 946.83 | 0.00 | 498728 |

**Date : 5/22/2018**

| Code | 10020622 | Property | 091458 | Lease From | 11/22/2017 |
|---|---|---|---|---|---|
| Name | Randi Milroy | Unit | 1400K | Lease To | 11/21/2018 |
| Address | 1400 K Lake Front Drive | Status | Current | Move In | 11/22/2016 |
| | | Rent | 838.00 | Move Out | |
| City | Raleigh, NC 27613 | Phone (H) | (585) 969-0379 | Phone (W) | |

| Date | Description | Charge | Payment | Balance | Chg/Rec |
|---|---|---|---|---|---|
| 06/10/2017 | Resident Services) | | 946.83 | 0.00 | 498728 |
| 07/01/2017 | Admin Fee Submeter Water (4/23/2017 - 5/22/2017) | 10.23 | | 10.23 | 1004521 |
| 07/01/2017 | Rent Service Fee (4/23/2017 - 5/22/2017) | 1.62 | | 11.85 | 1004887 |
| 07/01/2017 | Submeter - Water (4/23/2017 - 5/22/2017) | 11.90 | | 23.75 | 1005252 |
| 07/01/2017 | Rent - MF (07/2017) | 822.00 | | 845.75 | 1065579 |
| 07/01/2017 | Storm Water Fee (07/2017) | 2.00 | | 847.75 | 1066046 |
| 07/01/2017 | Trash Pick Up (07/2017) | 16.00 | | 863.75 | 1066047 |
| 07/05/2017 | chk# :ACH-WEB Online Payment - EFT Payment. | | 863.75 | 0.00 | 542989 |
| 08/01/2017 | Admin Fee Submeter Water (5/23/2017 - 6/21/2017) | 10.23 | | 10.23 | 1157749 |
| 08/01/2017 | Rent Service Fee (5/23/2017 - 6/21/2017) | 1.62 | | 11.85 | 1158107 |
| 08/01/2017 | Submeter - Water (5/23/2017 - 6/21/2017) | 12.59 | | 24.44 | 1158465 |
| 08/01/2017 | Rent - MF (08/2017) | 822.00 | | 846.44 | 1241551 |
| 08/01/2017 | Storm Water Fee (08/2017) | 2.00 | | 848.44 | 1242079 |
| 08/01/2017 | Trash Pick Up (08/2017) | 16.00 | | 864.44 | 1242080 |
| 08/06/2017 | Late Charges - MF, 5% of $822.00 | 41.10 | | 905.54 | 1322042 |
| 08/14/2017 | chk# 40176265869930 :CHECKscan Payment | | 405.54 | 500.00 | 633587 |
| 08/14/2017 | chk# 40176265869921 :CHECKscan Payment | | 500.00 | 0.00 | 633588 |
| 09/01/2017 | Admin Service Fee (6/22/2017 - 7/21/2017) | 10.23 | | 10.23 | 1392745 |
| 09/01/2017 | Rent Service Fee (6/22/2017 - 7/21/2017) | 1.62 | | 11.85 | 1393118 |
| 09/01/2017 | Water/Sewer (6/22/2017 - 7/21/2017) | 10.07 | | 21.92 | 1393491 |
| 09/01/2017 | Rent - MF (09/2017) | 822.00 | | 843.92 | 1511165 |
| 09/01/2017 | Storm Water Fee (09/2017) | 2.00 | | 845.92 | 1511658 |
| 09/01/2017 | Trash Pick Up (09/2017) | 16.00 | | 861.92 | 1511659 |
| 09/06/2017 | Late Charges - MF, 5% of $822.00 | 41.10 | | 903.02 | 1569529 |
| 09/15/2017 | Eviction Filing - September 2017 | 201.00 | | 1,104.02 | 1597269 |
| 09/15/2017 | Eviction Filing Fee - September 2017 | 41.10 | | 1,145.12 | 1597270 |
| 09/18/2017 | chk# 40175868651033 :CHECKscan Payment | | 500.00 | 645.12 | 732225 |
| 09/18/2017 | chk# 40175868651042 :CHECKscan Payment | | 500.00 | 145.12 | 732226 |
| 09/18/2017 | chk# 40175868651051 :CHECKscan Payment | | 145.12 | 0.00 | 732227 |
| 10/01/2017 | Admin Service Fee (7/22/2017 - 8/20/2017) | 10.44 | | 10.44 | 1646214 |
| 10/01/2017 | Rent Service Fee (7/22/2017 - 8/20/2017) | 1.62 | | 12.06 | 1646508 |
| 10/01/2017 | Water/Sewer (7/22/2017 - 8/20/2017) | 12.33 | | 24.39 | 1647002 |
| 10/01/2017 | Rent - MF (10/2017) | 822.00 | | 846.39 | 1788043 |
| 10/01/2017 | Storm Water Fee (10/2017) | 2.00 | | 848.39 | 1788526 |
| 10/01/2017 | Trash Pick Up (10/2017) | 16.00 | | 864.39 | 1788527 |
| 10/06/2017 | Late Charges - MF, 5% of $822.00 | 41.10 | | 905.49 | 1848203 |
| 10/12/2017 | chk# 00026572 :CHECKscan Payment | | 905.49 | 0.00 | 830430 |
| 11/01/2017 | Admin Service Fee (8/21/2017 - 9/19/2017) | 10.44 | | 10.44 | 1932205 |

| Code | 00020022 | Property | p21459 | Lease From | 11/22/2017 |
|------|---------|----------|--------|------------|------------|
| Name | Randi Mlroy | Unit | 1400K | Lease To | 11/21/2018 |
| Address | 1400 K Lake Front Drive | Status | Current | Move In | 11/22/2016 |
| | | Rent | 838.00 | Move Out | |
| City | Raleigh, NC 22613 | Phone (H) | (585) 969-0379 | Phone (W) | |

