IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-516-D

RANDI MILROY, and )
DAN WILLIAMS, )
)
           Plaintiffs, )
)
v. ) **ORDER**
)
BELL PARTNERS INC., et al., )
)
           Defendants. )

On September 21, 2018, Randi Milroy ("Milroy") and Dan Williams ("Williams"; collectively "plaintiffs"), on behalf of themselves and others similarly situated, filed a complaint in Wake County Superior Court against Bell Partners Inc. ("Bell"), LSREF3 Bravo (Raleigh), LLC d/b/a The Reserve at Lake Lynn ("LSREF3" or "Reserve at Lake Lynn"), DPR Westover, LLC ("DPR"), and Hudson Capital Weston, LLC d/b/a Cary Reserve at Weston ("Reserve at Weston"; collectively, "defendants").[1] Plaintiffs failed to pay their rent on time, and defendants took remedial action under the leases. Plaintiffs allege that defendants violated the North Carolina Residential Rental Agreements Act ("RRAA"), N.C. Gen. Stat. § 42-38 et seq., the North Carolina Debt Collection Act ("NCDCA"), N.C. Gen. Stat. § 75-50 et seq., and the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1 et seq. [D.E. 1-1]. On October 30, 2018, LSREF3 removed the action to this court under the Class Action Fairness Act of 2005 [D.E. 1]. On December 6, 2018, defendants moved to dismiss the complaint for failure to state a claim [D.E. 26, 28, 30] and filed memoranda in support [D.E. 27, 29, 31]. On January 28, 2019,

---

[1] On December 13, 2018, plaintiffs voluntarily dismissed DPR. See [D.E. 32].

plaintiffs responded in opposition [D.E. 35]. On February 25, 2019, defendants replied [D.E. 42, 43, 44]. As explained below, the court grants defendants' motions to dismiss and dismisses plaintiffs' complaint.

I.

Plaintiffs are tenants at apartment complexes leased from or managed by defendants. Bell "provides property management services" to various apartment complexes in North Carolina, including Reserve at Lake Lynn and Reserve at Weston. Compl. [D.E. 1-1] ¶¶ 3, 12–14. Milroy leased an apartment at Reserve at Lynn Lake, and Williams leased an apartment at Reserve at Weston. See id. ¶¶ 8–9. Plaintiffs allege that defendants are "landlords" and "debt collectors" under North Carolina law and that the defendants operate as a single entity. See id. ¶¶ 19–23, 25.

Milroy leased an apartment at Reserve at Lake Lynn from November 22, 2016, through November 21, 2018, with monthly rent payments of $838.00. See id. ¶¶ 54, 56; Pls.' Ex. 1 [D.E. 1-1] 34–39; Pls.' Ex. 2 [D.E. 1-1] 40–45. Williams leased an apartment at Reserve at Weston from September 25, 2016, to September 24, 2017, and March 1, 2018, to February 28, 2019, with monthly rent payments of $1,195.00. See Compl. [D.E. 1-1] ¶¶ 72, 77; Pls.' Ex. 3 [D.E. 1-1] 46–51; Pls.' Ex. 4 [D.E. 1-1] 52–57. Rent payments were due on or before the first day of each month "with no grace period." E.g., Pls.' Ex. 2 [D.E. 1-1] 40 ¶ 6; Pls.' Ex. 4 [D.E. 1-1] 52 ¶ 6.

If plaintiffs did not pay rent on time, then under their leases they were delinquent, and the leases authorized various remedies. E.g., Pls.' Ex. 2 [D.E. 1-1] 40 ¶ 6; Pls.' Ex. 4 [D.E. 1-1] 52 ¶ 6. Those remedies included terminating the tenant's lease, instituting proceedings for summary ejectment, or pursuing any remedy permitted by law. See, e.g., Pls.' Ex. 2 [D.E. 1-1] 41 ¶ 12, 43 ¶ 31; Pls.' Ex. 4 [D.E. 1-1] 53 ¶ 12, 55 ¶ 31. Additionally, the leases provided that "[defendants] may recover from [a defaulting tenant] attorney's fees and all litigation costs to the extent permitted by

2

law." E.g., Pls.' Ex. 2 [D.E. 1-1] 43 ¶ 31; Pls.' Ex. 4 [D.E. 1-1] 55 ¶ 31. If defendants pursued summary ejectment, plaintiffs' leases authorized defendants to "recover from [a defaulting tenant] the highest one of the following fees (which shall be in addition to late fees, attorney's fees, and any applicable court costs):" a complaint filing fee, court appearance fee, or second trial fee. Compl. [D.E. 1-1] ¶¶ 27–28; e.g., Pls.' Ex. 2 [D.E. 1-1] 43 ¶ 31; Pls.' Ex. 4 [D.E. 1-1] 55 ¶ 31; see N.C. Gen. Stat. § 42-46(e)–(g).