| Date | Description | Charge | Payment | Balance | Chg/Rec |
|------|-------------|--------|---------|---------|---------|
| 10/12/2017 | chk# 00020072 :CHECKscan Payment | | 903.43 | 0.00 | 1505582 |
| 11/01/2017 | Admin Service Fee (8/21/2017 - 9/19/2017) | 10.44 | | 10.44 | 1932202 |
| 11/01/2017 | Rent Service Fee (8/21/2017 - 9/19/2017) | 1.62 | | 12.06 | 1932591 |
| 11/01/2017 | Water/Sewer (8/21/2017 - 9/19/2017) | 11.31 | | 23.37 | 1932974 |
| 11/01/2017 | Rent - MF (11/2017) | 822.00 | | 845.37 | 2091216 |
| 11/01/2017 | Storm Water Fee (11/2017) | 2.00 | | 847.37 | 2091698 |
| 11/01/2017 | Trash Pick Up (11/2017) | 16.00 | | 863.37 | 2091699 |
| 11/06/2017 | Late Charges - MF, 5% of $822.00 | 41.10 | | 904.47 | 2169040 |
| 11/11/2017 | chk# 40176628038021 :CHECKscan Payment | | 500.00 | 404.47 | 954742 |
| 11/11/2017 | chk# 40176628038030 :CHECKscan Payment | | 404.47 | 0.00 | 954743 |
| 12/01/2017 | Admin Service Fee (9/20/2017 - 10/19/2017) | 10.44 | | 10.44 | 2251417 |
| 12/01/2017 | Rent Service Fee (9/20/2017 - 10/19/2017) | 1.62 | | 12.06 | 2252036 |
| 12/01/2017 | Water/Sewer (9/20/2017 - 10/19/2017) | 17.66 | | 29.72 | 2253450 |
| 12/01/2017 | Rent - MF (12/2017) | 838.00 | | 867.72 | 2455991 |
| 12/01/2017 | Storm Water Fee (12/2017) | 2.00 | | 869.72 | 2423854 |
| 12/01/2017 | Trash Pick Up (12/2017) | 16.00 | | 885.72 | 2423885 |
| 12/02/2017 | chk# :ACH-WEB Online Payment - EFT Payment. | | 838.00 | 47.72 | 1021108 |
| 01/01/2018 | Admin Service Fee (10/20/2017 - 11/18/2017) | 10.44 | | 58.16 | 2611626 |
| 01/01/2018 | Rent Service Fee (10/20/2017 - 11/18/2017) | 1.62 | | 59.78 | 2613219 |
| 01/01/2018 | Water/Sewer (10/20/2017 - 11/18/2017) | 14.68 | | 74.46 | 2614034 |
| 01/01/2018 | Rent - MF (01/2018) | 838.00 | | 912.46 | 2699128 |
| 01/01/2018 | Storm Water Fee (01/2018) | 2.00 | | 914.46 | 2699787 |
| 01/01/2018 | Trash Pick Up (01/2018) | 16.00 | | 930.46 | 2699788 |
| 01/06/2018 | Late Charges - MF, 5% of $838.00 | 41.90 | | 972.36 | 2787692 |
| 01/17/2018 | chk# 40176931933767 :CHECKscan Payment | | 472.36 | 500.00 | 1259187 |
| 01/17/2018 | chk# 40176931933768 :CHECKscan Payment | | 500.00 | 0.00 | 1259188 |
| 02/01/2018 | Admin Service Fee (11/19/2017 - 12/18/2017) | 10.44 | | 10.44 | 2891760 |
| 02/01/2018 | Rent Service Fee (11/19/2017 - 12/18/2017) | 1.62 | | 12.06 | 2892153 |
| 02/01/2018 | Water/Sewer (11/19/2017 - 12/18/2017) | 11.38 | | 23.44 | 2892246 |
| 02/01/2018 | Rent - MF (02/2018) | 838.00 | | 861.44 | 3064405 |
| 02/01/2018 | Storm Water Fee (02/2018) | 2.00 | | 863.44 | 3064888 |
| 02/01/2018 | Trash Pick Up (02/2018) | 16.00 | | 879.44 | 3064889 |
| 02/06/2018 | Late Charges - MF, 5% of $838.00 | 41.90 | | 921.34 | 3105153 |
| 02/13/2018 | chk# 40176931937646 :CHECKscan Payment | | 421.34 | 500.00 | 1378173 |
| 02/13/2018 | chk# 40176931937637 :CHECKscan Payment | | 500.00 | 0.00 | 1378235 |
| 03/01/2018 | Admin Service Fee (12/19/2017 - 1/17/2018) | 10.44 | | 10.44 | 3190152 |
| 03/01/2018 | Rent Service Fee (12/19/2017 - 1/17/2018) | 1.62 | | 12.06 | 3190540 |
| 03/01/2018 | Water/Sewer (12/19/2017 - 1/17/2018) | 13.50 | | 25.56 | 3190929 |
| 03/01/2018 | Trash Pick Up (03/2018) | 16.00 | | 41.56 | 3364930 |

| Code | 10020522 | | Property | n91455 | | Lease From | 11/22/2017 |
| Name | Randi Mincy | | Unit | 1400K | | Lease To | 11/21/2018 |
| Address | 1400 K Lake Front Drive | | Status | Current | | Move In | 11/22/2016 |
| | | | Rent | 838.00 | | Move Out | |
| City | Raleigh NC 27613 | | Phone (H) | (585) 969-0379 | | Phone (W) | |