Plaintiffs allege that defendants follow a regular procedure if a tenant fails to timely pay rent. First, on approximately the sixth day of the month, defendants "cause written letters or emails to be delivered to the tenant stating that the tenant 'will also be charged for court costs' if he or she fails to make a complete rental payment." Compl. [D.E. 1-1] ¶ 34; see Pls.' Ex. 5 [D.E. 1-1] 58. Next, on approximately the eleventh day of the month, defendants charge the tenant "eviction fees," sometimes without a court order and before filing a complaint against the tenant, and file a legal action to evict the tenant. Compl. [D.E. 1-1] ¶¶ 41–42, 44–46. The eviction fees include the filing fees ($96.00), sheriff service fees ($30.00), and attorneys' fees (a flat fee). See id. ¶¶ 29–33. These fees are allegedly "in addition to, and separate from, the late fees and the fees specifically authorized by [N.C. Gen. Stat.] § 42-46." Id. ¶ 43. Finally, after defendants enter the eviction fees "onto a tenant's account ledger," defendants cause "additional written letters or emails to be delivered to the tenant stating that [e]viction [f]ees are currently due and owing." Id. ¶ 48; see Pls.' Ex. 8 [D.E. 1-1] 61. Once defendants enter the eviction fees onto a tenant's account ledger, defendants will not review or remove the fees, even if defendants improperly assessed the fees or a summary ejectment action is dismissed. See Compl. [D.E. 1-1] ¶¶ 51–53.

Both Milroy and Williams were, at some point, late in paying rent. See Compl. [D.E. 1-1] ¶¶ 57, 78; Pls.' Ex. 5 [D.E. 1-1] 58; Pls.' Ex. 6 [D.E. 1-1] 59; Pls.' Ex. 7 [D.E. 1-1] 60; Pls.' Ex. 9

3

[D.E. 1-1] 62; Pls.' Ex. 10 [D.E. 1-1] 63–67. In September 2017, Milroy did not pay rent on time. See id. ¶ 57. Defendants charged Milroy a late fee under N.C. Gen. Stat. § 42-46(a) and eviction fees. See id. ¶¶ 57–60; Pls.' Ex. 10 [D.E. 1-1] 64. Williams did not pay rent on time on several occasions. See Compl. [D.E. 1-1] ¶¶ 78–79. Each time that Williams failed to timely pay his rent, defendants added eviction fees to Williams's account. See id. ¶¶ 82–84. In total, Milroy paid $201.00 in "eviction fees" and Williams paid approximately $583.00 in "eviction fees." See id. ¶¶ 58, 82; Pls.' Ex. 11 [D.E. 1-1].

Plaintiffs allege that, when defendants added eviction fees to plaintiffs' accounts, no hearing had been held, no attorney had appeared in court to evict plaintiffs, defendants had not hired an attorney to collect any debt, and defendants had not served plaintiffs with a complaint. See Compl. [D.E. 1-1] ¶¶ 61–63, 66, 84–88. For each instance of default, plaintiffs cured their defaults and defendants voluntarily dismissed their summary ejectment complaints without prejudice. See id. ¶¶ 68–69, 96–99. Plaintiffs allege that no court awarded fees to defendants and that plaintiffs did not settle with defendants. See id. ¶¶ 70–71, 100–05.

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and

4

reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, plaintiffs' allegations must "nudge[] their claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records when evaluating a motion to dismiss for failure to state a claim. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

The motions to dismiss require the court to consider the plaintiffs' state law claims, and the parties agree that North Carolina law applies to this action. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Stahle v.

5

CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted).[2] In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there [are] persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted); Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); Day & Zimmerman, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); see Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

A.

Plaintiffs allege that defendants violated the RRAA by charging them court costs and other out-of-pocket expenses as "eviction fees" when plaintiffs defaulted on their rent. See Compl. [D.E. 1-1] ¶¶ 116–21; cf. N.C. Gen. Stat. § 42-46(h)(3).