| Date | Description | Charge | Payment | Balance | Chg/Rec |
|---|---|---|---|---|---|
| 10/22/2017 | chk# 00028572 :CHECKscan Payment | | 905.45 | 0.00 | 2502550 |
| 11/01/2017 | Admin Service Fee (8/21/2017 - 9/19/2017) | 10.44 | | 10.44 | 1932205 |
| 11/01/2017 | Rent Service Fee (8/21/2017 - 9/19/2017) | 1.62 | | 12.06 | 1932591 |
| 11/01/2017 | Water/Sewer (8/21/2017 - 9/19/2017) | 11.31 | | 23.37 | 1932979 |
| 11/01/2017 | Rent - MF (11/2017) | 822.00 | | 845.37 | 2091216 |
| 11/01/2017 | Storm Water Fee (11/2017) | 2.00 | | 847.37 | 2091699 |
| 11/01/2017 | Trash Pick Up (11/2017) | 16.00 | | 863.37 | 2091699 |
| 11/08/2017 | Late Charges - MF, 5% of $822.00 | 41.10 | | 904.47 | 2169040 |
| 11/11/2017 | chk# 40176628038021 :CHECKscan Payment | | 500.00 | 404.47 | 954742 |
| 11/11/2017 | chk# 40176628038030 :CHECKscan Payment | | 404.47 | 0.00 | 954743 |
| 12/01/2017 | Admin Service Fee (9/20/2017 - 10/19/2017) | 10.44 | | 10.44 | 2251417 |
| 12/01/2017 | Rent Service Fee (9/20/2017 - 10/19/2017) | 1.62 | | 12.06 | 2252636 |
| 12/01/2017 | Water/Sewer (9/20/2017 - 10/19/2017) | 17.66 | | 29.72 | 2253450 |
| 12/01/2017 | Rent - MF (12/2017) | 838.00 | | 867.72 | 2429591 |
| 12/01/2017 | Storm Water Fee (12/2017) | 2.00 | | 869.72 | 2429884 |
| 12/01/2017 | Trash Pick Up (12/2017) | 16.00 | | 885.72 | 2429885 |
| 12/02/2017 | chk# :ACH-WEB Online Payment - EFT Payment. | | 838.00 | 47.72 | 1021109 |
| 01/01/2018 | Admin Service Fee (10/20/2017 - 11/18/2017) | 10.44 | | 58.16 | 2611626 |
| 01/01/2018 | Rent Service Fee (10/20/2017 - 11/18/2017) | 1.62 | | 59.78 | 2613219 |
| 01/01/2018 | Water/Sewer (10/20/2017 - 11/18/2017) | 14.68 | | 74.46 | 2614094 |
| 01/01/2018 | Rent - MF (01/2018) | 838.00 | | 912.46 | 2699128 |
| 01/01/2018 | Storm Water Fee (01/2018) | 2.00 | | 914.46 | 2699787 |
| 01/01/2018 | Trash Pick Up (01/2018) | 16.00 | | 930.46 | 2699788 |
| 01/08/2018 | Late Charges - MF, 5% of $838.00 | 41.90 | | 972.36 | 2787659 |
| 01/17/2018 | chk# 40176931933757 :CHECKscan Payment | | 472.36 | 500.00 | 1259187 |
| 01/17/2018 | chk# 40176931933758 :CHECKscan Payment | | 500.00 | 0.00 | 1259188 |
| 02/01/2018 | Admin Service Fee (11/19/2017 - 12/18/2017) | 10.44 | | 10.44 | 2891760 |
| 02/01/2018 | Rent Service Fee (11/19/2017 - 12/18/2017) | 1.62 | | 12.06 | 2892153 |
| 02/01/2018 | Water/Sewer (11/19/2017 - 12/18/2017) | 11.38 | | 23.44 | 2892546 |
| 02/01/2018 | Rent - MF (02/2018) | 838.00 | | 861.44 | 3054455 |
| 02/01/2018 | Storm Water Fee (02/2018) | 2.00 | | 863.44 | 3054888 |
| 02/01/2018 | Trash Pick Up (02/2018) | 16.00 | | 879.44 | 3054888 |
| 02/06/2018 | Late Charges - MF, 5% of $838.00 | 41.90 | | 921.34 | 3106153 |
| 02/13/2018 | chk# 40176931937646 :CHECKscan Payment | | 421.34 | 500.00 | 1378173 |
| 02/13/2018 | chk# 40176931937637 :CHECKscan Payment | | 500.00 | 0.00 | 1378215 |
| 03/01/2018 | Admin Service Fee (12/19/2017 - 1/17/2018) | 10.44 | | 10.44 | 3190152 |
| 03/01/2018 | Rent Service Fee (12/19/2017 - 1/17/2018) | 1.62 | | 12.06 | 3190540 |
| 03/01/2018 | Water/Sewer (12/19/2017 - 1/17/2018) | 13.50 | | 25.56 | 3190928 |
| 03/01/2018 | Trash Pick Up (03/2018) | 16.00 | | 41.56 | 3364830 |

| | | | | | |
|---|---|---|---|---|---|
| 03/01/2018 | Trash Pick Up (03/2018) | 16.00 | | 41.56 | 3364839 |
| 03/01/2018 | Rent - MF (03/2018) | 838.00 | | 879.56 | 3364840 |
| 03/01/2018 | Storm Water Fee (03/2018) | 2.00 | | 881.56 | 3364841 |
| 03/06/2018 | Late Charges - MF; 5% of $838.00 | 41.90 | | 923.46 | 3399291 |
| 03/13/2018 | chk# 40172678299695 :CHECKscan Payment | | 423.46 | 500.00 | 1490164 |
| 03/13/2018 | chk# 40172678299686 :CHECKscan Payment | | 500.00 | 0.00 | 1490165 |
| 04/01/2018 | Trash Pick Up (04/2018) | 16.00 | | 16.00 | 3565620 |
| 04/01/2018 | Rent - MF (04/2018) | 838.00 | | 854.00 | 3565621 |
| 04/01/2018 | Storm Water Fee (04/2018) | 3.31 | | 857.31 | 3565622 |
| 04/01/2018 | Admin Service Fee (1/18/2018 - 2/16/2018) | 10.44 | | 867.75 | 3595112 |
| 04/01/2018 | Rent Service Fee (1/18/2018 - 2/16/2018) | 1.62 | | 869.37 | 3595490 |
| 04/01/2018 | Water/Sewer (1/18/2018 - 2/16/2018) | 16.25 | | 885.62 | 3595868 |
| 04/06/2018 | Late Charges - MF, 5% of $838.00 | 41.90 | | 927.52 | 3707728 |
| 04/09/2018 | chk# 24677960 Credit Card On-Line Payment; Web - Resident Services | | 927.52 | 0.00 | 1609467 |
| 05/01/2018 | Trash Pick Up (05/2018) | 16.00 | | 16.00 | 3864795 |
| 05/01/2018 | Rent - MF (05/2018) | 838.00 | | 854.00 | 3864796 |
| 05/01/2018 | Storm Water Fee (05/2018) | 3.31 | | 857.31 | 3864797 |
| 05/01/2018 | Admin Service Fee (2/17/2018 - 3/18/2018) | 10.44 | | 867.75 | 3963316 |
| 05/01/2018 | Rent Service Fee (2/17/2018 - 3/18/2018) | 1.62 | | 869.37 | 3963698 |
| 05/01/2018 | Water/Sewer (2/17/2018 - 3/18/2018) | 12.79 | | 882.16 | 3964072 |
| 05/03/2018 | chk# :ACH-WEB Online Payment - EFT Payment. Web - Resident Services | | 900.00 | (17.84) | 1701605 |

# Resident Ledger

| | |
|---|---|
| **Date:** | 05/22/2018 |
| **Resident Code:** | t0074128 |
| **Property:** | p1727 |
| **Unit:** | 1114 |
| **Status:** | |
| **Rent:** | $1,195.00 |
| **Deposit:** | |
| **Move In Date:** | 09/25/2015 |
| **Move Out Date:** | 01/01/0001 |
| **Due Day:** | 1 |
| **Tel Num(Office):** | 9194125887 |
| **Tel Num(Home):** | |