On June 14, 2018, the North Carolina General Assembly ("General Assembly") amended section 42-46(h)(3) of the RRAA. See An Act to Allow Landlords to Recover Out-of-Pocket Expenses in Summary Ejectment Cases, 2018 N.C. Sess. Laws 2018-50 (2018). On June 25, 2018, the amendment became effective. See id. Defendants argue that section 42-46, both before and after the 2018 amendment, "does not restrict and never has restricted a landlord's ability to recover out-of-pocket expenses from summary ejectment proceedings." [D.E. 27] 16. Plaintiffs respond that court

---

[2] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

6

costs and other out-of-pocket expenses arising from summary ejectment proceedings were not permissible "eviction fees" before the 2018 amendment and that the 2018 amendment does not apply retroactively. See [D.E. 35] 20–27.

"In construing a state law, [federal courts] look to the rules of construction applied by the enacting state's highest court." Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc., 492 F.3d 484, 489 (4th Cir. 2007); see In re DNA Ex Post Facto Issues, 561 F.3d 294, 300 (4th Cir. 2009). Accordingly, this court looks to the rules of statutory interpretation that the Supreme Court of North Carolina applies.

Under North Carolina law, "[t]he cardinal principle of statutory construction is to discern the intent of the legislature." State v. Jones, 359 N.C. 832, 835, 616 S.E.2d 496, 498 (2005); see Friends of Joe Sam Queen v. Ralph Hise for N.C. Senate, 223 N.C. App. 395, 402, 735 S.E.2d 229, 234 (2012). Courts initially consider a statute's text to discern legislative intent. See Shaw v. U.S. Airways, Inc., 362 N.C. 457, 460, 665 S.E.2d 449, 451 (2008); State v. Anthony, 351 N.C. 611, 614, 528 S.E.2d 321, 322 (2000). North Carolina courts "first look to the plain meaning of the statute." Frye Reg'l Med. Ctr., Inc. v. Hunt, 350 N.C. 39, 45, 510 S.E.2d 159, 163 (1999). "Where the language of a statute is clear, the courts must give the statute its plain meaning . . . ." Id.

"In construing a statute with reference to an amendment it is presumed that the legislature intended either . . . to change the substance of the original act, or . . . to clarify [its meaning]." Childers v. Parker's, Inc., 274 N.C. 256, 260, 162 S.E.2d 481, 483 (1968); see Spruill v. Lake Phelps Volunteer Fire Dep't, Inc., 351 N.C. 318, 323, 523 S.E.2d 672, 676 (2000). A clarifying amendment does not alter the original meaning of the statute and, thus, applies retroactively. See Ray v. N.C. Dep't of Transp., 366 N.C. 1, 9, 727 S.E.2d 675, 681 (2012); Wilson v. N.C. Dep't of Commerce, 239 N.C. App. 456, 461, 768 S.E.2d 360, 364 (2015); Thornton v. City of Raleigh, 230 N.C. App.

7

600, 753 S.E.2d 400, 2013 WL 6096919, at *2 (2013) (unpublished table decision). By contrast, an altering amendment modifies a statute's substantive meaning and only applies prospectively. Cf. Ray, 366 N.C. at 9, 727 S.E.2d at 681.

Whether an amendment is altering or clarifying is a question of law for the court. See id., 727 S.E.2d at 681; In re Ernst & Young, LLP, 363 N.C. 612, 616, 684 S.E.2d 151, 154 (2009). The Supreme Court of North Carolina presumes that the legislature intended to change the law when it amends a statute. See State ex rel. Utils. Comm'n v. Pub. Serv. Co. of N.C., Inc., 307 N.C. 474, 480, 299 S.E.2d 425, 429 (1983); Childers, 274 N.C. at 260, 162 S.E.2d at 483–84; State v. Moore, 240 N.C. App. 465, 477, 770 S.E.2d 131, 140 (2015). Nevertheless, if the amendment serves to address an ambiguity or improve the language of a statute, a court may interpret the amendment as merely clarifying existing law. See Ridge Cmty. Invs., Inc. v. Berry, 293 N.C. 688, 695, 239 S.E.2d 566, 570 (1977); Childers, 274 N.C. at 260, 162 S.E.2d at 483–84.