Dan Williams
1114 Millhous Dr.
Cary, NC 27513

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance forward | 0.00 | 0.00 | 0.00 |
| 12/18/17 | :QuickTrans - :Posted by QuickTrans | 0.00 | 99.00 | (99.00) |
| 12/18/17 | :Posted by QuickTrans (deposit) | 99.00 | 0.00 | 0.00 |
| 12/18/17 | Conversion Balance - RENT | 1,195.00 | 0.00 | 1,195.00 |
| 12/18/17 | Conversion Balance - LATEFEE | 59.75 | 0.00 | 1,254.75 |
| 12/18/17 | Conversion Balance - PETRENT | 15.00 | 0.00 | 1,269.75 |
| 12/18/17 | Conversion Balance - PEST | 2.00 | 0.00 | 1,271.75 |
| 12/18/17 | Conversion Balance - TRASH | 16.00 | 0.00 | 1,287.75 |
| 12/18/17 | Conversion Balance - UTILITYADMIN | 0.24 | 0.00 | 1,287.99 |
| 12/18/17 | Conversion Balance - WATER/RESIDENT | 42.68 | 0.00 | 1,330.67 |
| 12/18/17 | Conversion Balance - GARAGE | 75.00 | 0.00 | 1,405.67 |
| 12/18/17 | Conversion Balance - MTM | 300.00 | 0.00 | 1,705.67 |
| 01/01/18 | Pet Rent (01/2018) | 15.00 | 0.00 | 1,720.67 |
| 01/01/18 | Garage Parking Charges (01/2018) | 75.00 | 0.00 | 1,795.67 |
| 01/01/18 | Rent - MF (01/2018) | 300.00 | 0.00 | 2,095.67 |
| 01/01/18 | Rent - MF (01/2018) | 1,195.00 | 0.00 | 3,290.67 |
| 01/01/18 | Pest Control - 10/25/17-11/25/17 | 2.00 | 0.00 | 3,292.67 |
| 01/01/18 | Service Fee - 01/01/18-01/31/18 | 0.24 | 0.00 | 3,292.91 |
| 01/01/18 | Sewer - 10/25/17-11/25/17 | 27.11 | 0.00 | 3,320.02 |
| 01/01/18 | Trash - 10/25/17-11/25/17 | 16.00 | 0.00 | 3,336.02 |
| 01/01/18 | Water - 10/25/17-11/25/17 | 14.20 | 0.00 | 3,350.22 |
| 01/01/18 | Water Admin Fee - 10/25/17-11/25/17 | 3.75 | 0.00 | 3,353.97 |
| 01/01/18 | Water/Sewer Base - 10/25/17-11/25/17 | 2.86 | 0.00 | 3,356.83 |
| 01/06/18 | Late Charges - MF, 5% of $1495.00 :Reversed by Charge Ctrl# 2796101 | 74.75 | 0.00 | 3,431.58 |
| 01/08/18 | :Reverse Charge Ctrl#2786877 | (74.75) | 0.00 | 3,356.83 |
| 01/11/18 | Late Fee | 74.75 | 0.00 | 3,431.58 |
| 01/30/18 | Jan Non Payment Court Filing Fee | 191.00 | 0.00 | 3,622.58 |
| 02/01/18 | Pest Control - 11/25/17-12/25/17 | 2.00 | 0.00 | 3,624.58 |
| 02/01/18 | Service Fee - 02/01/18-02/28/18 | 0.24 | 0.00 | 3,624.82 |
| 02/01/18 | Sewer - 11/25/17-12/25/17 | 17.97 | 0.00 | 3,642.79 |
| 02/01/18 | Trash - 11/25/17-12/25/17 | 16.00 | 0.00 | 3,658.79 |
| 02/01/18 | Water - 11/25/17-12/25/17 | 9.42 | 0.00 | 3,668.21 |
| 02/01/18 | Water Admin Fee - 11/25/17-12/25/17 | 3.75 | 0.00 | 3,671.96 |
| 02/01/18 | Water/Sewer Base - 11/25/17-12/25/17 | 2.86 | 0.00 | 3,674.82 |
| 02/01/18 | Pet Rent (02/2018) | 15.00 | 0.00 | 3,689.82 |
| 02/01/18 | Garage Parking Charges (02/2018) | 75.00 | 0.00 | 3,764.82 |
| 02/01/18 | Rent - MF (02/2018) | 300.00 | 0.00 | 4,064.82 |
| 02/01/18 | Rent - MF (02/2018) | 1,195.00 | 0.00 | 5,259.82 |
| 02/01/18 | Jan Court Filing Fee | 74.75 | 0.00 | 5,334.57 |
| 02/06/18 | Late Charges - MF, 5% of $1495.00 | 74.75 | 0.00 | 5,409.32 |
| 02/20/18 | Chk# 6742502126 - :CHECKscan Payment | 0.00 | 5,409.32 | 0.00 |
| 03/01/18 | Water/Sewer (12/26/2017 - 1/25/2018) | 24.53 | 0.00 | 24.53 |
| 03/01/18 | Pest Control Fees (12/26/2017 - 1/25/2018) | 2.00 | 0.00 | 26.53 |