A court must undertake a "careful comparison of the original and amended statutes" to "determine whether [an] amendment clarifies [a] prior law or alters it." Ferrell v. Dep't of Transp., 334 N.C. 650, 659, 435 S.E.2d 309, 315 (1993); see Ray, 366 N.C. at 10, 727 S.E.2d at 682. Courts can use amendments to interpret a statute by analyzing "the natural inferences arising out of the legislative history as it continues to evolve." Burgess v. Your House of Raleigh, Inc., 326 N.C. 205, 216, 388 S.E.2d 134, 141 (1990). If a statute does not expressly address a particular point, and a legislature enacts an amendment to address that point, the amendment is more likely to be clarifying than altering. See Ray, 366 N.C. at 10, 727 S.E.2d at 682; Ferrell, 334 N.C. at 659, 435 S.E.2d at 315; Jeffries v. Cty. of Harnett, 817 S.E.2d 36, 48 (N.C. Ct. App. 2018); see also Bryant v. United States, 768 F.3d 1378, 1385 (11th Cir. 2014) (applying North Carolina law). On the other hand, "an amendment to an unambiguous statute indicates the intent to change the law." Childers, 274 N.C.

8

at 260, 162 S.E.2d at 484; see Taylor v. Crisp, 286 N.C. 488, 497, 212 S.E.2d 381, 386–87 (1975); Bryant, 768 F.3d at 1385.

Before the General Assembly amended section 42-46 in 2018, the RRAA did not allow a landlord to "put in a lease or claim any fee for filing a complaint for summary ejectment and/or money owed other than the ones expressly authorized by subsections (e) through (g) of this section, and a reasonable attorney's fee as allowed by law." N.C. Gen. Stat. § 42-46(h)(3) (2016). Sections 42-46(e), (f), and (g) authorize a landlord to charge a tenant a complaint filing fee, a court appearance fee, or a second trial fee depending on how far legal action against the tenant progresses. See id. § 42-46(e)–(g). The amendment to section 42-46(h)(3) explicitly authorizes landlords to charge defaulting tenants "out-of-pocket expenses." See id. § 42-46(h)(3), (i) (2018). Specifically, the RRAA, as amended, permits landlords to charge defaulting tenants "[f]iling fees charged by the court," "[c]osts for service of process pursuant to" North Carolina law, and "[r]easonable attorneys' fees actually incurred." Id. § 42-46(i)(1)–(3).

Before the amendment, section 42-46(h)(3)'s text did not provide express guidance on whether a "fee" included actual court costs and other damages arising from breach of a lease. The amendment to section 42-46 unequivocally authorizes landlords to charge defaulting tenants for such costs. Because the amendment provided express guidance concerning an issue on which the statute was silent, this court predicts that the Supreme Court of North Carolina would interpret the amendment as clarifying. See Ray, 366 N.C. at 10, 727 S.E.2d at 682; Ferrell, 334 N.C. at 659, 435 S.E.2d at 315; Suarez v. Camden Prop. Tr., No. 5:17-CV-124-D, 2019 WL 1301951, at *4 (E.D.N.C. Mar. 21, 2019), appeal docketed, No. 19-1367 (4th Cir. 2019). Moreover, section 42-46(i) distinguishes the "out-of-pocket expenses" authorized by section 42-46(i) from the "late fees" governed by sections 42-46(a) and 42-46(b) and the "administrative fees" governed by sections 42-

46(e)–(g). See N.C. Gen. Stat. § 42-46(i). This distinction suggests that a "fee," before the amendment, did not include actual out-of-pocket expenses. Thus, a comparison of the statute's text before and after amendment indicates that the amendment was clarifying.[3]

Furthermore, the General Assembly enacted the amendment in response to a Wake County Superior Court decision that read section 42-46(h)(3) broadly. See [D.E. 27] 14–15. This legislative response bolsters the conclusion that the General Assembly intended to clarify section 42-46. See, e.g., Thomas v. Barnhill, 102 N.C. App. 551, 553–54, 403 S.E.2d 102, 103–04 (1991); cf. State ex rel. N.C. Milk Comm'n v. Nat'l Food Stores, Inc., 270 N.C. 323, 331, 154 S.E.2d 548, 555 (1967) (stating that "the circumstances surrounding [the] adoption" of a statute can demonstrate legislative intent). Thus, the 2018 amendment's text and legislative history show that the General Assembly intended to clarify the RRAA's application to court costs and out-of-pocket expenses, not to alter its substantive meaning.