PLAINTIFF'S EXHIBIT

11

# Resident Ledger

| | |
|---|---|
| Dan Williams | **Date:** 05/22/2018 |
| 1114 Millhous Dr. | **Resident Code:** t0074128 |
| Cary, NC 27513 | **Property:** p1727 |
| | **Unit:** 1114 |
| | **Status:** |
| | **Rent:** $1,195.00 |
| | **Deposit:** |
| | **Move In Date:** 09/25/2015 |
| | **Move Out Date:** 01/01/0001 |
| | **Due Day:** 1 |
| | **Tel Num(Office):** 9194125887 |
| | **Tel Num(Home):** |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| 03/01/18 | Trash Pick up (12/26/2017 - 1/25/2018) | 16.00 | 0.00 | 42.53 |
| 03/01/18 | Admin Service Fee (12/26/2017 - 1/25/2018) | 3.75 | 0.00 | 46.28 |
| 03/01/18 | Rent Service Fee (12/26/2017 - 1/25/2018) | 0.24 | 0.00 | 46.52 |
| 03/01/18 | Garage Parking Charges (03/2018) | 75.00 | 0.00 | 121.52 |
| 03/01/18 | Rent - MF (03/2018) | 300.00 | 0.00 | 421.52 |
| 03/01/18 | Rent - MF (03/2018) | 1,195.00 | 0.00 | 1,616.52 |
| 03/01/18 | Pet Rent (03/2018) | 15.00 | 0.00 | 1,631.52 |
| 03/05/18 | No longer on mtm | (300.00) | 0.00 | 1,331.52 |
| 03/06/18 | Late Charges - MF, 5% of $1495.00 | 74.75 | 0.00 | 1,406.27 |
| 03/14/18 | March Legal Filing Fee | 191.00 | 0.00 | 1,597.27 |
| 03/14/18 | Complaint Filing Fee | 74.75 | 0.00 | 1,672.02 |
| 03/23/18 | Chk# 6742501907 - :CHECKscan Payment | 0.00 | 1,672.02 | 0.00 |
| 04/01/18 | Garage Parking Charges (04/2018) | 75.00 | 0.00 | 75.00 |
| 04/01/18 | Rent - MF (04/2018) | 1,195.00 | 0.00 | 1,270.00 |
| 04/01/18 | Pet Rent (04/2018) | 15.00 | 0.00 | 1,285.00 |
| 04/01/18 | Water/Sewer (1/26/2018 - 2/24/2018) | 37.51 | 0.00 | 1,322.51 |
| 04/01/18 | Pest Control Fees (1/26/2018 - 2/24/2018) | 2.00 | 0.00 | 1,324.51 |
| 04/01/18 | Trash Pick up (1/26/2018 - 2/24/2018) | 16.00 | 0.00 | 1,340.51 |
| 04/01/18 | Admin Service Fee (1/26/2018 - 2/24/2018) | 3.75 | 0.00 | 1,344.26 |
| 04/01/18 | Rent Service Fee (1/26/2018 - 2/24/2018) | 0.24 | 0.00 | 1,344.50 |
| 04/06/18 | Late Charges - MF, 5% of $1195.00 | 59.75 | 0.00 | 1,404.25 |
| 04/13/18 | Court Filing Fee | 201.00 | 0.00 | 1,605.25 |
| 04/13/18 | Complaint Filing Fee | 59.75 | 0.00 | 1,665.00 |
| 05/01/18 | Garage Parking Charges (05/2018) | 75.00 | 0.00 | 1,740.00 |
| 05/01/18 | Rent - MF (05/2018) | 1,195.00 | 0.00 | 2,935.00 |
| 05/01/18 | Pet Rent (05/2018) | 15.00 | 0.00 | 2,950.00 |
| 05/01/18 | Water/Sewer (2/25/2018 - 3/26/2018) | 35.45 | 0.00 | 2,985.45 |
| 05/01/18 | Pest Control Fees (2/25/2018 - 3/26/2018) | 2.00 | 0.00 | 2,987.45 |
| 05/01/18 | Trash Pick up (2/25/2018 - 3/26/2018) | 16.00 | 0.00 | 3,003.45 |
| 05/01/18 | Admin Service Fee (2/25/2018 - 3/26/2018) | 3.75 | 0.00 | 3,007.20 |
| 05/01/18 | Rent Service Fee (2/25/2018 - 3/26/2018) | 0.24 | 0.00 | 3,007.44 |
| 05/05/18 | Chk# 00087257 - :CHECKscan Payment | 0.00 | 3,007.44 | 0.00 |
| 05/10/18 | Chk# 25837308 - Credit Card On-Line Payment; Web - Resident Services | 0.00 | 35.00 | (35.00) |
| 05/11/18 | Extra Keys or Lock Charges | 35.00 | 0.00 | 0.00 |

| Current | 30 Days | 60 Days | Over 90 | Current Owed |
|---|---|---|---|---|
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

File No. 18 CVM 02019

# STATE OF NORTH CAROLINA

WAKE County

In The General Court Of Justice
District Court Division - Small Claims

Plaintiff(s)
Hudson Capital Weston LLC.

dba Cary Reserve at Weston

## MAGISTRATE SUMMONS
☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

G.S. 1A-1, Rule 4; 7A-217, -232

VERSUS

Defendant(s)
Dan Williams

Date Original Summons Issued

Date(s) Subsequent Summons(es) Issued

TO                                          TO

Name And Address Of Defendant 1            Name And Address Of Defendant 2
Dan Williams
1114 Millhous Dr.
Apt 1114
CARY          NC    27513

## A Small Claim Action Has Been Commenced Against You!

You are notified to appear before the magistrate at the specified date, time, and location of trial listed below. You will have the opportunity at the trial to defend yourself against the claim stated in the attached complaint.

You may file a written answer, making defense to the claim, in the office of the Clerk of Superior Court at any time before the time set for trial. Whether or not you file an answer, the plaintiff must prove the claim before the magistrate.

If you fail to appear and defend against the proof offered, the magistrate may enter a judgment against you.

| Date Of Trial | Time Of Trial | Location Of Court |
|---|---|---|
| 2/16/2018 | 1:30 ☐ AM ☒ PM | 316 Fayetteville Street, Raleigh, NC; 3rd Floor |

Name And Address Of Plaintiff Or Plaintiff's Attorney
Hudson Capital Weston LLC d/b/a Cary Reserve at Weston

1000 Heathmoor Ln

Cary          NC    27513

Date Issued
1-31-18

Signature

☐ Deputy CSC      ☐ Assistant CSC      ☐ Clerk Of Superior Court

(Over)

AOC-CVM-100, Rev. 10/14
© 2014 Administrative Office of the Courts

PLAINTIFF'S
EXHIBIT
12

| File No. | 18CVD02019 | **STATE OF NORTH CAROLINA** | |
|---|---|---|---|

**STATE OF NORTH CAROLINA**

18 CVD 2019

**COMPLAINT IN SUMMARY EJECTMENT**

G.S. 7A-216, 7A-232; Ch. 42, Art. 3 and 7

**WAKE** County

In The General Court Of Justice
District Court Division-Small Claims

1. The defendant is a resident of the county named above.

2. The defendant entered into possession of premises described below as a lessee of plaintiff.

*Name And Address Of Plaintiff*
Hudson Capital Weston LLC

dba Cary Reserve at Weston
1000 Heathmoor Ln

Cary              NC   27513

| County | Telephone No. |
|---|---|
| WAKE | (919)677-7887 |

**VERSUS**

| Name And Address Of Defendant 1 | ☒ Individual ☐ Corporation |
|---|---|
| Dan Williams | |
| 1114 Millhous Dr. | |
| Apt 1114 | |
| CARY              NC   27513 | |

| County | Telephone No. |
|---|---|
| WAKE | |

| Name And Address Of Defendant 2 | ☒ Individual ☐ Corporation |
|---|---|

| County | Telephone No. |
|---|---|

*Name And Address Of Plaintiff's Attorney Or Agent*
Shanae Auguste
Loebsack & Brownlee, PLLC
P.O. Box 78058
Charlotte         NC   28271
(919)792-1690