Because the amendment is clarifying, it applies to this action. See Ray, 366 N.C. at 9, 727 S.E.2d at 681; Wells v. Consol. Judicial Ret. Sys. of N.C., 354 N.C. 313, 318, 553 S.E.2d 877, 880 (2001); Ferrell, 334 N.C. at 661–62, 435 S.E.2d at 317; Childers, 274 N.C. at 260, 162 S.E.2d at 483–84. Accordingly, section 42-46(h)(3) at all times permitted defendants to charge plaintiffs for their court costs and other out-of-pocket expenses (i.e., what plaintiffs allege constitute the "eviction fees") arising from plaintiffs' default. Moreover, defendants could charge reasonable attorneys' fees. See Suarez, 2019 WL 1301951, at *4–5. Therefore, the court grants defendants' motion to dismiss plaintiffs' RRAA claim for failure to state a claim.

---

[3] Plaintiffs argue that the 2018 amendment's title implies that the General Assembly intended to alter the RRAA. See [D.E. 35] 25. Although the 2018 amendment's title implies what the General Assembly expected the amendment to achieve as a policy matter, it does not imply that the General Assembly intended to alter the RRAA. Thus, the court rejects this argument.

10

B.

Plaintiffs allege that defendants violated the NCDCA by, among other actions, threatening to take an action not permitted by law in its their collection letters and attempting to collect debts without legal justification. See Compl. [D.E. 1-1] ¶¶ 122–40.

"The NCDCA prohibits debt collectors from engaging in unfair debt collection practices, including the use of threats, coercion, harassment, unreasonable publications of the consumer's debt, deceptive representations to the consumer, or other unconscionable means." Ross v. Fed. Deposit Ins. Corp., 625 F.3d 808, 817 (4th Cir. 2010); see N.C. Gen. Stat. §§ 75-50–75-56. An NCDCA claim has three threshold requirements. See Davis Lake Cmty. Ass'n v. Feldmann, 138 N.C. 292, 295, 530 S.E.2d 865, 868 (2000); Reid v. Ayers, 138 N.C. App. 261, 263, 531 S.E.2d 231, 233 (2000). First, the "obligation owed must be a 'debt;' second, the one owing the obligation must be a 'consumer;' and third, the one trying to collect the obligation must be a 'debt collector.'" Reid, 138 N.C. App. at 263, 531 S.E.2d at 233; see Glenn v. FNF Servicing, Inc., No. 5:12-CV-703-D, 2013 WL 4095524, at *3 (E.D.N.C. Aug. 13, 2013) (unpublished). If plaintiffs meet these threshold requirements, then plaintiffs must establish the elements of a UDTPA claim: (1) an unfair or deceptive act (2) in or affecting commerce (3) proximately causing injury. See Ross, 625 F.3d at 817; Campbell v. Wells Fargo Bank, N.A., 73 F. Supp. 3d 644, 649 (E.D.N.C. 2014); Feldmann, 138 N.C. App. at 296, 530 S.E.2d at 868; Reid, 138 N.C. App. at 266, 531 S.E.2d at 235.

Assuming without deciding that plaintiffs have plausibly alleged the three threshold requirements of an NCDCA claim, plaintiffs' claim fails as a matter of law because plaintiffs have not plausibly alleged that defendants committed an unfair or deceptive act. See Suarez, 2019 WL 1301951, at *5–6; Campbell, 73 F. Supp. 3d at 649–50; Feldmann, 138 N.C. App. at 296, 530 S.E.2d at 868; Reid, 138 N.C. App. at 266, 531 S.E.2d at 235. "[W]hether an act or practice is an unfair or

11

deceptive practice ... is a question of law for the court." Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000). The RRAA permitted defendants to charge eviction fees that included court costs and other out-of-pocket expenses to tenants who failed to pay rent on time. Thus, defendants' representations were not unfair or deceptive, and the court grants defendants' motion to dismiss plaintiffs' NCDCA claim for failure to state a claim.

C.

As for plaintiffs' UDTPA claim, see Compl. [D.E. 1-1] ¶¶ 141–48, plaintiffs have not plausibly alleged that defendants committed an unfair or deceptive act because the RRAA authorized defendants to charge plaintiffs eviction fees that included court costs and other out-of-pocket expenses. See Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001); Gray, 352 N.C. at 68, 529 S.E.2d at 681; Spartan Leasing Inc. v. Pollard, 101 N.C. App. 450, 460–61, 400 S.E.2d 476, 482 (1991). Accordingly, the court grants defendants' motion to dismiss plaintiffs' UDTPA claim for failure to state a claim.

III.

In sum, the court GRANTS defendants' motions to dismiss plaintiffs' complaint [D.E. 26, 28, 30] and DISMISSES plaintiffs' complaint [D.E. 1-1].

SO ORDERED. This 30 day of July 2019.

_____
JAMES C. DEVER III
United States District Judge