AOC-CVM-201, As Revised by Counsel for Plaintiff

*Description Of Premises (Include Location)*
1114 Millhous Dr.,Apt 1114,CARY,NC 27513

☒ Conventional
☐ Public Housing
☐ Section 8

| Rate Of Rent(tenant's share) ☒ Month ☐ Week | Date Rent Due | Date Lease or Possession Terminated | Type Of Lease |
|---|---|---|---|
| $   1155.00 per | 12/01/2017 | | ☐ Oral ☒ Written |

3. ☐ The defendant failed to pay the rent due on the above date and the plaintiff made demand for the rent and waited the 10-day grace period before filing the complaint.

☐ The lease period ended on the above date and the defendant is holding over after the end of the lease period.

☒ The defendant breached the condition of the lease described below for which re-entry is specified.

☐ Criminal activity or other activity has occurred in violation of G.S. 42-63 as specified below.

*Description Of Breach/Criminal Activity (give names, dates, places and illegal activity)*
Failure to pay monthly rent when due/in full, from the date above through the hearing date.

4. The plaintiff has demanded possession of the premises from the defendant, who has refused to surrender it, and the plaintiff is entitled to immediate possession.

5. Pursuant to G.S. 42-28, Plaintiff hereby omits any claim for rents or damages and is seeking possession of the premises only.  Plaintiff reserves the right to seek any monetary damages in a separate civil action.

*Description Of Any Property Damage*

| Amount Of Damage (If Known) | Amount of Rent Unpaid | Total Amount Due |
|---|---|---|
| $   CLAIMS RESERVED | $   2,310.00 | $   POSSESSION ONLY |

6. Plaintiff therefore requests to be put in possession of the Premises.

| Date | Name Of Plaintiff/Attorney/Agent (Type Or Print) | Signature Of Plaintiff/Attorney/Agent |
|---|---|---|
| 1/30/2018 | Shanae Auguste | shanae auguste |

**CERTIFICATION WHEN COMPLAINT SIGNED BY AGENT OF PLAINTIFF**

I certify that I am an agent of the plaintiff and have actual knowledge of the facts alleged in this Complaint.

| Date | Name Of Agent (Type Or Print) | Signature Of Agent |
|---|---|---|
| 1/30/2018 | | |

(Over)

# STATE OF NORTH CAROLINA

**WAKE** County

File No.

18 CV 003289

In The General Court Of Justice
District Court Division - Small Claims

**Plaintiff(s)**
Hudson Capital Weston LLC

dba Cary Reserve at Weston

## MAGISTRATE SUMMONS
☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

**VERSUS**

G.S. 1A-1, Rule 4; 7A-217, -232

**Defendant(s)**
Dan Williams

*Date Original Summons Issued*

*Date(s) Subsequent Summons(es) Issued*

**TO**

**TO**

*Name And Address Of Defendant 1*
Dan Williams
1114 Millhous Drive
Apt 1114
CARY                           NC    27513

*Name And Address Of Defendant 2*

## A Small Claim Action Has Been Commenced Against You!

You are notified to appear before the magistrate at the specified date, time, and location of trial listed below. You will have the opportunity at the trial to defend yourself against the claim stated in the attached complaint.

You may file a written answer, making defense to the claim, in the office of the Clerk of Superior Court at any time before the time set for trial. Whether or not you file an answer, the plaintiff must prove the claim before the magistrate.

If you fail to appear and defend against the proof offered, the magistrate may enter a judgment against you.

| *Date Of Trial* | *Time Of Trial* | | *Location Of Court* |
|---|---|---|---|
| 3/27/2018 | 1:30 | ☐ AM  ☒ PM | 316 Fayetteville Street, Raleigh, NC; 3rd Floor |

| *Name And Address Of Plaintiff Or Plaintiff's Attorney* | *Date Issued* |
|---|---|
| Hudson Capital Weston LLC d/b/a Cary Reserve at Weston | 3-16-18 |
| 1000 Heathmoor Ln | *Signature* |
| Cary                          NC      27513 | ☒ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court |

(Over)

AOC-CVM-100, Rev. 10/14
© 2014 Administrative Office of the Courts

PLAINTIFF'S
EXHIBIT
13

| | |
|---|---|
| **File No.** | **STATE OF NORTH CAROLINA** |

**WAKE** County

In The General Court Of Justice
District Court Division-Small Claims

## COMPLAINT
## IN SUMMARY EJECTMENT

G.S. 7A-216, 7A-232; Ch. 42, Art. 3 and 7

**Name And Address Of Plaintiff**
Hudson Capital Weston LLC

dba Cary Reserve at Weston
1000 Heathmoor Ln

Cary      NC   27513

| County | Telephone No. |
|---|---|
| WAKE | (919)677-7887 |

**VERSUS**

**Name And Address Of Defendant 1** ☒ Individual ☐ Corporation

Dan Williams
1114 Millhous Drive
Apt 1114

CARY      NC   27513

| County | Telephone No. |
|---|---|
| WAKE | |

**Name And Address Of Defendant 2** ☒ Individual ☐ Corporation

| County | Telephone No. |
|---|---|
| | |

**Name And Address Of Plaintiff's Attorney Or Agent**
Hans Dara
Loebsack & Brownlee, PLLC
P.O. Box 78058
Charlotte      NC   28271
(919)792-1690

1. The defendant is a resident of the county named above.

2. The defendant entered into possession of premises described below as a lessee of plaintiff.

| Description Of Premises (Include Location) | |
|---|---|
| 1114 Millhous Drive,Apt 1114,CARY,NC 27513 | ☒ Conventional ☐ Public Housing ☐ Section 8 |

| Rate Of Rent (tenant's share) | Date Rent Due | Date Lease or Possession Terminated | Type Of Lease |
|---|---|---|---|
| $ 1195.00 per ☒ Month ☐ Week | 03/01/2018 | | ☐ Oral ☒ Written |

3. ☐ The defendant failed to pay the rent due on the above date and the plaintiff made demand for the rent and waited the 10-day grace period before filing the complaint.

☐ The lease period ended on the above date and the defendant is holding over after the end of the lease period.

☒ The defendant breached the condition of the lease described below for which re-entry is specified.

☐ Criminal activity or other activity has occurred in violation of G.S. 42-63 as specified below.

**Description Of Breach/Criminal Activity (give names, dates, places and illegal activity)**
Failure to pay monthly rent when due/in full, from the date above through the hearing date.

4. The plaintiff has demanded possession of the premises from the defendant, who has refused to surrender it, and the plaintiff is entitled to immediate possession.

5. Pursuant to G.S. 42-28, Plaintiff hereby omits any claim for rents or damages and is seeking possession of the premises only. Plaintiff reserves the right to seek any monetary damages in a separate civil action.

**Description Of Any Property Damage**

| Amount Of Damage (If Known) | Amount of Rent Unpaid | Total Amount Due |
|---|---|---|
| $ CLAIMS RESERVED | $ 1,195.00 | ▶ $ POSSESSION ONLY |

6. Plaintiff therefore requests to be put in possession of the Premises.

| Date | Name Of Plaintiff/Attorney/Agent (Type Or Print) | Signature Of Plaintiff/Attorney/Agent |
|---|---|---|
| 3/13/2018 | Hans Dara | |

**CERTIFICATION WHEN COMPLAINT SIGNED BY AGENT OF PLAINTIFF**

I certify that I am an agent of the plaintiff and have actual knowledge of the facts alleged in this Complaint.

| Date | Name Of Agent (Type Or Print) | Signature Of Agent |
|---|---|---|
| 3/13/2018 | | |

AOC-CVM-201, As Revised by Counsel for Plaintiff      (Over)

# STATE OF NORTH CAROLINA

**WAKE** County

File No.

In The General Court Of Justice
District Court Division - Small Claims

**Plaintiff(s)**
Hudson Capital Weston LLC

dba Cary Reserve at Weston

**VERSUS**

**MAGISTRATE SUMMONS**
☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

G.S. 1A-1, Rule 4; 7A-217, -232

**Defendant(s)**
Dan Williams

Date Original Summons Issued

Date(s) Subsequent Summons(es) Issued

| TO | TO |
|---|---|
| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
| Dan Williams | |
| 1114 Millhous Drive | |
| Apt 1114 | |
| CARY     NC    27513 | |

## A Small Claim Action Has Been Commenced Against You!

You are notified to appear before the magistrate at the specified date, time, and location of trial listed below. You will have the opportunity at the trial to defend yourself against the claim stated in the attached complaint.

You may file a written answer, making defense to the claim, in the office of the Clerk of Superior Court at any time before the time set for trial. Whether or not you file an answer, the plaintiff must prove the claim before the magistrate.

If you fail to appear and defend against the proof offered, the magistrate may enter a judgment against you.

| Date Of Trial | Time Of Trial | | Location Of Court |
|---|---|---|---|
| 4/25/2018 | 1:30 | ☐ AM ☒ PM | 316 Fayetteville Street, Raleigh, NC; 3rd Floor |

Name And Address Of Plaintiff Or Plaintiff's Attorney
Hudson Capital Weston LLC d/b/a Cary Reserve at Weston

1000 Heathmoor Ln

Cary     NC    27513

Date Issued
APR 1 3 2018

Signature

☒ Deputy CSC    ☐ Assistant CSC    ☐ Clerk Of Superior Court

(Over)

AOC-CVM-100, Rev. 10/14
© 2014 Administrative Office of the Courts

**PLAINTIFF'S EXHIBIT**

| File No. | |
|---|---|

## COMPLAINT
## IN SUMMARY EJECTMENT

G.S. 7A-216, 7A-232; Ch. 42, Art. 3 and 7

*Name And Address Of Plaintiff*
**Hudson Capital Weston LLC**

dba Cary Reserve at Weston
1000 Heathmoor Ln

| Cary | NC 27513 |
|---|---|
| *County* WAKE | *Telephone No.* (919)677-7887 |

### VERSUS

| *Name And Address Of Defendant 1*  ☒ Individual  ☐ Corporation |
|---|

Dan Williams
1114 Millhous Drive
Apt 1114

| CARY | NC 27513 |
|---|---|
| *County* WAKE | *Telephone No.* |

| *Name And Address Of Defendant 2*  ☒ Individual  ☐ Corporation |
|---|

| *County* | *Telephone No.* |
|---|---|

*Name And Address Of Plaintiff's Attorney Or Agent*
Hans Dara
Loebsack & Brownlee, PLLC
P.O. Box 78058

| Charlotte | NC 28271 |
|---|---|
| (919)792-1690 | |

AOC-CVM-201, As Revised by Counsel for Plaintiff

## STATE OF NORTH CAROLINA

WAKE County

In The General Court Of Justice
District Court Division-Small Claims

1. The defendant is a resident of the county named above.

2. The defendant entered into possession of premises described below as a lessee of plaintiff.

| *Description Of Premises (Include Location)* 1114 Millhous Drive,Apt 1114,CARY,NC 27513 | ☒ Conventional  ☐ Public Housing  ☐ Section 8 |
|---|---|

| *Rate Of Rent (tenant's share)* $ 1195.00 per ☒ Month ☐ Week | *Date Rent Due* 04/01/2018 | *Date Lease or Possession Terminated* | *Type Of Lease* ☐ Oral ☒ Written |
|---|---|---|---|

3. ☐ The defendant failed to pay the rent due on the above date and the plaintiff made demand for the rent and waited the 10-day grace period before filing the complaint.

☐ The lease period ended on the above date and the defendant is holding over after the end of the lease period.

☒ The defendant breached the condition of the lease described below for which re-entry is specified.

☐ Criminal activity or other activity has occurred in violation of G.S. 42-63 as specified below.

*Description Of Breach/Criminal Activity (give names, dates, places and illegal activity)*
Failure to pay monthly rent when due/in full, from the date above through the hearing date.

4. The plaintiff has demanded possession of the premises from the defendant, who has refused to surrender it, and the plaintiff is entitled to immediate possession.

5. Pursuant to G.S. 42-28, Plaintiff hereby omits any claim for rents or damages and is seeking possession of the premises only. Plaintiff reserves the right to seek any monetary damages in a separate civil action.

*Description Of Any Property Damage*

| *Amount Of Damage (if Known)* $ CLAIMS RESERVED | *Amount Of Rent Unpaid* $ 1,195.00 | *Total Amount Due* $ POSSESSION ONLY |
|---|---|---|

6. Plaintiff therefore requests to be put in possession of the Premises.

| *Date* 4/12/2018 | *Name Of Plaintiff/Attorney/Agent (Type Or Print)* Hans Dara | *Signature Of Plaintiff/Attorney/Agent* |
|---|---|---|

### CERTIFICATION WHEN COMPLAINT SIGNED BY AGENT OF PLAINTIFF

I certify that I am an agent of the plaintiff and have actual knowledge of the facts alleged in this Complaint.

| *Date* 4/12/2018 | *Name Of Agent (Type Or Print)* | *Signature Of Agent* |
|---|---|---|

(Over)



PLAINTIFF'S
EXHIBIT
15

STATE OF NORTH CAROLINA.....     IN THE GENERAL COURT OF JUSTICE
                      SUPERIOR COURT DIVISION
COUNTY OF WAKE               CASE NO. 17-CVS-7995

JORDON HARGROVE,        )
                           )
       Plaintiff,          )
                           )
    v.                        )
                           )
GRUBB MANAGEMENT, INC.;       )
GRUBB FUND MANAGEMENT, LLC;   )           **Order**
GRUBB RESIDENTIAL            )
DEVELOPMENT FUND III, LLC; and   )
GLENWOOD RALEIGH           )
APARTMENTS, LLC d/b/a STERLING   )
GLENWOOD APARTMENTS,       )
                           )
       Defendants.       )

This matter, coming on to be heard and being heard during the March 20, 2018 civil session of Wake County Superior Court by the Honorable Judge A. Graham Shirley, II, sitting as a specially-designated judge pursuant to North Carolina General Rule of Practice 2.1, on Plaintiff Jordan Hargrove's Motion for Partial Judgment on the Pleadings against Defendant Glenwood Raleigh Apartments, LLC d/b/a Sterling Glenwood Apartments ("Plaintiff's Motion") and on Defendants' Grubb Management, Inc., Grubb Fund Management, LLC, Grubb Residential Development Fund III, LLC, and Glenwood Raleigh Apartments, LLC d/b/a Sterling Glenwood Apartments's Motion for Judgment on the Pleadings ("Defendants' Motion").

Plaintiff was represented by Edward Maginnis of Maginnis Law, PLLC and Scott C. Harris of Whitfield, Bryson & Mason, LLP and Defendants were represented by Jonathan R. Reich of Womble Bond Dickinson (US), LLP.

After having reviewed the pleadings (and any attachments thereto), the Court's file, the motions submitted, and the briefs of the parties, and having taken into account the arguments of counsel, the Court finds that Plaintiff's Motion and Defendants' Motion present only a question of law. The Court finds that North Carolina General Statute §42-46(e), (f), (g) and (h) are unambiguous; the only fees that can be claimed by a landlord for filing a complaint for summary ejectment and/or money owed are set forth in §42-46.

By imposing and then collecting a fee of $191 from Mr. Hargrove for reimbursement of the filing fees, attorney fees, and other fees reflected in N.C.G.S. §7A-305(a), Sterling violated N.C.G.S. §42-46. The Court further finds that attorney's fees can only be charged (or subsequently

awarded) on a note or evidence of indebtedness when an attorney is employed to actually collect on the evidence of indebtedness. Sterling could not claim an attorney's fee under N.C.G.S. §6-21.2 because it only sought possession by summary ejectment, and did not seek to collect any sums for unpaid rent. The Court also concludes that by imposing, and then collecting $191 from Mr. Hargrove, Sterling violated N.C.G.S. §75-54.

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion against Defendant Glenwood Raleigh Apartments, LLC d/b/a Sterling Glenwood Apartments is granted in its entirety. Plaintiff is entitled to partial judgment on the pleadings with regard to Sterling's liability under N.C.G.S. §42-46 and partial judgment on the pleadings on his claim under the North Carolina Debt Collection Act, N.C.G.S. §75-50 *et seq.* in that Sterling violated N.C.G.S. §75-54 on at least one occasion. Defendants' Motion is denied in its entirety.

This the 23 day of March, 2018.

THE HONORABLE A. GRAHAM SHIRLEY, II
PRESIDING SUPERIOR COURT JUDGE



PLAINTIFF'S
EXHIBIT
16

SESSION LAW 2018-50
SENATE BILL 224

AN ACT TO ALLOW LANDLORDS TO RECOVER OUT-OF-POCKET EXPENSES IN SUMMARY EJECTMENT CASES.

The General Assembly of North Carolina enacts:

**SECTION 1.1.(a)** G.S. 42-46(h)(3) reads as rewritten:

"(3) It is contrary to public policy for a landlord to put in a lease or claim any fee for filing a complaint for summary ejectment and/or money owed other than the ones expressly authorized by subsections (e) through (g) and (i) of this section, and a reasonable attorney's fee as allowed by law."

**SECTION 1.1.(b)** G.S. 42-46 is amended by adding two new subsections to read:

"(i) Out-of-Pocket Expenses. – In addition to the late fees referenced in subsections (a) and (b) of this section and the administrative fees of a landlord referenced in subsections (e) through (g) of this section, a landlord is also permitted to charge and recover from a tenant the following actual out-of-pocket expenses:

(1) Filing fees charged by the court.

(2) Costs for service of process pursuant to G.S. 1A-1, Rule 4 of the North Carolina Rules of Civil Procedure and G.S. 42-29.

(3) Reasonable attorneys' fees actually incurred, pursuant to a written lease, not to exceed fifteen percent (15%) of the amount owed by the tenant, or fifteen percent (15%) of the monthly rent stated in the lease if the eviction is based on a default other than the nonpayment of rent.

(j) The out-of-pocket expenses listed in subsection (i) of this section are allowed to be included by the landlord in the amount required to cure a default."



**SECTION 2.** This act is effective when it becomes law.

In the General Assembly read three times and ratified this the 14th day of June, 2018.

s/ Philip E. Berger
President Pro Tempore of the Senate

s/ Tim Moore
Speaker of the House of Representatives

This bill having been presented to the Governor for signature on the 14th day of June, 2018 and the Governor having failed to approve it within the time prescribed by law, the same is hereby declared to have become a law. This 25th day of June, 2018.

s/ Karen Jenkins
Enrolling Clerk

Case 5:18-cv-00516-D     Document 1-1     Filed 10/30/18     Page 79 of 79